**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, as an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POLITICO LLC.,<br><br>Defendant. | Case No. 5:25-cv-05213-NW<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT POLITICO LLC'S MOTION TO DISMISS CLASS ACTION COMPLAINT<br><br>Hon. Noël Wise<br><br>Hearing Date: November 5, 2025<br>Hearing Time: 9:00 AM<br>Courtroom: Courtroom 3<br><br>Complaint Filed: June 20, 2025 |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. ARGUMENT ........ 3

A. Plaintiff's Claims Are Timely. ........ 3

B. Plaintiff Demonstrates Article III Standing. ........ 6

1. Plaintiff Pleads a Concrete Injury-in-fact. ........ 6

2. Plaintiff Is Not a "Tester" ........ 11

C. Plaintiff Adequately Pleads his CIPA Claims under § 631(a). ........ 12

1. Plaintiff Establishes "Contents" Were Intercepted. ........ 13

2. Politico Tapped Plaintiff's Communications "in Transit." ........ 14

3. Plaintiff's § 631(a) (Clause Three) Claim Survives. ........ 14

4. Politico's Third-Party Vendors Are Not Intended Recipients. ........ 15

D. Plaintiff Adequately Pleads His Pen Register Claim Under § 638.51. ........ 16

1. Pen Registers are "Device[s] or Process[es]" not Limited to Telephones. 17

2. Defendant's Use of a Pen Register Harmed Plaintiff. ........ 19

3. Politico Fails to Demonstrate that the "Service Provider" Exemption to § 638.51 Applies. ........ 20

E. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Succeed. ........ 21

F. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation. ........ 22

G. Plaintiff Adequately Pleads his Contract and Quasi-Contract Claims ........ 23

1. Plaintiff Adequately Pleads Count VII and Count VIII. ........ 23

2. Plaintiff's Count VI (Unjust Enrichment) May Proceed. ........ 24

H. Plaintiff Adequately Pleads his Trespass to Chattels Claims. ........ 25

I. Plaintiff Requests Leave to Amend If Necessary. ........ 25

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

***Cases***

*Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837(N.D. Cal. Aug. 16, 2021) ... 7

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ... passim

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ... 10

*Calhoun v. Google LLC*, 526 F.Supp.3d 605 (N.D. Cal. 2021) ... 20, 21

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ... 8

*Careau & Co. v. Sec. Pac. Bus. Credit*, Inc., 222 Cal. App. 3d 1371 (1990) ... 24

*Carpenter v. U.S.*, 138 S. Ct. 2206 (2018) ... 7

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ... 3, 4

*Cody v. Ring LLC*, 718 F. Supp. 3d 993, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024) ... 12, 15

*Collier v. City of Pasadena*, 142 Cal. App. 3d 917 (1983) ... 4

*D'Angelo v. Penny Opco, LLC*, *No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) ... 18

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ... 25

*eBay, Inc. v. Bidder's Edge,* 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ... 25

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ... 6

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) ... 3

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)........ 19

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429
(S.D. Cal. Feb. 12, 2024) ........ 14

*Fanucci v. Allstate Ins. Co.*,
638 F. Supp. 2d 1125 (N.D. Cal. 2009) ........ 3

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836
(N.D. Cal. July 14, 2025) ........ passim

*Graf v. Zynga Game Network, Inc*. (*In re Zynga Privacy Litig*.),
750 F.3d 1098 (9th Cir. 2014) ........ 10, 12, 13

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........ 16, 17

*Greist v. Lendus, LLC*,
2025 U.S. Dist. LEXIS 108374 (N.D. Cal. June 6, 2025) ........ 4

*Harper v. Charter Communs.*,
NO. 2:19-cv-00902-WBS-DMC, 2021 U.S. Dist. LEXIS 28747 (E.D. Cal. Feb. 12, 2021) ........ 4

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781
(C.D. Cal. July 19, 2024) ........ 13

*Hernandez v. Hillsides*, Inc.,
47 Cal. 4th 272 (2009). ........ 6, 21

*Hill v. National Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 6, 22

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 13

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 24

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) ........ 9

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 20, 21

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 25

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 15

*Javier v. Assurance IQ, LLC*,
2022 U.S. App. LEXIS 14951 (9th Cir. 2022) .......... 12

*Katz-Lacabe v. Oracle, Am., Inc.,*
668 F. Supp. 3d 928 (N.D. Cal. April 6, 2023) .......... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726
(N.D. Cal. June 24, 2025) .......... 9, 10, 18, 19

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
194 P.3d 1026 (Cal. 2008) .......... 3, 5

*Miles v. Deutsche Bank Nat'l Tr. Co.*,
236 Cal. App. 4th 394 (2015) .......... 23

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378
(N.D. Cal. Dec. 12, 2024) .......... 16, 17

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) .......... 13

*Oltman v. Holland Am. Line-USA, Inc.*,
538 F.3d 1271 (9th Cir. 2008) .......... 5

*Patel v. Facebook Inc.*,
290 F. Supp. 3d 948 (N.D. Cal. 2018) .......... 9

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 U.S. App. LEXIS 21946, at *24-25 (9th Cir. Aug. 26, 2025) .......... 7

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 15

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 13

*Riley v. California*, 573 U.S. 373 (2014) .......... 7

*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. April 4, 2025) .......... 11

*Rodriguez v. Autotrader.com, Inc.,* No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) .......... 11

*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024).......... 12

*Rodriguez v. Google*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 23, 24

*Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 Cal. Super. LEXIS 66496 (2024 LX 198316).......... 19

*Roffman v. Perfect Bar*, LLC, No. 22-cv-02479-JSC, 2023 U.S. Dist. LEXIS 6049 (N.D. Cal. Jan. 12, 2023) .......... 18

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021). .......... 15

*Sanchez v. Cars.Com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (2025 LX 398841) .......... 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .......... 25

*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......... 24

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).......... 16, 17

*Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021).......... 22

*Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) .......... 6

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016).......... 6

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .... 13, 14, 22

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22cv2012DMS(MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024); .... 20, 21

*Torres v. Prudential Fin., Inc.*,
2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) .... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 6, 23

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .... 19

*United States v. Jones*,
565 U.S. 400 (2012) .... 8

*Valenzuela Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .... 14

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .... 22

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .... 2, 8

*Yoon v. Lululemon*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 12

***Statutes***

Cal. Penal Code § 638.50(b) .... 16, 17

Cal. Penal Code § 638.51 .... 18

Cal. Penal Code § 638.51(a) .... 15

Cal. Penal Code § 638.51(b) .... 17

Cal. Penal Code § 638.51(b)(1) .... 20

Cal. Penal Code § 631(a) .... 13, 18

## I. INTRODUCTION

Plaintiff Vishal Shah ("Plaintiff") filed this Class Action Complaint against Politico LLC ("Defendant" or "Politico") for intentionally aiding third parties to collect California users' private communications ***against those website users' express instructions.*** Politico promised users that they could opt out of the collection and sale of their personal information by clicking on Defendant's "Do Not Sell My Information" link and rejecting all "Performance Cookies" and "Online Behavioral Advertising" cookies, as depicted in the following screenshots:




ECF 1 ("CAC") ¶ 1. But Politico's representations were false.

