USAMA KAHF (SBN 266443)
E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE)*
E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE)*
E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

XUAN ZHOU
E-Mail: xzhou@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Dr. Suite 1000
San Diego, CA 92121
Telephone: (858) 597-9632

Attorneys for POLITICO LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE**

| | |
|---|---|
| VISHAL SHAH, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POLITICO LLC,<br><br>Defendant. | Case No: 5:25-cv-05213-NW<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: November 5, 2025<br>Hearing Time: 9:00 A.M.<br>Courtroom: 3<br><br>Complaint Filed: June 20, 2025<br>Trial Date: Not Set |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. ARGUMENTS ..... 1
A. Equitable Tolling Does Not Apply Where Plaintiff Merely Pursued the Wrong Procedure ..... 1
B. Plaintiff Cannot Allege a Concrete Injury for Standing. ..... 3
1. Abstract allegations of statutory violation do not establish a concrete injury. ..... 3
2. Plaintiff has no cognizable expectation of privacy to cure his deficiencies. ..... 4
3. Plaintiff's denial of his "tester" status does not cure his lack of standing. ..... 5
C. Plaintiff's CIPA 631(a) Claim Cannot Survive. ..... 6
1. Plaintiff fails to allege that "contents" of a communication were intercepted. ..... 6
2. Plaintiff fails to allege POLITICO intercepted communications while "in transit." ..... 7
3. Plaintiff's claim under the third clause of Section 631(a) fails. ..... 9
4. POLITICO cannot eavesdrop on its own conversation. ..... 9
D. Plaintiff's CIPA 638.51 Claim Cannot Survive. ..... 9
1. Third party trackers are not pen registers. ..... 9
2. Plaintiff suffers no harm because there is no reasonable expectation of privacy in routine metadata. ..... 11
3. The Section 638.51(b)(1) service provider exemption applies. ..... 12
E. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..... 12
F. Plaintiff's Claim of Fraud, Deceit and Misrepresentation Fails. ..... 13
G. Plaintiff's Contract and Quasi-Contract Claims Fail. ..... 14
1. No contract exists between Plaintiff and POLITICO. ..... 14
2. The unjust enrichment claim cannot stand. ..... 14
H. Plaintiff's Trespass to Chattels Fails. ..... 14
III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajaxo Inc. v. ETrade Grp., Inc.*,
135 Cal. App. 4th 21 (2005) .......... 14

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F.Supp.2d 1148 (C.D. Cal. 2007) .......... 8

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 8

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 4

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 7

*Castro v. Tri Marine Fish Co. LLC*,
921 F.3d 766 (9th Cir. 2019) .......... 2

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......... 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 3

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 .......... 8, 9

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 14

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... *passim*

*Gabrielli*, *Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 10

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 12

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 13

*Harris v. Carter*,
515 F.3d 1051 (9th Cir. 2008) .......... 1

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 12, 13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 13

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 13

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 4, 5

*Kwai Fun Wong v. Beebe*,
732 F.3d 1030 (9th Cir. 2013) .......... 1

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .......... 6

*Licea v. Cinmar*,
LLC, 659 F.Supp.3d 1096 (C.D. Cal. 2023) .......... 8, 10

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 14

*Matthews v. Apple, Inc.*,
769 F. Supp. 3d 999 (N.D. Cal. 2024) .......... 15

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 15

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .................................. 10, 11

*Mitchell v. Sonesta Int'l Hotels Corp.*,
No. CV 24-2603-GW-SSCX, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)...................................... 8

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ......................................... 4, 5

*Move, Inc. v. Citigroup Glob. Markets, Inc.*,
840 F.3d 1152 (9th Cir. 2016) ............................................................................................ 1

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ............................................................................................ 2

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......................................................... 3, 4, 5

*Rasberry v. Garcia*,
448 F.3d 1150 (9th Cir. 2006) ............................................................................................ 1

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ...................................................................................................... 8, 9

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ................................................................................ 11, 12

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) ........................... 6, 12

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)............................................................................... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................... 4, 5, 6, 11

*Ticketmaster Corp. v. Tickets.com, Inc.*,
No. 99CV7654, 2000 WL 1887522 (C.D. Cal. Aug. 10, 2000), *aff'd*, 2 F. App'x 741
(9th Cir. 2001)................................................................................................................ 15

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................................................*passim*

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. Aug. 14, 2023) ....................................................................... 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 7, 11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 7, 11

**Statutes**

Cal. Civ. Code § 3358........ 14

Cal. Penal Code § 638.51........ 9, 10

Cal. Penal Code § 638.51(b)(1) ........ 10, 11, 12

## I. INTRODUCTION

Plaintiff's Opposition does nothing to rescue his claims from dismissal.[1] Critically, Plaintiff's claims are time-barred by the statute of limitations. He concedes he first realized his alleged claims in August 2023 yet waited months to initiate arbitration while simultaneously disclaiming consent to arbitrate. When the arbitrator ruled the dispute was not arbitrable, Plaintiff still failed to file a timely lawsuit. Instead, he pursued the wrong procedure by filing a petition to confirm a non-existent "award," which lacked subject matter jurisdiction. Only after these missteps did Plaintiff bring this action, long after the statute of limitations period expired. POLITICO should not bear the expenses of Plaintiff's procedural errors.