Politico surreptitiously enabled third-party advertising and tracking cookies on the devices of California visitors to the Website, *even after those visitors explicitly rejected and opted out of all such cookies*. As a result, Politico caused the third parties to collect vast swaths of user data, including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively, "Private Communications") ***despite promising not to do so***. CAC ¶ 3. This deceptive practice is a highly offensive violation of Plaintiff's privacy

rights, as well as a breach of Defendant's promises. Plaintiff more than sufficiently pleads claims for relief. *See, e.g., Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (denying motion to dismiss complaint alleging defendant's website violated CIPA and privacy laws by using tracking cookies after expressly promising it would not do so).

Politico attempts to sidestep liability for its blatant privacy violations by arguing that Plaintiff does not allege a concrete injury-in-fact. Not so. "[A] concrete injury for Article III standing purposes occurs when [a] third party tracks a person's internet browser activity without authorization," exactly like Plaintiff alleges here. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (cleaned up). Beyond lacking authorization, Politico intentionally disregarded visitors' express directions not to track them.

Politico's remaining arguments fare no better. Its statute of limitations argument fails to account for Plaintiff's good faith pursuit of his claims, in arbitration, that tolled the statute. Plaintiff also adequately pleads common law privacy claims; he had a reasonable expectation of privacy that Politico would not disclose his communications and information through cookies because Politico itself set that expectation through the cookie banner. Politico's solicitation—and then immediate violation—of its promise is highly offensive. Through this violation, Defendant aided third parties in the interception of private data, giving rise to Plaintiff's wiretapping claim. Those third parties used Plaintiff's information for their own financial purposes, defeating Politico's claim that they were merely "service providers." Further, Plaintiff's claims pursuant to § 638.51 (pen register theory) survive because the statutory definition of a pen register extends to internet technologies that collect user data, not just telephones. Plaintiff has also adequately pled fraud by demonstrating a misrepresentation of material fact, and resulting damages in the form of diminution in value of his private and personally identifiable information. The Court should deny Politico's motion.

## II. FACTUAL BACKGROUND

When consumers visit Politico's Website—politico.com (the "Website")—Politico displays a popup cookie consent banner in which Politico offers Website users the option to click a "Do Not Sell My Information" link and then reject "Performance Cookies" and "Online Behavioural

Advertising" cookies. CAC ¶¶ 25-28. Despite this clear promise, Politico nevertheless enabled numerous third parties—including, without limitation, Google LLC, Microsoft Corporation, Amazon.com, Inc., and Yahoo, Inc. (the "Third Parties")—to use cookies to collect and aggregate those users' personal information, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and more. CAC ¶¶ 2-3. The Third Parties then used this ill-gotten personal information to create consumer profiles, target and personalize advertising, and analyze the effectiveness of advertising—all for their own financial gain. *Id*. ¶¶ 4, 35, 45-68. This is exactly what users who instructed Politico not to sell their information sought to avoid.

## III. ARGUMENT

### A. Plaintiff's Claims Are Timely.

Politico first argues that Plaintiff's CIPA claims are time-barred. This fails both on the merits, and because it raises issues that cannot be resolved against Plaintiff at the pleading stage. Under California law, the one-year limitations period for CIPA claims was equitably tolled by the prior arbitration proceeding, and subsequently by Plaintiff's petition to confirm the arbitral award. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (noting "we borrow our rules for equitable tolling of the period from the forum state, California" and that tolling rules are "liberally applied"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) (explaining "[w]here a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions," and thus "[t]he district court was required to consider and apply the California equitable tolling doctrine"); *Fanucci v. Allstate Ins. Co*., 638 F. Supp. 2d 1125, 1138-41 (N.D. Cal. 2009) (finding the plaintiff's claims were equitably tolled by her participation in an arbitration).

Equitable tolling is appropriate "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). Three elements are required for tolling to apply: (i) timely notice; (ii) lack of prejudice to the defendant; and (iii) reasonable and good faith conduct by the plaintiff. *Id.* at 1033; *accord Fanucci*, 638 F. Supp. 2d at 1138. Because the doctrine usually depends on facts outside the

pleadings (as the briefing and Politico's Request for Judicial Notice show here), "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." *Cervantes,* 5 F.3d at 1276 (9th Cir. 1993). Regardless, each element is satisfied.

First, as Politico concedes, Plaintiff provided timely notice to Defendant on August 17, 2023, when he notified Politico of his CIPA claims in a demand letter. ECF 18-1 ("MTD") at 2**.** Politico did not respond to the letter. *See* ECF 19-1 at 16. Thus, on December 21, 2023, Plaintiff proceeded with filing an arbitration wherein he included detailed allegations regarding his substantive claims (ECF 19-1 at 20–72) and further noted that "Claimant did not assent to Respondent's arbitration agreement" (ECF 19-1 at 18, n. 1). At that point, Politico clearly had timely notice of Plaintiff's CIPA claims. *See Harper v. Charter Communs.,* 2021 U.S. Dist. LEXIS 28747, at *14 (E.D. Cal. Feb. 12, 2021) (finding the defendant "certainly [had timely notice] by the time [plaintiff] filed his demand for arbitration, in which he indicated his intent to pursue his claims in court should the arbitrator determine that some or all of his claims were not arbitrable").

Second, Politico cannot show that its ability to defend against the CIPA claims was prejudiced here, given that Politico had full notice of the claims, prior proceedings, and of Plaintiff's intentions. *See Harper*, 2021 U.S. Dist. LEXIS 28747, at *14 ("Harper's claims in his demand for arbitration were the same as his claims filed in court . . . Harper indicated his intention to pursue his claims on behalf of a class, the court does not 'see how tolling [the] statute of limitations would undermine the [defendant's] ability to defend[.]'"); *see also Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 925 (1983) ("[where] two claims are based on essentially the same set of facts timely investigation of the first claim should put the defendant in position to appropriately defend the second."); *Greist v. Lendus, LLC*, 2025 U.S. Dist. LEXIS 108374, at *22 (N.D. Cal. June 6, 2025) (defendant "has been aware of the scope and nature of these claims even prior to the initiation of the lawsuit"). Indeed, Politico admits that "the operative Complaint arises from the same core set of facts and transactional events as the prior arbitration and the subsequently dismissed petition." MTD at 3. Unsurprisingly, Politico has not even attempted to identify any alleged prejudice in its motion papers. Nor could it.