Nor does Plaintiff cure the other fatal defects in his pleadings. He lacks standing to pursue the relief sought, and his Complaint fails to allege facts sufficient to state claims for relief. Because neither the aborted arbitration nor the defective petition to confirm tolls the statute of limitations, and because Plaintiff fails to plead any cognizable injury, his claims should be dismissed with prejudice.

## II. ARGUMENTS

### A. Equitable Tolling Does Not Apply Where Plaintiff Merely Pursued the Wrong Procedure

An arbitration proceeding itself does not toll the statute of limitations. *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (equitable tolling under the FAA applies only in rare and extraordinary circumstances to preserve "the accuracy and fairness of arbitral outcomes"). Equitable tolling requires a plaintiff "to at least demonstrate that, despite their exercise of diligence, extraordinary circumstances beyond their control prevented them from timely filing their claims." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013). A lawyer's misunderstanding of the law is not an "extraordinary circumstance" that warrants equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) (equitable tolling must be denied where litigant's own tactical mistake caused filing delay).

---

[1] Filed after the 5 pm deadline set by Judge Wise's Standing Order, the Opposition should be disregarded on that basis.

The Ninth Circuit also makes clear that an "arbitration award" under the FAA means a written decision that finally resolves the merits of a claim, defense, or issue. *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 774 (9th Cir. 2019). A tribunal's determination that a dispute is not arbitrable does not qualify as an "award" and cannot trigger or toll Section 9's one-year confirmation period. Plaintiff's counsel – experienced litigators – were free to file a lawsuit immediately after the arbitrator's ruling and chose not to. This is evidenced by the fact that Plaintiff filed this instant lawsuit before any decision on, and during the pendency of, the petition to confirm.

Plaintiff now argues that the statute of limitations should be tolled by his pursuit of arbitration and his subsequent petition to confirm. Both contentions fail. The arbitration was dismissed because the arbitrator determined the matter was not subject to arbitration, and the later petition to confirm was improper because there was no arbitration award to confirm. A decision declining jurisdiction is not an award, and no case law suggests it can preserve claims. Equitable tolling does not apply to such procedural errors. Plaintiff also argues that POLITICO has not alleged it has been prejudiced by Plaintiff's delay. However, "[p]rejudice from unreasonable delay is presumed." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006). Plaintiff's tactical and nearly year-long delay unfairly burdens POLICTICO, forcing it to reconstruct stale events, which is exactly the prejudice what statutes of limitation are designed to prevent.

Given the absence of tolling, the statute of limitations began to run on August 17, 2023, when Plaintiff realized his CIPA claim. He then waited four months to file for arbitration on December 21, 2023, only to deny that he consents to arbitrate his claims. After the arbitrator dismissed the matter on July 29, 2024, Plaintiff delayed another six months before filing a February 7, 2025 petition to confirm a non-existent "award," a filing Judge Ryu in this Court promptly questioned for lack of subject-matter jurisdiction. Not until June 20, 2025, did Plaintiff file this class action.

Nothing prevented Plaintiff from timely filing litigation in the proper forum after the arbitration was dismissed. Plaintiff's delays were the product of his own strategic and procedural errors, not extraordinary circumstances beyond his control. Under controlling Ninth Circuit precedent, those errors cannot justify tolling. POLITICO should not be forced to bear the expense of Plaintiff's procedural missteps. Plaintiff's claims are therefore time-barred and must be dismissed.

### B. Plaintiff Cannot Allege a Concrete Injury for Standing.

#### 1. Abstract allegations of statutory violation do not establish a concrete injury.

Plaintiff has not plausibly alleged any concrete injury. In *Popa v. Microsoft Corp.*, the Ninth Circuit affirmed dismissal of CIPA claims for lack of standing, holding that the plaintiff failed to plausibly allege any infringement of a cognizable privacy interest to the extent Microsoft's tracking software captured her non-private personal information. *Popa v. Microsoft Corp*., No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025). The court emphasized that the information at issue, such as products plaintiff browsed on a website, her mouse movements and clicks, and non-sensitive portions of her mailing address, did not constitute private information. *Id*. at *2. Furthermore, plaintiff failed to show that website tracking caused any harm resembling the "highly offensive" interferences or disclosures that were actionable at common law. *Id*. at *5. The court held that such tracking was "similar to a store clerk's observing shopping in order to identify aisles that are particularly popular or spot problems that disrupt potential sales" and therefore bore no resemblance to the "highly offensive" interferences or disclosures that were actionable at common law. *Id*.