Third, Plaintiff acted in good faith by pursuing arbitration first. Whether Plaintiff's claims would be subject to arbitration was an important threshold question. After filing the arbitration,

Plaintiff's counsel requested that Politico waive its arbitration requirements or allow Plaintiff to have the threshold issue of arbitrability to be determined by the court, but Politico refused. ECF 19-1 at 16. Ultimately, the arbitrator agreed that Plaintiff's claims were not subject to arbitration. *Id*. Plaintiff filed a petition to confirm the arbitrator's award that the case could proceed in court rather than arbitration. *Id*. Politico did not oppose confirmation of the award. *Id.* Politico then objected to Plaintiff's proposal to amend the pleadings in that petition proceeding to assert his substantive claims (*see Shah v. Politico* LLC, No. 25-cv-1338, ECF 32 at 2), and Plaintiff filed the instant action. The arbitration and confirmation petition were filed in good faith to resolve the arbitrability and contract-formation disputes efficiently; they were in no way filed to mislead Politico regarding Plaintiff's substantive claims or to cause prejudice to Politico. *Cf. Collier,* 142 Cal. App. 3d at 925. While Politico asserts that Plaintiff "should have promptly filed a lawsuit" after the arbitrator found the underlying dispute to be non-arbitrable, it has not explained why it was unreasonable for Plaintiff to first seek confirmation of the arbitral award, a proceeding which must be filed within one year of the award (9 U.S.C. § 9). Regardless, Politico cannot establish *on the pleadings* that Plaintiff acted unreasonably.

Finally, Politico's argument that the arbitration decision was "not final" is beside the point. Even if Politico were correct that the arbitrator's decision was not final, and that there were further issues that could be determined in the arbitration, that would simply mean that the equitable tolling continues. *See McDonald*, 194 P.3d at 1034 (noting it is well-established that equitable tolling applies "during pursuit of voluntary alternate remedies"). And the Arbitrator's finding regarding arbitrability (which was indeed final) does not render equitable tolling inapplicable; "[e]quitable tolling is routinely held to be proper where, as here, a claimant filed suit in a venue without jurisdiction over the claim." *Oltman v. Holland Am. Line-USA, Inc*., 538 F.3d 1271, 1279-80 (9th Cir. 2008) (citation omitted). In sum, the limitations periods for Plaintiff's claims were tolled for at least 503 days—370 days from the demand letter (August 17, 2023) through the pendency of the arbitration (filed December 21, 2023, and closed August 21, 2024), and 133 days from the filing the petition to confirm the arbitration award (on February 7, 2025) to the filing of this Complaint (on June 20, 2025). Thus, Plaintiff's CIPA claims are timely.

**B. Plaintiff Demonstrates Article III Standing.**

**1. Plaintiff Pleads a Concrete Injury-in-fact.**

To have standing under Article III, Plaintiff must allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Invasions of privacy have long been recognized at common-law as concrete injuries. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc*., 129 F.4th 630 (9th Cir. 2025). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). When evaluating whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id*. (citing *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994). The question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id*. (quoting *Hernandez v. Hillsides*, Inc., 47 Cal. 4th 272 at 286 (2009)).

Here, Plaintiff alleges he suffered actual harm when Defendant represented that he could opt out of or decline being tracked with the use of "Performance Cookies" and "Online Behavioural Advertising" cookies on the Website that are used to "share information about [a user's] use of [the Website] with our social media, advertising, and analytics partners." CAC ¶¶ 25-27. But Defendant used third-party code on the Website to place advertising cookies on users' devices, which allowed third parties to collect users' Private Communications. CAC ¶¶ 2-5, 25-36. The Private Communications included IP addresses and User Identifiers that allow third parties to aggregate information about users.

In *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 602–03 (9th Cir. 2020) the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." There, plaintiffs alleged that Facebook obtained "an enormous amount of individualized data" by collecting URLs of third-party websites that could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform," thereby gaining "cradle-to-grave profile[s]" of internet users without their consent. *Id.* at 603, 605. Because

Facebook garnered "a comprehensive browsing history of an individual," allowing Facebook to "compile a 'vast repository of personal data,'" the court held that Facebook allegedly compiled "highly personalized profiles from sensitive browsing histories and habits," preventing any conclusion that the Plaintiffs failed to allege a reasonable expectation of privacy. *Id.* at 603, 604 n.7 (citing *Carpenter v. U.S.*, 138 S. Ct. 2206, 2217 (2018); *Riley v. California*, 573 U.S. 373, 397-99 (2014)). The Court emphasized that under controlling precedent, "individuals have a reasonable expectation of privacy in collections of information that reveal 'familiar, political, professional, religious, and sexual association'" and that "individuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent." *Id.* at 604 n.7.

A recent Ninth Circuit case confirms Plaintiff's standing. *Popa v. Microsoft Corporation*, No. 24-14, 2025 U.S. App. LEXIS 21946, at *24-25 (9th Cir. Aug. 26, 2025). *Popa* affirmed the reasoning in *In re Facebook* and reiterated that courts "assess whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at *10. The Court noted that Facebook's creation of user profiles using information gathered after users logged off "accounted for the circumstances giving rise to the Plaintiff's alleged injuries," and thus "identified a close historical or common-law analogue for their asserted injury." *Id.* The same logic requires denying Politico's Motion. Politico represents a *more egregious version* of the historical harm implicated in *Facebook* because it not only caused the creation of profiles, but did it expressly in defiance of its promise; the same historical harm which the Ninth Circuit still finds sufficient to sustain standing. *See Popa,* 2025 U.S. App. LEXIS 21946at *10.[1]

District courts consistently apply *Facebook Tracking* to find reasonable expectations of privacy in aggregated data. In *Katz-Lacabe v. Oracle Am., Inc.,*, 668 F. Supp. 3d 928 at 942 (N.D. Cal. April 6, 2023), the court confronted allegations that data broker Oracle invaded plaintiffs'