Plaintiff's reliance on *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) and the *Popa* court's interpretation of that case is misplaced and inaccurate. First, the *Popa* court noted that *In re Facebook* was decided before *TransUnion* which made "no distinction between 'procedural' and 'substantive' statutory provisions," as the Ninth Circuit did in *In re Facebook* and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). *See Popa*, 2025 WL 24488824, at *7. Furthermore, contrary to Plaintiff's assertions, the Ninth Circuit in *Popa* made clear it did not affirm *Eichenberger* or *In re Facebook*, noting those cases turned on their specific facts and different statutes, and held that Popa still failed to allege standing, affirming dismissal. *Id*. at * 8.

The same result follows here. Plaintiff asserts in conclusionary terms that "website users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, are surreptitiously obtained by the Third Parties via these cookies." Compl. ¶ 34. But, as in *Popa*, Plaintiff never alleges that his ***own*** information was actually intercepted, disclosed, or misused, nor does he identify any embarrassing,

intimate, or otherwise protectable information that was collected. Generalized speculation that POLITICO's website "could" monitor users (Compl. ¶ 69) is precisely the kind of abstract allegation that *Spokeo* and *TransUnion* reject. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–25 (2021).

District courts within this Circuit have reached the same conclusion. *See, e.g., Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing case because plaintiff relied only on hypothetical harms and failed to allege concrete harm related to his experience); *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *2 (N.D. Cal. May 13, 2025) (plaintiff must identify "specific personal information" that implicates a protectable privacy interest, and dismissing complaint that failed to do so) (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (no standing where plaintiff alleged only that defendant collected unspecified "data" or "information" without permission).

Finally, even if Plaintiff could plausibly allege a concrete injury, which he cannot, the routine collection of basic contact information of website visitors is not an invasion of a legally protected privacy right. *See Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (finding no injury in fact when plaintiff alleged that defendant tracked "browser and device data" and "other identifying information."). Plaintiff fails to allege any concrete, particularized injury comparable to reputational harm, disclosure of private facts, or intrusion upon seclusion – harms that *TransUnion* recognizes as sufficient. His bare assertion of a statutory violation, untethered from any concrete harm, cannot establish Article III standing.

**2. Plaintiff has no cognizable expectation of privacy to cure his deficiencies.**

Plaintiff cannot claim standing by invoking an "expectation of privacy," because the authorities he cites pre-date the clear, controlling *Popa* and *TransUnion* directives and involve far more sensitive and personal information than the routine, technical data at issue here. *Popa* noted the *Facebook* "analysis finds no support in *TransUnion*." *Popa*, 2025 WL 2448824, at *7. In *Brooks v. Thomson Reuters Corp*, the defendant compiled cradle-to-grave dossiers containing names, photographs, criminal history, relatives, associates, financial and employment records, highly personal information that, when

linked to specific individuals, constituted an invasion of privacy. No. 21-CV-01418-EMC, 2021 WL 3621837, at *1, 8 (N.D. Cal. Aug. 16, 2021). Likewise, in *Katz-Lacabe v. Oracle Am., Inc.*, Oracle used multiple tracking technologies and its "ID Graph" to aggregate data across devices, create detailed identity profiles, and infer sensitive characteristics such as life events, health, and wellness. 668 F. Supp. 3d 928, 935-36 (N.D. Cal. 2023). Also, in *In re Facebook*, Facebook secretly tracked users' browsing across third-party sites, compiled personal profiles, and monetized them with advertisers. *In re Facebook*, 956 F.3d at 596. As the Ninth Circuit in *Popa* described: "Facebook gained a cradle-to-grave profile without users' consent." *Popa*, 2025 WL 2448824, at *7. Plaintiff alleges only routine, anonymized, non-sensitive data – browsing history, device info, user interactions, demographics, and shopping preferences – which does not implicate the privacy interests recognized in *Brooks, Katz-Lacabe,* or *In re Facebook*. Courts in this Circuit have repeatedly rejected standing based on such allegations. *Kishnani* 2025 WL 1745726, at *4 (holding no harm by collecting device and browser info, referral tracking, and URLs); *Mitchener*, 2025 WL 2272413, at *4 (same).