[1] *Popa* itself is distinguishable. There, the session replay software was limited to collecting data about the use of a single website; here, Defendant causes tracking beyond its own website. In *Popa*, defendant did not seek plaintiff's consent and then defy plaintiff's rejection of the use of the software. Here, Defendant created an expectation of privacy, knowing that consumers increasingly desire to maintain the confidentiality of their browsing data, and lured consumers to use the website despite no intention of honoring its promises to keep the interactions private. As *Popa* acknowledges, these types of harms are concrete. *Popa*, 2025 U.S. App. LEXIS 21946, at *24-25 (discussing *In re Facebook*).

privacy through its "ID Graph" identity resolution services and Data Marketplace. In rejecting the same argument that Politico makes here, that "the data allegedly collected was not sensitive [or private] in nature" and that plaintiff had no expectation of privacy in their internet activity, the court stated: "Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a 'vast repository of personal data'—from compiling Plaintiffs' browsing activity, online communications, *and* offline activity—is what contravenes the reasonable expectation of privacy. This is in line with the analysis provided in *Facebook Tracking*." *Katz-Lacabe*, 668 F. Supp. 3d at 942 (emphasis in original). Similarly, in *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *9 (N.D. Cal. Aug. 16, 2021) the court held that "compiling bits of Plaintiffs' personal information scattered throughout the internet (and allegedly in non-public sources) into a dossier is a significant invasion of privacy," noting "[t]he Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even if the individual pieces of information are publicly available, constitutes a significant invasion of privacy." (citation omitted).

Plaintiff alleges that in direct violation of the promise made by Defendant not to allow the use of third party cookies, Defendant causes third parties to employ cookies to collect broad swaths of information that promotes the aggregation of user data about Plaintiff and all Website users "to create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics and audience segments based on shared traits (such as females, Millennials, etc.), and to perform targeted advertising and marketing analytics." *See* CAC ¶¶ 36, 49. The information collected includes both the contents of communication (e.g., "User Input Data") and software that collects record information such as IP addresses and User Identifiers. *See* CAC ¶ 19 (defining data collected). And, like in *Facebook*, the tracking continues across websites in part due to third parties' collection and use of the User Identifiers that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions." CAC ¶18; *see also United States v. Jones*, 565 U.S. 400, 418 (2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year."); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete

injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *see also Yockey*, 688 F. Supp. 3d at 969–970 (CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" . . . "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Indeed, Judge Tigar's decision in *Gabrielli v. Motorola Mobility LLC* is squarely on point, and rejects the exact argument Politico now advances. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *21–22. *Gabrielli* is a nearly identical case where a plaintiff sued Motorola for CIPA violations because Motorola promised that plaintiff he could "Reject All" third party tracking cookies, but nevertheless placed tracking cookies on his device anyway. Judge Tigar held that "Motorola depriv[ed] [plaintiff] control of personal information regarding his digital activity and profile," which "are sufficient to establish a concrete injury to his right to privacy and confer standing" under CIPA and California's constitution. *Id*. at *16–17. The same is true here: Plaintiff has alleged that website users chose "to opt out of, decline, or reject non-required cookies, Defendant nonetheless continued to cause the Third Parties' cookies, including Performance Cookies and Online Behavioral Advertising cookies[.]" CAC ¶ 31; *see also In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316 at 325 (3rd Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."). Plaintiff was concretely injured when Politico intentionally enabled the Third Parties to place tracking cookies on Plaintiff's browsers and devices ***against*** his rejection to "collect, track, and compile users' Private Communications, including his browsing history, visit history, website interactions, user input data, demographic information. Here, where Politico presented Plaintiff with a promise that he could control his information, but allowed Third Parties to collect that information anyway, standing is manifest. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836 at *21–22.

Politico's arguments to the contrary ignore the Complaint. It first posits that "[t]he Complaint does not identify any personal information of Plaintiff's that Politico collected or disclosed to a third party, nor any resulting harm," supposedly foreclosing any privacy injury, and relying almost entirely

on this Court's prior decision in *Kishnani v. Royal Caribbean Cruises Ltd*., No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025). MTD at 7. As a preliminary matter, *Kishnani* only addressed the expectation of privacy in record information under a pen register claim. Unlike *Kishnani* where plaintiff complained of the use of a pen register without consent, here, Defendant solicited Plaintiff's preferences and created an expectation that his privacy requests would be honored, i.e., his information would be collected only by first party cookies and would only be used for "strictly necessary" purposes. CAC ¶¶ 26-27. Politico promised that it would "Not Sell [User] Information" and not place "Online Behavioral Advertising" cookies on user's devices, but then immediately did just that. This is a distinction with a huge difference: Politico's promise created a reasonable expectation of privacy in that user information,[2] which was an important factor lacking for Article III standing in *Kishnani*. *Kishnani* 2025 WL 1745726 ("[i]ntrusion on privacy alone can be a concrete injury . . . the nature of the injury turns on whether a plaintiff has a legitimate expectation of privacy.") (*quoting Patel v. Facebook Inc*., 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018)). Further, in *Kishnani*, there were not allegations of the aggregation of data that allowed for the creation of user profiles and tracking across the internet. These factors significantly change the analysis and invoke *In re Facebook* where the Ninth Circuit made clear that a consumer has an expectation of privacy in data that is aggregated and collected against the user's wishes.

Secondly, Politico's argument that Plaintiff "only [pleads] what information could be captured" misreads the Complaint. MTD at 7. Judge Tigar again rejected this exact argument in *Gabrielli*: Motorola argued that the plaintiff had no standing because he "merely described data that Motorola *could* have collected." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16. Judge Tigar was not fooled: "the complaint alleges that Motorola in fact ignored [plaintiff's] rejection of cookies and 'continued to cause the placement and/or transmission of [third-party] cookies along with user data.'" *Id. see also* CAC ¶¶ 5, 31, 81. Moreover, courts have consistently refused to require plaintiffs to plead the *exact* communications they had with websites. *See, e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents

[2] *See infra* § III.D.2 and § III.E.

were not record information such as her name and address"); *Graf v. Zynga Game Network, Inc*. (*In re Zynga Privacy Litig*.), 750 F.3d 1098, 1108–09 (9th Cir. 2014)).

Even if there were such a requirement, Plaintiff has alleged specific categories of data which were allowed to be collected by the Third Parties against their express wishes. *See* ECF 12 at 10–11 (quoting ECF No. 1 ¶ 3). He alleges that specific categories of information *are* collected, from him and all similarly situated. CAC ¶ 19 (categories of Private Communications which Defendant allowed the third parties to "surreptitiously track in real time and collect Website users' personal information"); *id.* ¶¶ 21, 31-34, 41. This is sufficient.