Nor does *Gabrielli* help Plaintiff. First, *Gabrielli* was decided one month prior to *Popa*. *Gabrielli* relied on *In re Facebook* to summarily decide that a violation of CIPA gives rise to a concrete injury sufficient to confer standing. *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025). In *Popa*, however, the Ninth Circuit made clear that "[d]espite the broad statements made therein, [*In re Facebook*] still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa*, 2025 WL 2448824, at *8. As such, Plaintiff cannot simply rely on a "general right to privacy" to confer standing. *See id.* at *7. Here, Plaintiff pleads no disclosure of sensitive personal data, no misuse of his identity, and no tangible harm. At most, he claims that cookies fired despite his rejection, a bare procedural allegation insufficient to establish injury-in-fact under *TransUnion* and *Spokeo*. Accordingly, Plaintiff's claims fail for lack of standing.

**3. Plaintiff's denial of his "tester" status does not cure his lack of standing.**

Plaintiff's effort to disavow "tester" status cannot overcome his litigation history. A bare assertion of consumer interest is insufficient to demonstrate a concrete, personal injury where a plaintiff's own conduct shows no genuine personal stake. Here, Plaintiff has filed at least nine nearly

identical cookie-tracking lawsuits against different websites. The Ninth Circuit has recognized in the ADA context that a plaintiff's extensive litigation history undermines any plausible allegation of intent to return or genuine injury. *Langer v. Kiser*, 57 F.4th 1085, 1093 (9th Cir. 2023). District courts addressing similar cookie-tracking lawsuits have reached the same conclusion. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025) (dismissing claims where a self-described tester alleged only abstract invasions of privacy). Plaintiff's reliance on *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), is misplaced. POLITICO does not ask the Court to draw unreasonable inferences from judicially noticeable records, but rather to acknowledge the undisputed fact of Plaintiff's serial filings.

Furthermore, Plaintiff's reliance on *Gabrielli* is misplaced. In *Gabrielli*, standing existed because the plaintiff plausibly alleged a legitimate consumer purpose – visiting Motorola's site to browse product information – and a concrete deprivation of control over personal data. *Gabrielli*, 2025 WL 1939957, at *2, 6-7. Plaintiff here does not claim to have provided information to POLITICO or that POLITICO misused any data about him. Rather, he alleges only that cookies "could" have been deployed while he browsed news articles. That is precisely the sort of "bare procedural violation" that *Spokeo* and *TransUnion* hold insufficient to establish standing. *See Spokeo*, 578 U.S. at 342; *TransUnion*, 594 U.S at 441. Given his serial litigation history and failure to allege any concrete, personal harm, Plaintiff falls squarely within the "tester" paradigm. His disclaimer of that label is immaterial, and his claims should be dismissed for lack of Article III standing.

**C. <u>Plaintiff's CIPA 631(a) Claim Cannot Survive.</u>**

**1. Plaintiff fails to allege that "contents" of a communication were intercepted.**

Plaintiff's reliance on *Rodriguez v. Ford Motor Co*. is misplaced.[2] As the court explained, "courts have applied the second clause to internet communication." *Rodriguez v. Ford Motor Co*., 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, Case No. 23-cv-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024)). But Plaintiff's Section 631(a) claim fails at the threshold

[2] Although Plaintiff cites page 1116 of that decision, the cited portion of the opinion addressing CIPA clauses appears on page 1113 in the decision. Plaintiff misinterprets which clause can apply to internet communication. Opposition at 12.

because he does not plausibly allege interception of any protected "contents" of a communication.

Consistent with the Federal Wiretap Act, CIPA defines "contents" to mean the substance or meaning of a user's message, not routine identifying or routing information automatically generated in the course of transmission. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021). Courts applying these principles have held that items such as a user's name, age, gender, email address, IP address, device identifiers, location, and payment information are non-content record information, not protected "contents" under Section 631(a). *Yoon*, 549 F. Supp. 3d at 1082-83.

Plaintiff's attempt to invoke cases treating search queries as "contents" is misplaced. Those decisions are limited to situations where a user's search terms are communicated to a search engine. *See Zynga*, 750 F.3d at 1108-09 (holding that URLs may reveal contents only when they embed a user's search terms submitted to a search engine); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (recognizing that allegations of intercepted text messages or URLs containing users' search terms could involve "content" under the Wiretap Act). Plaintiff does not allege such a scenario. His own screenshots reflect, at most, referrer header information – basic address and routing data – which *Zynga* and *Yoon* confirm is not "contents" under CIPA. *Zynga*, 750 F.3d at 1107-09 (holding that the mere transmission of referrer header information, basic identification and routing data, does not constitute the contents of a communication); *Yoon*¸ 549 F.Supp.3d at 1082 (holding that Section 631(a) protects only user-generated content, not routine identifying or routing information). Plaintiff's vague reference to "search queriers" in website form fields is likewise insufficient, because he never specifies what, if anything, he entered, nor how those entries conveyed the substance of any of his private information.