**2. Plaintiff Is Not a "Tester"**

Clawing for any reason to divert scrutiny from its lies to consumers who click "Do Not Sell My Information," Politico demands this Court infer that Plaintiff "is in truth a professional 'tester' who actively seeks out purported privacy violations to manufacture litigation," thus defeating Article III standing. MTD at 8. Politico's only support for "confirming [Plaintiff] is a professional litigant" is a curated list of Plaintiff's attempts to vindicate his privacy rights, of which Politico requests judicial notice. *Id*., *see also* ECF 19. Politico impermissibly demands the Court *draw inferences against Plaintiff*—that he is a "tester," adversely affecting his standing. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir. 2018) (even if a document is subject to judicial notice, the inferences the court can draw from that document must "not [be] subject to reasonable dispute"). And it demands this Court infer that Plaintiff knew that *Politico* would violate his privacy based on different cases against different entities, and that he was in fact "testing" the Website here for privacy violations. MTD at 8-9. That is neither true, nor in the Complaint. Indeed, the Complaint pleads otherwise. *See* CAC ¶ 75 (enumerating reasons Plaintiff visited Websites) and ¶ 83 (Plaintiff "**does not have the technical knowledge necessary to test** whether the Websites honors users' requests to reject all"). As Judge Tigar explained in *Gabrielli v. Motorola Mobility LLC*, Politico's impermissible inferences must be rejected:

> As for Motorola's "tester" argument, Motorola seeks to apply the cases dismissing invasion of privacy claims brought by tester plaintiffs on the grounds that such persons actually seek out invasions of privacy and so have no reasonable expectation of privacy in their personal information, and thus no injury sufficient to confer standing. *See, e.g., Rodriguez v. Autotrader.com, Inc.,* No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387,

> at *2 (C.D. Cal. Mar. 14, 2025). But these cases do not apply here, given that [plaintiff] pleads that he is not a tester and that he visited Motorola's website to "browse information about Motorola's products" and not to seek out privacy violations. ECF No. 1 ¶ 70; *see also Rodriguez v. Autotrader.com, Inc*., No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 at *1 (C.D. Cal. April 4, 2025) (no dispute that the plaintiff was a tester); *id*., ECF No. 34 ¶ 4 (plaintiff pleading that she was "a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law"). Because the Court considers only the facts alleged in the complaint and accepts those facts as true, there is, as a threshold matter, no basis to consider [plaintiff's] alleged status as a tester in determining his standing.

*Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *21–22.

### C. Plaintiff Adequately Pleads his CIPA Claims under § 631(a).

Plaintiff alleges a wiretapping claim under the *fourth* clause of Section 631(a), which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co*., 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up); *see* CAC ¶¶ 114-133. This clause "can apply to internet communications." *Id.* (*citing Cody v. Ring LLC*, 718 F. Supp. 3d 993, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. 2024)); *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to internet communications.").[3]

Politico integrated its Website with third-party code that enables the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." CAC ¶ 36. The Complaint describes how these cookies transmit communications "in real time." *See, e.g., id*. ¶¶ 3, 19, 38-68. Specifically, Plaintiff alleges that "the third-party cookies . . . surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id*. ¶ 19. Plaintiff includes screenshots showing network traffic that occurs ***after*** a user rejects these cookies using the Website's cookie banner and proceeds to browse the

[3] Politico's arguments that the first clause under 631(a) "does not apply to internet communications" (MTD at 10) is misplaced; Plaintiff alleges that Politico aided and abetted eavesdropping and unlawful use of information of the *fourth* clause of 631(a) (incorporating the *second* and *third* clauses, but not the first). Plaintiff does not allege a cause of action against Defendant under § 631(a)'s first clause. *See generally* ECF No. 1.

Website. *Id*. ¶¶ 32-33. Politico's arguments to the contrary—that (1) Plaintiff does not establish that the "contents" of his communications were tapped (2) "in transit"; that (3) Plaintiff does not allege a cause of action under § 631(a)'s third clause; and (4) contracting service providers/SaaS vendors are wholly exempt from CIPA § 631(a)'s fourth clause—are unconvincing.

**1. Plaintiff Establishes "Contents" Were Intercepted.**

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (§ 631(a) protects "user-generated material" but not "routine identifiers"). Here, Plaintiff alleges interception of "contents," including user input data such as "search queries, the user's name, age, gender, email address, location, and/or payment information." CAC ¶ 19; *id.* ¶ 127 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data").

But Politico again loses the plot. It argues that "Plaintiff alleges only the collection of metadata-type information[.]" MTD at 11. Politico ignores Plaintiff's allegations about the interception of user input data, and the overwhelming case law holding that user input data (as conveyed through search terms or URLs that include search terms) are "contents" under CIPA. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *See, e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content"). Plaintiff alleges that such search terms were also intercepted by the Third Parties. CAC ¶ 24.

**2. Politico Tapped Plaintiff's Communications "in Transit."**

Politico next argues that Plaintiff does not allege that third parties intercepted Plaintiff's communications "while" in transit. MTD at 10-11. This is neither true nor material. "Section 631(a) relates not just to messages, reports, or communications that are '*in transit*,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp*., 2024 U.S. Dist. LEXIS 186701, at *19-20 (C.D. Cal. Oct. 4, 2024) (*citing* Cal. Pen. Code § 631(a) and *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701 at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis."). Further, courts find simultaneous duplication and interception of communications sufficient to meet the "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous" *St. Aubin,* 2024 U.S. Dist. LEXIS 179067 at *17. Plaintiff has alleged that "the interception [] occur[s] contemporaneous with the sending or receipt of the message," through alleging "real time" dissemination of Plaintiff's information. *Valenzuela Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Not only has Plaintiff explained how these cookies operate, he also identified specific examples of these cookies transmitting data "in real time" in California. CAC ¶¶ 3, 19, 31, 41-68. Thus, Plaintiff sufficiently alleged that his information was tapped "in transit." *St. Aubin*, U.S. Dist. LEXIS 179067 at *17.