In short, Plaintiff has alleged nothing more than the collection of routine identifiers and transactional data he voluntarily provided to POLITICO's website. Such information, along with the metadata-typed information addressed in POLITICO's motion, does not qualify as "contents" under Section 631(a), this claim must be dismissed.

**2. Plaintiff fails to allege POLITICO intercepted communications while "in transit."**

Plaintiff also fails to allege any "interception" of a communication while "in transit," as required

by Section 631(a). The requirement mirrors the Federal Wiretap Act. *Heiting v. Taro Pharms. USA, Inc*., 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). Courts in this Circuit have consistently interpreted "in transit" narrowly. *Licea v. Cinmar*, LLC, 659 F.Supp.3d 1096, 1109 (C.D. Cal. 2023); *Bunnell v. Motion Picture Ass'n of Am*., 567 F.Supp.2d 1148, 1152 (C.D. Cal. 2007). Plaintiffs' bare assertion that the third party "secretly intercepts" in real time, "eavesdrops" on form entries in real time is entirely conclusionary, providing no factual detail as to how or when any interception purportedly occurred. *Licea*, 659 F.Supp.3d at 1109. Courts have found that such rote recitations of statutory language are insufficient to plead an "in transit" interception. *See Heiting*, 728 F. Supp. 3d at 1126.

Nor can Plaintiff salvage his claim by invoking cases like *Mitchell*, where the complaint alleged that user communications were duplicated and transmitted to third parties simultaneously with their transmission to the website, thus satisfying the "in transit" requirement. *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCX, 2024 WL 4471772, at *8 (C.D. Cal. Oct. 4, 2024). By contrast, Plaintiff here alleges no contemporaneous diversion, and courts uphold Section 631(a) claims only to immediate, in-transit interceptions of substantive content. *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985) ("while the communication [is] in transit" or "being sent from" or "received at" in California); *Campbell v. Facebook, Inc*., 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (upheld Section 631(a) claims where plaintiffs alleged immediate, contemporaneous interception of substantive content); *see also Valenzuela v. Nationwide Mut. Ins. Co*., 686 F. Supp. 3d 969, 977-79 (C.D. Cal. Aug. 14, 2023) (same).

Furthermore, Plaintiff's reliance on *Esparza* is misplaced. In that case, Plaintiff alleged that transcripts of visitors' communications on a website chat tool were intercepted in real time. *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). Plaintiff includes no such allegations in his Complaint, nor does Plaintiff allege POLITICO's website had a chat tool. Applied here, Plaintiff does not allege any facts showing *how* or *when* the purported data was transmitted; he merely parrots the statutory language. *See* Compl. ¶ 126. Such conclusory recitation of Section 631(a) is insufficient. To plausibly plead an "in transit" interception, a plaintiff must allege concrete facts about how and when the interception occurred. *Heiting*, 728 F. Supp. 3d at 1126. Because Plaintiff offers no such factual support, his Section 631(a) claim cannot survive.

**3. Plaintiff's claim under the third clause of Section 631(a) fails.**

Because Plaintiff cannot establish a violation of either Clause One or Two of Section 631(a), he also cannot sustain a claim under Clause Three.

**4. POLITICO cannot eavesdrop on its own conversation.**

Liability under Section 631(a) does not extend to a party's own receipt of communications. As courts in this Circuit have emphasized, "[l]iability under the second prong of section 631 attaches 'only to eavesdropping by a third party and not to recording by a participant to a conversation.'" *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *2 (N.D. Cal. Apr. 17, 2025) (citations omitted). To state a claim under Clause Four, Plaintiff must allege defendant "acted with (1) knowledge that [Third Parties] intended to violate CIPA and (2) intent to commit, encourage, or facilitate [Third Parties'] commission of the offense." *Esparza*, 2024 WL 559241, at *6.

Plaintiff's allegations fall far short. He asserts only that "POLITICO willfully aided, agreed with, employed, permitted, or otherwise enabled the Third Parties to wiretap Plaintiff and Class members using the Third Parties' cookies and to accomplish the wrongful conduct." Compl. ¶ 125. This is a verbatim recitation of statutory language, not a factual allegation of how, when, or whether any third party actually intercepted a communication in transit, much less that POLITICO knew of or intended such interception. Moreover, because POLITICO was itself a direct participant in any interaction with its own website, it cannot, as a matter of law, be deemed an "eavesdropper" under Section 631(a). *See Ribas v. Clark*, 38 Cal. 3d at 359-60; *Torres*, 2025 WL 1135088, at *2.