**3. Plaintiff's § 631(a) (Clause Three) Claim Survives.**

Politico correctly observes there is no independent basis for liability under § 631(a)'s third clause. But Politico incorrectly concludes that Plaintiff fails to allege "violation of the first or second clauses," and therefore has "also failed to plead a violation of the third clause." MTD at 12. The Complaint clearly alleges CIPA violations by the Third Parties named in the Complaint,

demonstrating *those Third Parties* violate clause one, two, *and* three of § 631. CAC ¶¶ 2–5, 46–79 (identifying unconsented wiretapping via Third Party cookies); *id.* ¶¶ 119, 125-26 (Third parties made an intentional tap or unauthorized connection); *id.* ¶¶ 122 (with any line, cable, or instrument—i.e., cookies in internet communications); *id.* ¶¶ 30, 78-79, 126 (willfully and without consent of all parties); *id.* ¶¶ 19, 127 (reads or learns the contents of any communication while in transit); *id.* ¶¶ 4, 35, 45-74 (uses any information so obtained). Defendant's arguments thereby fail. *Id.*

**4. Politico's Third-Party Vendors Are Not Intended Recipients.**

Politico argues third-party cookies are exempt from CIPA, claiming the vendors are not true Third Party listeners but merely "SaaS vendors simply provid[ing] tools allowing website operators to collect and analyze their own user data." MTD at 12-13. But Politico misapplies the test. To evaluate "whether a software service provider . . . constitutes a third-party listener as opposed to a participant in the conversation, courts assess whether the software service 'extends beyond the ordinary function of a tape recorder.'" *Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist. LEXIS 73736, at *17-18 (N.D. Cal. Apr. 17, 2025); *see also Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891 at 898 (N.D. Cal. 2023). This requires looking at the software vendor's independent "capability to use its record of the interaction for [another] purpose." *Cody,* 718 F. Supp. 3d at 1002 (N.D. Cal. 2024) (quoting *Javier*, 649 F. Supp. 3d at 900). "If software essentially functions as a wiretap that redirects a plaintiff's communications with a website page to a marketing company that can use the data for its own ends," under § 631, the marketing company is not a party to the communication, as alleged here. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (denying motion to dismiss where plaintiff alleged that the embedded software code redirected website interactions to a third-party in real time); *In re Facebook, Inc.*, 956 F.3d at 607-08. Plaintiff need not make this demonstration: "to establish liability under section 631 a plaintiff need only show that the software vendor <u>is capable of</u> using the data it collects for some other purpose; there is no statutory requirement that the vendor actually did so. Therefore, a software vendor may be considered a third party even if it merely provides recording and transmission services to a party to the communication." *Torres,* 2025 U.S. Dist. LEXIS 73736, at *9 (N.D. Cal. Apr. 17, 2025) (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021).

Here, Plaintiff alleges that the Third Parties use this "user data across websites and time for their own purposes and financial gain, [and] further, the Third Parties share user data and/or user profiles to unknown parties to further their financial gain." CAC ¶ 4. Politico's citation to *Graham v. Noom* reinforces Plaintiff's point. In *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021), "the court held that software used to capture data on behalf of a website owner functioned as a mere recording tool **because** plaintiff did not allege that the software vendor intercepted and **used the data itself**." *Torres,* 2025 U.S. Dist. LEXIS 73736, at *9 (N.D. Cal. Apr. 17, 2025). Thus, Plaintiff's CIPA allegations remain viable.

### D. Plaintiff Adequately Pleads His Pen Register Claim Under § 638.51.

CIPA § 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device ***or process*** that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis supplied). Decisions from this District—including Judge Tigar's recent decision in *Gabrielli* on identical arguments—clarify that Plaintiff adequately pleads each element of this claim. *See, e.g.*, *Gabrielli*, 2025 U.S. Dist. LEXIS 133836 at *30*; Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). Plaintiff alleges that the cookies and the corresponding software code installed by Defendant on its Websites operate as pen registers under the meaning of the statute because they record information about the communications such as users' IP address and user-agent information, which is "routing, addressing, or signaling information." *Id.*; *see* CAC ¶ 138.

Politico, however, rehashes arguments that courts in this District have already rejected. Despite splitting its analysis over four sections, Politico's arguments fall into three buckets: **(1)** CIPA's prohibition of "pen registers" applies only to devices, not "device or processes," as the statute and federal courts in this District recognize; **(2)** Politico's third party cookies cannot be pen registers simply because some capture "contents" *with* record information—while paradoxically arguing that

record information like IP addresses are not protected by CIPA *at all*; and **(3)** Politico's decision to dupe Website visitors with illusory options to "Not Sell My Information" is impenetrably shielded by an exemption for wire communication service providers, when Politico cannot show it qualifies for that exemption. Each of these arguments fail.

**1. Pen Registers are "Device[s] or Process[es]" not Limited to Telephones.**

Defendant argues internet technologies are not "pen registers under California law," citing everything *but* cases from this District. MTD at 14-16. That is because courts in this District have repeatedly rejected that argument. As Judge Tigar ruled in *Gabrielli*; "[Defendant] argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30 (citing *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023)). Other courts in this District agree that internet trackers can be pen registers. *See, e.g.*, *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024). This is because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Cal. Pen. Code § 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*. Politico wholly ignores the "device *or process*" definition, instead only arguing that the historical *device* aspect of the definition precludes its application. MTD at 14-16. Like the plaintiffs in *Gabrielli*

and *Mirmalek*, Plaintiff alleges that the Third-Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." Compare *Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with CAC ¶ 139 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information").

Politico next argues that because some third party software and related cookies collect "contents" alongside "record information," *none* of them can be classified as pen registers. MTD at 17. But Plaintiff alleges ***four full pages*** of explanation of third-party software and cookies, and alleged that some did, in fact, just collect record information. *See, e.g.*, CAC ¶ 43 (Google CID cookie tracks only Client ID, which is record information). This is sufficient.[4]

Politico's only authority to the contrary is this Court's prior decision in *Kishnani*, where plaintiff pled that *one* device (the "TikTok Software") captured both "information *about* a communication" and "*the contents* of a communication" to be a pen register. 2025 WL 1745726. There, this Court observed that "Plaintiff's single claim turns on whether [the TikTok Software] constitute[s] a trap and trace device," and evaluated allegations that either alleged the collection of contents, or the collection of information regarding the "metadata" of the communication. *Id.* But ruling for Plaintiff here would be consistent with this Court's logic: here, unlike in *Kishnani*, Plaintiff has pled Politico enabled *multiple* tracking devices, some of which *only* collected record information. Indeed, finding for Politico would require impermissible adverse inferences that *each* of the alleged tracking cookies collected *both* content *and* record information. *Roffman v. Perfect Bar*, 2023 U.S. Dist. LEXIS 6049, at *7 (N.D. Cal. Jan. 12, 2023) (drawing inferences in favor of defendant on pleadings "violates black-letter law"). Regardless, Politico's position is self-contradictory: Politico

[4] Moreover, out of these *four pages* of cookies, only Politico (and the Third Parties) currently has conclusive information to determine which of these cookies transmitted "contents," "record information," or some combination of the two. That is what discovery is for. *D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023) ("a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.").

insists that the collected data was *only* "metadata-type information" to urge this Court to dismiss Plaintiff's § 631(a) claims, but also argues that the same trackers collected "*more* than just 'routing, addressing, or signaling [i.e., record] information" to attack Plaintiff's Cal. Pen. Code § 638.51 claim. *Compare* MTD at 11, *with* MTD at 16.