Even if Plaintiff could plausibly allege that Third Parties engaged in wiretapping or eavesdropping, that would not establish that POLITICO itself had the requisite knowledge or intent. *Esparza*, 2024 WL 559241, at *6. Absent concrete factual allegations showing that POLITICO knew of and intended to facilitate any purported interception, Plaintiff cannot state a viable aiding-and-abetting claim under Section 631(a).

**D. <u>Plaintiff's CIPA 638.51 Claim Cannot Survive.</u>**

**1. Third party trackers are not pen registers.**

Plaintiff's claim under California Penal Code Section 638.51 also fails because the cookies and analytics tools he challenges are not "pen registers" within the meaning of the statute. Notably, Plaintiff

does not address POLITICO's assertion that he fails to accurately describe how a pen register operates. Plaintiff has not alleged that cookies recorded the IP addresses of the websites he visited – only Plaintiff's IP address, which POLITICO only learned because Plaintiff voluntarily visited its website. Because Plaintiff has not alleged that the cookies on POLITICO's website operate as a pen register – the way the California Legislature intended – Plaintiff's claim must fail. Plaintiff's reliance on *Gabrielli*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), and *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) are misplaced. Those cases involved materially different factual allegations and statutory applications.

First, in *Greenley*, plaintiffs alleged that the defendant's embedded software performed complex identification and correlation functions – building persistent digital "fingerprinting" across applications and devices. *See Greenley*, 684 F. Supp. 3d at 1050. Here, by contrast, Plaintiff alleges only the routine collection of website interaction data, such as "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, [and] geolocation data." Compl. ¶ 19. None of this constitutes "dialing, routing, addressing, or signaling information" within the plain meaning of Section 638.50(b). Unlike *Gabrielli* or *Greenley*, there is no allegation that POLITICO deployed fingerprinting or other advanced processes designed to replicate the functionality of a pen register.

Second, the *Gabrielli* court rejected the defendant's telephone-based limitation argument by pointing to Section 638.50(b)'s broad definition of "pen register." But the very cases cited in *Gabrielli* underscore that the California Legislature knows how to expressly extend or limit CIPA's reach and did so in 2022 when it made changes to the statute. *See Licea*, 659 F. Supp. 3d at 1104-05 (interpreting Section 631(a)'s reference to "telegraph or telephone wire"); *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) (Section 632.7 limited to "landline telephone"). Plaintiff's claim ignores this important context and seeks to expand Section 638.51 beyond its intended purpose of regulating pen register-like technology, not ordinary website analytics.

Third, *Gabrielli* emphasized that the defendant had not established an exception under Section 638.51(b)(1) because it did not demonstrate that its collection of data was necessary to "operate, maintain, and test a wire or electronic communication service." *Gabrielli*, 2025 WL 1939957, at *12.

Here, Plaintiff's allegations concern nothing more than cookies and analytics tools used to maintain website functionality and measure traffic – activities squarely within the Section 638.51(b)(1) safe harbor. Unlike in *Gabrielli*, *Mirmalek*, or *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025), Plaintiff does not allege facts showing that POLITICO or any vendor collected data beyond what was necessary to operate or maintain the site.

Finally, even if trackers were somehow considered "pen registers," POLITICO's alleged use falls within the statutory exception permitting providers to employ such tools to "operate, maintain, and test" electronic communication services. Cal. Penal Code § 638.51(b)(1). Basic analytics and cookie functions serve precisely that purpose. Plaintiff's Complaint offers no facts to show otherwise. Accordingly, third-party trackers and cookies cannot plausibly be characterized as "pen registers."

**2. Plaintiff suffers no harm because there is no reasonable expectation of privacy in routine metadata.**

Even if Plaintiff "rejected all cookies," that does not create a reasonable expectation of privacy. Courts in this Circuit also have repeatedly emphasized that Article III standing requires a concrete harm tied to a legally protected privacy interest. *See TransUnion*, 594 U.S.at 423-24; *In re Facebook Internet Tracking Litig.*, 956 F.3d at 601-02. Courts have made clear, however, that routine technical and transactional data, such as names, email addresses, IP addresses, device identifiers, browsing history, and session information, are not the type of sensitive, substance-bearing communications CIPA protects. *See Yoon*, 549 F. Supp. 3d at 1082-83; *In re Zynga Privacy Litig.*, 750 F.3d at 1106-09.

Plaintiff's reliance on his cookie rejection does not change this analysis. A user cannot reasonably expect that toggling cookie preferences will eliminate the routine transmission of generic and non-sensitive metadata inherent in visiting any website. Unlike cases involving the unauthorized dissemination of intimate personal profiles (*see Brooks*, 2021 WL 3621837, at *8), or sophisticated identity resolution processes (*see Katz-Lacabe*, 668 F. Supp. 3d at 935-36), Plaintiff alleges only the routine collection of ordinary metadata and form-fill information incidental to website operation, a technical discrepancy between his cookie preference and the website's functionality. Such a "bare procedural violation" cannot sustain a CIPA claim. *See Spokeo*, 578 U.S. at 341. Because rejecting cookies does not create a reasonable expectation of privacy in non-sensitive metadata, Plaintiff cannot

state a claim under CIPA.