**2. Defendant's Use of a Pen Register Harmed Plaintiff.**

Politico next conflates the question of what CIPA protects and what constitutes and injury when it argues that "IP addresses, browsing history, and other metadata fall outside CIPA's privacy protections." MTD at 13. There is no question that record information like IP addresses and User Identifiers, among other information like URLs, links clicked, etc., is protected by the pen register provision of CIPA. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30. The question Politico seems to invoke is whether there is an expectation of privacy in the data such that there is an injury from the improper surveillance. As discussed above in § III.B.1, there is a reasonable expectation of privacy because Politico promised to keep the information private. Further, it is not just the IP address or User Identifier at issue; it is the use of the information that facilitates the aggregation and creation of user profiles that supports a reasonable expectation of privacy.

Defendant's cases do not hold otherwise. None of the cases involve circumstances where a defendant offered to protect information to lure someone to use a website and then violated that promise when it intercepted IP addresses, URLs, or user identifiers to allow the aggregation of data to create user profiles. *Cf. Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (finding no expectation of privacy where plaintiff did not allege that defendant "disregarded Plaintiff's privacy choices while simultaneously holding itself out as respecting them"); *Sanchez v. Cars.Com Inc.*, 2025 Cal. Super. LEXIS 710, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (no allegations of defendant acting beyond authorization); *Rodriguez v. Plivo Inc.*, 2024 Cal. Super. LEXIS 66496 (2024 LX 198316) (same). In *United States v. Forrester*, 512 F.3d 500, 503 & n.6 (9th Cir. 2008), the Ninth Circuit concluded that the government did not violate the fourth amendment rights of a person when using a pen register for internet surveillance to capture "the to/from addresses of his e mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account." But the government did not promise it

would not use technological surveillance to lure the defendant to use this device, and then execute a pen register.[5]

Politico completely ignores what separates this case from the cases it cites—including this Court's prior decision in *Kishnani*—Politico's ***own broken promises and false representations*** that Politico would not track its users' information after those users clicked "Do Not Sell My Information," and toggled off "Online Behavioral Advertising" and "Performance" Cookies. CAC ¶ 1. That is outcome-determinative: "[U]sers have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data); *Brown*, 685 F.Supp. 3d 909 at *19-20 (plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (It "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"). Here, Politico set the expectation itself that it would not place tracking cookies that share users' record information (and "contents") with third-parties if they declined to consent to such cookies. Users who rejected such cookies had a reasonable expectation based on that promise. Thus, Plaintiff had a reasonable expectation of privacy as to his information on the Websites—thanks to Politico's own representation that it would "Not Sell [Plaintiff's] Information."

**3. Politico Fails to Demonstrate that the "Service Provider" Exemption to § 638.51 Applies.**

Politico incorrectly contends that it is exempt from liability due to § 638.51(b)(1)'s "electronic communication service[s]" carve-out. MTD at 17. But even if Politico's Website is an "electronic communication service," Politico still does not satisfy the exception: It does not argue that its cookie

[5] The Ninth Circuit also acknowledged that there was a statutory protection of the information: a federal pen register statute. *Id*. at 512. Inherent in the analysis is that the statutory requirement for a pen register is still enforceable even if the information itself was not subject to fourth amendment protection. *Id*.

usage was "***to*** operate, maintain, and test" Website services, rather than pursuant to agreements to sell website users' information (as Plaintiff pled). *See, e.g.*, CAC ¶¶ 4, 15, 35. Judge Tigar rejected this same argument in *Gabrielli v. Motorola*. Politico has not established "that it collects the tracked information through the cookies to 'operate, maintain, and test a wire or electronic communication service,'" that its third-party advertising cookies were "necessary to operate or maintain the website,'" or that "the collection of any data by a third party is necessary" at all. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *21–22 (quoting § 638.51(b)(1) and *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp 3d 921, 930 (C.D. Cal. 2025). It strains credulity that "Online Behavioral Advertising" cookies (CAC ¶ 1) were to "operate, maintain, and test" its news service, especially since those cookies could (supposedly) be toggled off, unlike its "Strictly Necessary Cookies," which could not be. CAC ¶ 1. Further, "[Defendant's] argument that [plaintiff] has not 'alleged any facts in the Complaint that would preclude the applicability of this exception,' ignores the fact that the burden falls on [Politico] to establish the applicability of this exception." *Id.* Politico has not done so.

**E. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Succeed.**

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together. Plaintiff demonstrates "(1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez* 47 Cal. 4th at 285–97 (2009).

First, as explained above, Politico itself created a heightened expectation of privacy when it presented a cookie banner explicitly promising users the choice to reject tracking. *See* CAC ¶ 1; *see also supra* § III.D.2. A reasonable user would expect that choice to be honored. *See, e.g.*, *In re Facebook Internet Tracking Litig*., 956 F.3d at 601 (reasonable expectation of privacy inquiry examines the "customs, practices, and circumstances surrounding a defendant's particular activities"); *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *15 (denying motion to dismiss privacy claims where defendant allegedly tracked user data after the user clicked a "Reject All non-essential cookies" button). *See also Thomas*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *Brown*, 685 F.Supp. 3d at *19-20; *Calhoun*, 526 F.Supp.3d at 630; *In re Google Location History*

*Litig*., 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021). Thus, Plaintiff had a reasonable expectation of privacy as to his activity on the Websites based on Politico's own representations. *See* CAC ¶¶ 1-2, 26-29, 95.