**3. The Section 638.51(b)(1) service provider exemption applies.**

Plaintiff misstates both Section 638.51(b)(1) and POLITICO's use of cookies. The statute expressly permits a "provider of electronic or wire communication service" to use a pen register "to operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). Courts have recognized that website operators qualify as "providers" of electronic communication services because they supply users with access to information, content, and interactive features over the internet. See *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8-11 (N.D. Cal. Sept. 26, 2013) (treating web-based platforms as providers of electronic communication services).

The information Plaintiff cites – browsing history, visit history, session data, device information, and similar technical details – is precisely the type of routine data websites collect to maintain functionality, prevent fraud, and deliver content. Plaintiff's attempt to reframe these ordinary service-provider practices as "agreements to sell" personal data is wholly conclusory and unsupported by factual allegations. His reliance on *Gabrielli* is misplaced, as the defendant failed to establish that its sophisticated, fingerprinting-style data collection was necessary to operate or maintain its service. *Gabrielli*, 2025 WL 1939957 at *12. Likewise, *Rodriguez v. Autotrader.com, Inc.* addressed allegations of commercial profiling, not routine analytics. *Rodriguez*, 762 F. Supp. 3d at 930. Because POLITICO qualifies as a provider of an electronic communication service and the alleged cookie use falls within Section 638.51(b)(1)'s operational exemption, Plaintiff's claim must be dismissed.

**E. <u>Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.</u>**

Plaintiff cannot satisfy either element of his common law invasion of privacy and intrusion upon seclusion claims. Plaintiff must plausibly allege expectation of privacy, and the intrusion was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. As discussed above, Plaintiff's allegations concern only the routine collection of website metadata is not the type of intimate or sensitive data that gives rise to a legally cognizable expectation of privacy.

Even if Plaintiff could establish a privacy interest, he fails to allege an intrusion "highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Courts assess offensiveness in light of "degree and setting of the intrusion, and the intruder's motives and objectives."

*Id.* Plaintiff pleads no intrusion that could be deemed "highly offensive." He does not allege that POLITICO sold or publicized his data, exposed him to identity theft, or misused intimate personal details. At most, he claims that cookies "fired" despite his preference settings (Compl. ¶ 3) – a minor technical issue far removed from the egregious invasions required to sustain an intrusion claim. *See In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (dismissing intrusion claims where plaintiffs alleged only routine collection of browsing and device data). Courts have consistently dismissed privacy claims where, as here, the allegations involve nothing more than ordinary commercial data collection practices. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (rejecting intrusion claim based on routine tracking practices).

Because Plaintiff neither alleges a reasonable expectation of privacy nor a highly offensive intrusion, his claims also cannot support a constitutional right-to-privacy violation under Article I, Section 1 of the California Constitution. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36-37 (1994) (constitutional claim requires "serious" invasion of privacy). Plaintiff's rhetoric that POLITICO "lied" to consumers cannot substitute for factual allegations of a genuine privacy harm. His common-law and constitutional privacy claims must therefore be dismissed.

**F. <u>Plaintiff's Claim of Fraud, Deceit and Misrepresentation Fails.</u>**

Plaintiff's fraud-based claims fail because they do not satisfy Rule 9(b)'s heightened pleading standard. Plaintiff's generalized allegations about POLITICO's cookie banner fall far short. He does not allege the specific dates he visited the website, the precise content of the disclosures he saw, or who authored, approved, or was responsible for the allegedly misleading statements. Such threadbare assertions fall well short of Rule 9(b), which requires "particularized allegations" identifying the time, place, content, and speaker of the alleged misrepresentation, as well as how the plaintiff relied on it. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (Rule 9(b) requires "particularized allegations" of misrepresentation and reliance).

Nor does Plaintiff allege any plausible reliance or injury. Plaintiff's subjective interpretation of POLITICO's Privacy Policy and cookie banner is insufficient to transform generic website disclosures into fraudulent misstatements simply continuing to browse after clicking a preference does not constitute reliance. Moreover, *TransUnion* makes clear that a bare procedural violation, untethered from any

concrete harm, cannot establish standing. *TransUnion*, 594 U.S. at 423-24. In sum, Plaintiff fails to plead fraud with the specificity Rule 9(b) demands, fails to allege any actionable misrepresentation or reliance, and fails to show any cognizable damages. His fraud, deceit, and misrepresentation claims thus fail.