Politico casts its behavior as "routine" commercial behavior. MTD at 19. But there is nothing routine about blatantly lying to consumers who click "Do Not Sell My Information." Indeed, Politico simply ignores that Plaintiff gave Politico explicit notice that he did *not* consent to cookies, and thereby did not consent to the disclosure of his data—record or otherwise—through those tracking cookies. CAC ¶¶ 30, 79. District courts recognize this mass *accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe,* 668 F. Supp. 3d at 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090 at *17-18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive."). Plaintiff alleges that his data was collected to "create[ a] consumer profile containing detailed information about a consumer's behavior." *See* CAC ¶¶ 4, 35. Plaintiff expressly rejected Politico's third-party cookies that compile that information. *Id.* Such conduct violates not only Politico's own promises, but also social norms. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 ("defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive). Plaintiff and other users had a reasonable expectation of privacy, Politico's conduct was highly offensive,[6] and thus violated Plaintiff's privacy interests guaranteed by the California Constitution.

**F. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation.**

Plaintiff describes Politico's misrepresentation with the specificity Rule 9(b) requires. "The complaint states that the 'who' is [Politico]; the 'what' are misrepresentations by [Politico] through the popup banner offering users the option to [reject all "Online Behavioral Advertising Cookies" and 'Performance Cookies' after clicking 'Do Not Sell My Information,']; the 'when' is the … occasion[s] that [Plaintiff] visited [Politico's] website … ; the 'where' is on [Politico's] website; and

[6] Courts do not typically resolve these questions on the pleadings; these inquiries are fact-intensive and entail weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises is highly offensive "is indeed a factual question best left for a jury").

the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836 at *21–22. Politico contends that Plaintiff must plead "who authored or approved the challenged statements" on Politico's *own* cookie banner, and the exact date of Plaintiff's website visits. *See* MTD at 20-21. But Plaintiff's current allegations are sufficient. *Id.* And Politico's demand that Plaintiff must plead "duty to disclose" is self-defeating—Politico acknowledges that "a duty arises [] in limited circumstances, such as . . . **to prevent other statements from being misleading**." MTD at 21. Either Politico's representation was false, as Plaintiff alleges in CAC ¶¶ 2, 30, 80-82, or Politico's representation was *misleading*—i.e., that Politico's Privacy Center[7] led visitors to believe that one could disable all third-party tracking cookies, when those "cookies continued to collect data after opt-out" anyway. MTD at 20.

Politico's argument that Plaintiff has failed to identify any loss of money, property, or value ignores Plaintiff's invasion of protected interests, misappropriation of his information, and that his information has objective value. *See, e.g.*, CAC ¶¶ 69-73, 131, 150-51, 184. Invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit. *TransUnion*, 594 U.S. at 425. And Plaintiffs "have a stake in the value of their misappropriated data." *Brown*, 685 F. Supp. 3d at 940 (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (viable damages model can be based on "[u]ser's willingness to pay to prevent data collection"). Thus, Plaintiff adequately pleads his fraud and misrepresentation claims.

### G. Plaintiff Adequately Pleads his Contract and Quasi-Contract Claims.

#### 1. Plaintiff Adequately Pleads Count VII and Count VIII.

Plaintiff and Politico agree on the standard: "To state a claim for breach of contract, a plaintiff must allege "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach*." Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). Plaintiff alleges that (1) a contract exists (*see* CAC ¶ 169) (2) Plaintiff performed his obligation under that contract (*id.* ¶ 171), and (3) Defendant

[7] Politico erroneously conflates this with its own "Privacy Policy," which is a distinct document referenced at ECF 1 at ¶ 168-77.

breached that contract (*id.* ¶ 170). Politico concedes those points. Politico only disputes the damages associated with its breach. *See* MTD at 22. But Politico's argument overlooks that Plaintiff's information has value. *See, e.g.*, CAC ¶¶ 69-73, 94, 131, 150-51. As discussed above, invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit, Plaintiffs "have a stake in the value of their misappropriated data." *Brown*, 685 F. Supp. 3d at 940 (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (summarizing viable damages model based on "[u]ser's willingness to pay to prevent data collection"). Politico must acknowledge some indicia of Plaintiff's expected value in his Personal Information, if it is a commodity to be sold. CAC ¶ 73. Arguing that a person has no "contractual expectation" in his Personal Information after a contract promises to "Not Sell [that person's] Personal Information" is an untenable logical leap. Plaintiff demonstrates sufficient damages to sustain his contract claims.

Separately, Politico contends that Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing ("Count VIII") is duplicative of his contract claims, mandating dismissal. Politico correctly observes that "[i]f the allegations do not go beyond the statement of a mere contract breach and, *relying on the same alleged acts*, simply seek the same damages or other relief already claimed in a contract cause of action, they may be disregarded as superfluous." *Careau & Co. v. Sec. Pac. Bus. Credit*, Inc., 222 Cal. App. 3d 1371, 1395 (1990) (emphasis supplied). But Politico fails to consider key differences between these claims. Unlike Plaintiff's Count VII, Plaintiff's Count VIII notes Politico was "invested with ***discretionary*** power," took "actions ***outside that contractual*** *promise to deprive* consumers," and that this deprivation was "***objectively unreasonable***." CAC ¶¶ 178-82. This is wrongful conduct beyond what Plaintiff alleged in Count VII. *Compare* CAC ¶¶ 171-74 (Count VII) with *id.*

**2. Plaintiff's Count VI (Unjust Enrichment) May Proceed.**

Politico contends that Plaintiff's unjust enrichment claim—pled in the alternative—is barred as a matter of law. Not so. The Ninth Circuit regularly allows independent claims for unjust enrichment to proceed. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting unjust enrichment claim to proceed). To successfully plead

unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. These allegations are all that is necessary at this stage in the proceedings.

**H. Plaintiff Adequately Pleads his Trespass to Chattels Claims.**

Plaintiff adequately pleads his trespass to chattels claim. He establishes "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge,* 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000). Plaintiff alleges that Defendant "intentionally and without consent or other legal justification caused cookies to be stored on" his computer, interfering with his possessory. CAC ¶¶ 187-89. Plaintiff alleges that the trespass caused measurable damage in the "reduction of storage space, disk space, and performance" of his device. *Id*. at ¶ 190. This reduction in storage has a measurable impact, and is sufficient to constitute damages for a trespass to chattels claim. *Compare In re Meta Healthcare Pixel Litig*., 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (motion to dismiss trespass to chattels claim denied where Plaintiff "alleged measurable harm from the loss of available storage space on their devices[.]") with CAC ¶ 189. Plaintiff "allege[s] measurable harm from the loss of available storage space on his devices" sufficient to survive a motion to dismiss. *Id*., 713 F. Supp. 3d at 659 (internal quotations omitted).

**I. Plaintiff Requests Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Politico's motion to dismiss must be denied in total.

Dated: August 28, 2025.

**GUTRIDE SAFIER LLP**

*/s/Hayley A. Reynolds*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*