### G. Plaintiff's Contract and Quasi-Contract Claims Fail.

#### 1. No contract exists between Plaintiff and POLITICO.

Plaintiff's breach of contract claim fails because he does not allege a binding obligation by POLITICO to provide monetary compensation for personal information. A plaintiff must allege both an enforceable contractual duty and an actual damage; conclusionary statements of harm are insufficient. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011); *Ajaxo Inc. v. ETrade Grp., Inc.*, 135 Cal. App. 4th 21, 56 (2005) (damages for breach of contract are limited to those that would place the plaintiff in the position he or she would have occupied had the contract been performed); *see also* Cal. Civ. Code § 3358 ("no person can recover a greater [damages amount] for the breach of an obligation").

Here, Plaintiff identifies no provision in which POLITICO promised payment or guaranteed the value of his data. His bare allegation that the class suffered damages equal to the "difference in value" of POLITICO's performance (Compl. ¶ 173) is exactly the sort of speculative pleading courts reject. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012) (dismissing contract claim where plaintiffs alleged "diminished value" of personal information without facts showing any contractual expectation of compensation). Thus, the breach of contract claim must be dismissed.

#### 2. The unjust enrichment claim cannot stand.

Plaintiff's unjust enrichment claim is equally deficient. "[U]njust enrichment is not a cause of action, just a restitution claim." *Low*, 900 F. Supp. 2d at 1031. The unjust enrichment allegations here are predicated on the same facts and subject matter as the purported contract claim. *See* Compl. ¶¶ 168-174, 176-185. Under California law, such duplicative claims are barred when an express contract is alleged. Because Plaintiff's unjust enrichment theory is entirely derivative of the deficient breach of contract claim, it too must be dismissed with prejudice.

### H. Plaintiff's Trespass to Chattels Fails.

For trespass to chattels, California law requires actual harm to a plaintiff's property; mere

allegations of abstract or nominal injury are insufficient. Trespass to chattels lies where intentional interference with the possession of personal property has proximately caused injury, including in cases alleging digital trespass. *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1012 (N.D. Cal. 2024); *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003). To prevail, a plaintiff must plead both unauthorized interference and resulting damage, typically an impairment of the device's condition, quality, or value, or a substantial deprivation of use. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000). Allegations of "harmless intermeddling" or speculative injuries do not suffice. *Hamidi*, 30 Cal. 4th at 1351. Courts routinely reject claims based solely on generalized assertions of diminished value or incidental resource use. *See Ticketmaster Corp. v. Tickets.com, Inc.*, No. 99CV7654, 2000 WL 1887522, at *4 (C.D. Cal. Aug. 10, 2000), *aff'd*, 2 F. App'x 741 (9th Cir. 2001).

Plaintiff does not allege circumvention of security barriers or use of the system beyond which is generally permitted when visiting publicly accessible websites. Under *Hamidi*, such routine, consensual interactions do not constitute unauthorized access. In addition, Plaintiff's reliance on "reduction of storage space, disk space, and performance" as "measurable damage" is precisely the sort of conclusory allegation that courts have found inadequate. Unlike the plaintiffs in *Meta Healthcare*, who pleaded specific facts demonstrating a measurable loss of storage capacity (*In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024)), Plaintiff alleges only generalized, unquantified harm. Because Plaintiff alleges neither unauthorized access beyond the scope of consent nor any actual, non-speculative injury, his trespass to chattels claim should be dismissed with prejudice.

## III. CONCLUSION

The Court should grant POLITICO's Motion and dismiss the Complaint in its entirety, with prejudice.

Dated: September 4, 2025 FISHER & PHILLIPS LLP

By: /s/ Danielle Kays
USAMA KAHF
DANIELLE KAYS (*PRO HAC VICE*)
CATHERINE M. CONTINO (*PRO HAC VICE*)
XUAN ZHOU
Attorneys for Defendant POLITICO LLC

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On September 4, 2025 I served the foregoing document entitled **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** on all the appearing and/or interested parties in this action addressed as follows:

| | |
|---|---|
| Seth Adam Safier<br>Marie Ann McCrary<br>Todd Kennedy<br>Kali R. Backer<br>GUTRIDE SAFIER LLP<br>100 Pine Street, Suite 1250<br>San Francisco, California 94111 | ***Attorneys for Plaintiff VISHAL SHAH***<br><br>Tel: 415.639.9090<br>Fax: 415.449.6469<br>Email: seth@gutridesafier.com<br>marie@gutridesafier.com<br>todd@gutridesafier.com<br>kali@gutridesafier.com |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐ **[by ELECTRONIC SERVICE]** - Based on a court order or an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed September 4, 2025 at Irvine, California.

Stephanie A. Crisp
Print Name

By: /s/ Stephanie A. Crisp
Signature