USAMA KAHF (SBN 266443)
    E-Mail: ukahf@fisherphillips.com
**FISHER & PHILLIPS LLP**
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

DANIELLE KAYS (*PRO HAC VICE*)
    E-Mail: dkays@fisherphillips.com
**FISHER & PHILLIPS LLP**
10 South Wacker Drive, Suite 3450
Chicago, IL 60606
Telephone: (312) 260-4751

CATHERINE M. CONTINO (*PRO HAC VICE)*
    E-Mail: ccontino@fisherphillips.com
**FISHER & PHILLIPS LLP**
Two Logan Square, 12th Floor
100 N. 18th Street
Philadelphia, PA 19103
Telephone: (610) 230-2150
Facsimile: (610) 230-2151

XUAN ZHOU (SBN 333504)
    E-Mail: xzhou@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive Suite 1000
San Diego, CA 92121
Telephone: (858) 597-9632

Attorneys for Defendant POLITICO LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE**

| | |
|---|---|
| VISHAL SHAH, HEIDI WILLIS, and STACY PENNING, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>POLITICO LLC,<br><br>            Defendant. | Case No: 5:25-cv-05213-NW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT POLITICO LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>DATE:        September 16, 2026<br>TIME:        9:00 a.m.<br>CRTRM:      3<br><br>Complaint Filed:  June 20, 2025<br>FAC Filed:        June 4, 2026<br>Trial Date:      Not Set |

**TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

    A.      Procedural Summary........................................................................................ 1

    B.      Summary of Facts ........................................................................................... 2

III.    LEGAL STANDARD.................................................................................................. 4

    A.      Rule 12(b)(1) Standard ................................................................................... 4

    B.      Rule 12(b)(6) Standard ................................................................................... 5

    C.      Rule 9(b) Standard ......................................................................................... 5

    D.      Rule 15(c) Standard ....................................................................................... 5

IV.     LEGAL ARGUMENT................................................................................................. 6

    A.      All Three Plaintiffs' CIPA Claims Are Time-Barred. ..................................... 6

        1.      *Plaintiff Shah did not cure the untimeliness identified by the Court.* .............. 6

        2.      *Plaintiffs Willis and Penning have not pleaded timely CIPA claims.* .............. 6

    B.      Plaintiffs Lack Concrete Injury and Article III Standing Under Rule 12(b)(1)........... 8

        1.      *Willis and Penning could not have been injured in the manner and dates pleaded.* ...... 8

        2.      *None of the Plaintiffs have alleged a concrete injury.* ................................... 8

        3.      *Penning is a "tester," which destroys standing for privacy claims.* ............. 11

        4.      *Statutory buzzwords cannot cure the absence of real-world harm.* ............... 11

    C.      Plaintiffs Fail to State a Claim Under Rule 12(b)(6). .................................... 12

        1.      *Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail.* ....... 12

        2.      *Plaintiffs fail to state a claim under CIPA Section 631(a).* .......................... 14

        3.      *Plaintiffs fail to state a pen register claim under Section 638.51.* ................. 19

        4.      *Plaintiffs fail to state claims of fraud, deceit, or misrepresentation.* ............. 23

        5.      *The FAC does not state a claim for unjust enrichment.* ................................. 25

V.      CONCLUSION.......................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ........................................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 5

*Beltran v. Drs. Med. Ctr. of Modesto*,
  No. 2:23-CV-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ................ 14

*Brodsky v. Apple, Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................................... 16

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) .......................................................................................... 5

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ........................................................................... 15

*D'Angelo v. FCA US, LLC*,
  726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......................................................................... 13

*In re DoubleClick Inc. Priv. Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................................ 17

*Esparza v. UAG Escondido A1 Inc.*,
  No. 23CV0102 ........................................................................................................... 18, 22

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .......................................................................................... 12

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................................... 18

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) (Davila, J.) ........................................................ 13

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................... 17

*Gutierrez v. Converse Inc.*,
  No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ............................................... 15

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................... 12, 23

*Heeger v. Facebook, Inc.*,
No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ........................................... 13

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........................................................................................ 15

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......................................... 13

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......................................................................................... 9

*Jones v. Peloton Interactive, Inc.*
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......................................................................................... 13

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......................................... 21

*Levings, Jr. v. Open Text Corp.*,
No. 24STCV05440, 2024 WL 5672082 (Cal. Super. Sep. 3, 2024) .............................................. 23

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........................................................................................ 15

*Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*,
414 U.S. 453 (1974) ...................................................................................................................... 19

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct. Sep. 24, 2024) ...................................... 21

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........................................................................................ 18

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) .............................................. 22

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Ct. App. 1975) ...................................................................................... 17, 18

*S.D. v. Hytto Ltd.*,
No. 18-CV-00688-JSW, 2019 WL 8333519 (N.D. Cal. May 15, 2019) ...................................... 16

*Shah v. POLITICO*
LLC, Case No. 4:25-cv-01338 (N.D. Cal. Feb. 7, 2025) ............................................................... 1

*Tavernetti v. Superior Court*
(1978) 22 Cal.3d 187 ................................................................................................................... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................................................... 21

FP 64403659.11

*Turner v. Nuance Commc'ns, Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) ................................................................................ 18

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ............................................................................................... 22

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................................................................... 5

*Unites States v. Reed*,
    575 F.3d 900 (9th Cir. 2009) ............................................................................................... 16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................................. 23

*Woods v. U.S. Bank N.A.*,
    831 F.3d 1159 (9th Cir. 2016) ............................................................................................... 5

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 13, 16

**Statutes**

Cal. Pen. Code § 631 (a) ................................................................................ 14, 15, 16, 18

Cal. Pen. Code § 637.2 ................................................................................................ 21

Cal. Pen. Code § 638.50(b) ................................................................................... 20, 22

Cal. Pen. Code § 638.51(b)(1) ..................................................................................... 23

Cal. Pen. Code § 638.52(d)(3) ..................................................................................... 21

**Other Authorities**

Fed. Rule of Civ. Proc. 9(b)'s ................................................................................... 5, 23

Fed. Rule of Civ. Proc. 12(b)(1) .................................................................................... 4

Fed. Rule of Civ. Proc. 12(b)(6) .............................................................................. 5, 12

Fed. Rule of Civ. Proc. 15(c) ........................................................................................ 5

FP 64403659.11

## I.  **<u>INTRODUCTION</u>**

Plaintiffs' First Amended Complaint ("FAC") is long on rhetoric and short on facts. First, rather than pleading any facts to justify Shah's 452-day un-tolled delay in filing his CIPA claims, the FAC adds two new plaintiffs whose untimeliness is even more egregious, rendering their CIPA claims time-barred and inadequately pleaded under both equitable tolling and delayed discovery principles. Second, Plaintiffs' unjust enrichment claim likewise remains duplicative and legally deficient. Third, the FAC introduces an independent standing problem. Willis and Penning allege injuries arising from interactions with POLITICO's cookie consent banner, yet judicially noticeable facts establish that the banner was not present during the periods they allegedly visited the website. They therefore cannot plausibly allege either membership in the proposed class or a concrete injury traceable to the challenged conduct.

Stripped of its inflammatory labels, the pleading attempts to repackage routine cookie activity and ordinary website technologies as "wiretapping," "eavesdropping," and a covert privacy invasion. Plaintiffs never plausibly allege that POLITICO *intercepted* the contents of any confidential communication, that any truly sensitive information was disclosed, or that any cookie functioned as the statutory device their claims require. Instead, Plaintiffs rely on conclusory assertions, technical buzzwords, and a self-serving definition of "Private Communications" that sweeps in generic browsing data and ordinary website interactions. Because the complaint's core theory collapses under the statutes' text, the pleaded facts, and basic common sense, the First Amended Complaint should be dismissed.

## II.  **<u>FACTUAL BACKGROUND</u>**

### A.  **Procedural Summary**

On August 18, 2023, Plaintiff Shah sent POLITICO a demand letter. Declaration of Danielle Kays ("Kays Decl."), ¶ 2. Four months later, Shah commenced arbitration proceedings on December 21, 2023. Kays Decl., ¶ 3; *see* Request for Judicial Notice ("RJN"), Ex. A at 16 Sub-Exhibit B [Petition in *Shah v. POLITICO* LLC, Case No. 4:25-cv-01338 (N.D. Cal. Feb. 7, 2025)]. However, on July 29, 2024, the arbitrator ruled Shah's claims were not subject to arbitration and dismissed the arbitration for lack of jurisdiction. Kays Decl., ¶ 4; RJN, Ex. A at 9 Sub-Exhibit A. On August 21, 2024, JAMS closed the matter. RJN, Ex. A at 72 Sub-Exhibit C.

More than five months later, on February 7, 2025, Plaintiff Shah filed a procedurally improper

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Petition to Confirm Arbitration Award before this Court seeking to confirm the arbitrator's decision. Kays Decl., ¶ 5; RJN, Ex. A. On July 2, 2025, the Parties filed a stipulation for dismissal of the petition without prejudice. RJN, Ex. C.

*Before* the voluntary dismissal, Shah filed a Class Action Complaint in this Court on June 20, 2025, asserting various claims including violations of the California Invasion of Privacy Act ("CIPA"). Kays Decl., ¶ 6. On August 14, 2025, POLITICO moved to dismiss the Complaint. ECF 17. On February 6, 2026, the Court granted POLITICO's motion to dismiss six (6) of Shah's nine (9) claims, including counts under CIPA § 631 and § 638.51, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing and trespass to chattels. ECF 74. Specifically, the Court ruled that Plaintiff's CIPA claims were barred by the one-year limitations period because Plaintiff unreasonably waited at least 452 un-tolled days, including 326 days after the arbitrator found the dispute was not subject to arbitration. *Id*. The Court granted Shah leave to amend to "allege facts that justified his delay in filing the complaint." *Id*.

On February 17, 2026, Shah's counsel notified POLITICO for the first time that Heidi Willis and Stacy Penning intended to join this action. Kays Decl., ¶ 9. On February 27, 2026, Shah moved for leave to file an amended complaint to add Willis and Penning as plaintiffs. On June 3, 2026, the Court ordered Plaintiff Shah to file the proposed amended complaint (ECF 85-2) as the operative complaint without any changes. *See* ECF 106. On June 4, 2026, Plaintiff Shah filed the FAC. *See* ECF 108.

**B.    Summary of Facts**

Despite clear direction from this Court, Plaintiffs do not (and cannot) allege why Shah waited at least 452 un-tolled days (including 326 days after arbitration from July 29, 2024 to June 20, 2025) to file his complaint. *See* ECF 108. Indeed, no allegations explain or justify Shah's delay.

Plaintiff Shah attempts to circumvent his untimeliness deficiency by adding two new Plaintiffs, Willis and Penning, who allege they were unaware of their potential CIPA claims until they were informed by their Counsel in January 2026. *See* ECF 108 ¶ 16. Both Willis and Penning allege that they lack the "expertise to test whether the [POLITICO's] website requests to opt out of cookies and tracking technologies" and were unable to discover their claims due to POLITICO's "concealment of material facts." *Id*. ¶¶ 16, 17. Further, they allege that their claims were equitably tolled by Plaintiff Shah's

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

demand letter and filing of the arbitration proceeding because "Defendant had notice of the claims (and Plaintiff Shah's intent to pursue them in court as a putative class action)." *Id.* ¶ 17.

Specifically, Plaintiff Willis alleges she visited the website multiple, unidentified times between 2023 to 2026. *Id.* ¶ 107. She does not include any specific dates or details related to those visits, except that she "recalls searching for and viewing articles on at least the topic of the California senate debate in 2024." *Id.* 108, ¶ 112.

Plaintiff Penning provides more details about his visits, but they do not add up. Penning claims he visited POLITICO's website multiple times, including on or about "October 7, 2023; May 17, 2024; May 20 through May 31, 2024; and October 7, 2025." *See* ECF 108, ¶ 117. Yet, critically, no cookie banner existed on any of the dates Penning allegedly visited POLITICO's website. Put another way, no cookie consent banner was present on POLITICO's website or would have appeared for any visitor from California after Sept. 13, 2023. *See* Dtk. 92-1, Decl. of Jeremy Bowers ¶ 7. Furthermore, although Penning concludes that he is not a "tester" (ECF 108 ¶ 118) and allegedly did not learn of his privacy violations until January 2026 from his counsel (*Id.*, ¶ 16), Penning has been a repeat CIPA plaintiff since 2024 in at least sixteen (16) class action lawsuits. RJN, Exs. D-S. Ten of those cases were filed before January 2026. Critically, in each of those actions filed before the he claims learning of privacy website violations in January 2026, Penning includes allegations that defendants violated CIPA, and at least two of them (*Penning v. NVIDIA* and *Barrales et al. Reckitt Benckiser*, both filed in 2025), include the exact same allegations he asserts here: that he declined non-strictly necessary cookies, yet his information was shared with third parties anyway. RJN, Ex. H ¶ 30, and Ex. I ¶ 128. It can be assumed that in the ten (10) actions filed before January 2026 that Penning visited Defendant's well before that date.[1] These cases demonstrate Penning's knowledge and awareness of third-party cookies by virtue of the fact that he retained counsel and thereafter filed CIPA actions within the one-year statute of limitations.

---

[1] For example, in *Penning v. Aura Health*, Penning filed his Complaint on July 31, 2024, alleging he visited that website in April 2023. RJN, Ex. L at ¶ 7. In *Penning et al. v. Microsoft Corp.*, Penning alleges he visited a third website containing defendant's third-party cookies "on or about December 2024." RJN, Ex. E, at ¶ 231. In *Nieves et al. v. Microsoft Corp.*, Penning alleges he visited a website containing the defendant's third-party cookies "on or about December 2024." RJN, Ex. G, at ¶ 255. In *Penning v. Ins. Zebra, Inc.*, Penning alleges he first used the website in January 2025. *See* RJN, Ex. J, at ¶ 105.

In the original Complaint, Plaintiff Shah expressly limited the proposed class to people whose claims arose during the four years preceding the filing of the Complaint. ECF ¶ 84. Following the Court's dismissal order (ECF 74), Plaintiffs filed their FAC by adding two new named plaintiffs. The FAC no longer includes the four-year limitation contained in the original class definition and does not explain the basis for that change. Plaintiffs now seek to represent a putative class defined as "All persons who browsed the Website in the State of California after rejecting [']Performance Cookies['] and [']Online Behavioural Advertising['] cookies after clicking on the [']Do Not Sell My Information['] link in the Website's popup cookie consent banner." ECF 108 ¶ 127.

## III.   **LEGAL STANDARD**

### A.   **Rule 12(b)(1) Standard**

Article III standing can be challenged in two ways: facially or factually. For a facial challenge, the complaint allegations are insufficient on their face to invoke federal jurisdiction; in a factual challenge, the factual allegations that would otherwise invoke federal jurisdiction are false. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court may review evidence outside of the complaint without converting the motion into one for summary judgment. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)). The court does not need to "presume the truthfulness of the plaintiff's allegations." *Id*. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F. 3d at 1039, n. 2.

To establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between her injury and the conduct complained of; and (3) that her injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact must be "particularized" and "concrete," affecting the plaintiff "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330-31, 340 (2016). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

**B.      Rule 12(b)(6) Standard**

A complaint must be dismissed under Rule 12(b)(6) when it fails to allege "sufficient facts" under a "cognizable legal theory." *See Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must accept all well-pleaded factual allegations as true, they should not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678*; see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

**C.      Rule 9(b) Standard**

Claims sounding in fraud are subject to Rule 9(b) heightened pleading requirements. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake," including the "who, what, when, where, and how" of the alleged misconduct, and explain what is false or misleading and why about the purportedly fraudulent statement. *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Where, as here, a plaintiff asserts a claim for common-law fraud, the heightened pleading standard applies to all elements of the claim. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019).

**D.      Rule 15(c) Standard**

Although Rule 15(c) expressly addresses amendments changing defendants, courts apply the Rule by analogy to amendments adding plaintiffs. *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982). An amendment adding a party plaintiff ***only*** relates back to the date of the original pleading ***if*** (1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff. *Id*.; Fed. R. Civ. P. 15(c)(1)(C).

Rule 15(c)(1)(B) further provides that an amendment relates back when it asserts a claim or defense that "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amended claim arises out of the same conduct, transaction, or occurrence when it will likely be proved by the "same kind of evidence" offered in support

of the original pleading. *Percy v. S.F. Gen. Hosp.,* 841 F.2d 975, 978 (9th Cir.1988) (quoting *Rural Fire Prot. Co. v. Hepp,* 366 F.2d 355, 362 (9th Cir. 1966)). To relate back, "the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.,* 872 F.2d 322, 325 (9th Cir. 1989). Although Rule 15(c)'s relation-back doctrine is applied liberally, the doctrine does not dispense with the requirement that the defendant receive fair notice of the claims and parties sought to be added through amendment. *ASARCO, LLC v. Union Pac. R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014).

## IV.   LEGAL ARGUMENT

### A.   All Three Plaintiffs' CIPA Claims Are Time-Barred.

#### 1.   *Plaintiff Shah did not cure the untimeliness identified by the Court.*

Shah's CIPA claims remain untimely and unchanged. Critically, the Court dismissed Plaintiff Shah's CIPA claims because he was barred by the one-year statute of limitations and was provided leave to amend to allege facts justifying his 452 un-tolled day delay in filing his complaint." *See* ECF 74 at 8-10. The FAC does not cure that defect. While the Court allowed Shah to allege facts explaining his delay and demonstrating entitlement to equitable tolling, he failed to do so. Instead, Shah added two new plaintiffs and revised the class allegations. Because Plaintiffs have failed to allege facts demonstrating that Shah is entitled to equitable tolling, his CIPA claims remain untimely and should be dismissed.

#### 2.   *Plaintiffs Willis and Penning have not pleaded timely CIPA claims.*

Both Willis and Penning's CIPA claims are even more untimely. To circumvent that deficiency, they attempt to allege they lack the "expertise to test whether the [POLITICO's] website requests to opt out of cookies and tracking technologies" and were unable to discover their claims due to POLITICO's "concealment of material facts." ECF 108 ¶¶ 16, 17. Plaintiffs Willis and Penning also allege their claims were equitably tolled by Shah's demand letter and subsequent arbitration proceeding because *Shah* notified POLITICO of his claims and intent to pursue litigation. *See Id.* ¶ 17.

These allegations do not establish equitable tolling or save their CIPA claims. Under California law, a plaintiff invoking equitable tolling must demonstrate (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by the plaintiff. *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020); *see also Addison v. State of California*, 21 Cal. 3d 313,

319 (1978). Willis or Penning do not allege they participated in Shah's arbitration proceeding, asserted claims against POLITICO during that proceeding, or otherwise provided POLITICO with notice of *their* individual claims within the applicable limitations period. At most, Shah's demand letter and arbitration proceeding provided notice of Shah's own claims. Indeed, Plaintiffs do not (and cannot) allege POLITICO was aware of Willis's or Penning's claims before they were added as named plaintiffs on June 4, 2026. *See* ECF 108; Kays Decl. ¶ 6 (Willis and Penning notified POLITICO of their claims on February 17, 2026). Plaintiffs' conclusory assertion that Shah's pre-suit activities tolled the claims of entirely different individuals therefore fails to plausibly establish equitable tolling. *See Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983) (equitable tolling requires that the earlier proceeding alert the defendant to the need to investigate the facts underlying the later claim).

The prejudice to POLITICO is particularly acute because Willis and Penning were strangers to this litigation until they were added as named plaintiffs to survive Plaintiff Shah's CIPA claims. Unlike a mere correction of a pleading defect, the FAC introduces entirely new claimants whose claims occurred in a different period, under different facts and discovery, and require separate, unique factual investigation. Their alleged visits occurred when no cookie banner existed—an entirely different factual scenario than Shah's allegations. Because POLITICO lacked notice of those claimants and their claims within the limitations period, relation back would unfairly prejudice POLITICO and is therefore unavailable. *Raynor Bros*., 695 F.2d at 384.

Plaintiffs Willis and Penning likewise fail to plead facts sufficient to invoke the delayed discovery rule. A plaintiff whose claim is time-barred on its face must specifically plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 808 (2005). Plaintiffs only allege they learned of potential claims through their counsel in January 2026. ECF 108, ¶ 16. They do not allege when they retained counsel or why they could not have discovered them earlier through reasonable diligence. Instead, Willis and Penning allege only that they lacked technical expertise and were unaware of POLITICO's alleged conduct. ECF 108 ¶¶ 16-17. Such conclusory allegations do not satisfy the pleading requirements for delayed discovery because ignorance of a legal claim does not postpone accrual of the statute of limitations. *See Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1110-11 (1988)

FP 64403659.11

(ignorance of the legal significance of known facts or the identity of the wrongdoer does not delay the running of the statute). And critically, Penning's many prior CIPA lawsuits belie his claimed lack of knowledge in this case.

Moreover, Willis's and Penning's CIPA claims are untimely on their face and filed outside the one-year statute of limitations. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). Willis alleges that she visited POLITICO's website multiple times between 2023 and 2026. ECF 108 ¶ 107. Penning alleges visits on October 7, 2023, May 17, 2024, May 20 through May 31, 2024, and October 7, 2025. *Id*. ¶ 117. Because Willis and Penning became plaintiffs on June 4, 2026, any CIPA claims arising from website visits occurring before June 4, 2025, including Penning's alleged visits in 2023 and May 2024, are time barred because Plaintiffs fail to plead tolling or delayed discovery.

**B.    Plaintiffs Lack Concrete Injury and Article III Standing Under Rule 12(b)(1).**

1.    *Willis and Penning could not have been injured in the manner and dates pleaded.*

Plaintiffs Willis and Penning both lack factual standing. Beginning September 13, 2023, POLITICO no longer displayed the cookie consent banner that forms the basis of Plaintiffs' claims. *See* ECF 92-1, Bowers Decl. ¶¶ 5-6. Yet, Penning alleges she visited the website after the banner was removed—on October 7, 2023, May 17, 2024, May 20 through May 31, 2024, and October 7, 2025. ECF 108 ¶ 117. Willis alleges she visited the website October 2024. *Id*. ¶ 107. On these dates, Plaintiffs claim they visited POLITICO's website, clicked the "Do Not Sell My Information" link, rejected "Performance Cookies" and "Online Behavioural Advertising" cookies through POLITICO's cookie consent banner, and thereafter had their information intercepted or disclosed in violation of CIPA. *See Id*. ¶¶ 107-18, 127. However, based on the Declaration of Jeremy Bowers, on the dates Willis and Penning allege they visited the website, California visitors no longer even encountered the cookie consent banner. Their allegations therefore cannot establish that they suffered an injury because it is a factual impossibility. Thus, Willis and Penning lack Article III standing and their claims should be dismissed.

2.    *None of the Plaintiffs have alleged a concrete injury.*

Even if Plaintiffs can produce evidence to overcome the factual deficiencies of the Complaint, Plaintiffs lack facial standing. To establish Article III standing, a plaintiff must allege a concrete injury that is fairly traceable to the challenged conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

FP 64403659.11

(1992); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Here, Willis and Penning fail to plausibly allege that they suffered any injury arising from the conduct challenged in the FAC.

A concrete injury requires "the information at issue [be] personal and private" and bear a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Lien v. Talkdesk, Inc.*, No. 24-CV-06467, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025)); (citing *TransUnion*, 594 U.S. at 433). To establish Article III standing in the privacy context, a plaintiff must "identify the specific personal information" that "implicates a protectable privacy interest" that was allegedly intercepted or disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 4, 2023). Typical "recognized harms" for invasion of privacy must result in public disclosure of private facts and intrusion upon seclusion. *I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022). Public disclosure of private facts occurs when "[o]ne gives publicity to a matter concerning the private life of another" if the matter publicized "(1) would be highly offensive to a reasonable person, and (2) is not a legitimate concern to the public." *Id.*; Restatement (Second) of Torts § 652D. To have standing, the harm caused by both torts must be "highly offensive to a reasonable person." *See id*.

Even if Plaintiffs did have viable claims, which they do not, Plaintiffs fail to identify any personal information of theirs that was actually intercepted, disclosed, or otherwise misused as a result of their website visits. Rather than including any details about their visit to POLITICO's website and the resulting harm therefrom, Plaintiffs instead rely on generalized and conclusory allegations regarding website tracking technologies. Such speculative allegations are insufficient to establish a concrete privacy injury. *See, e.g., Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *2-3 (N.D. Cal. June 24, 2025) (finding allegations that "Defendant invaded his privacy by impermissibly collecting Plaintiffs' 'data' and 'information'" insufficient to allege concrete injury sufficient to establish standing); *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) (finding plaintiff lacked standing when she did not explain "what information of Plaintiffs' was captured, only what information could be captured.").

Plaintiffs allege POLITICO shared "Private Communications" and "data" throughout the FAC, but this is misleading, as none of the information Plaintiffs lists as "Private Communications" is actually

9

private.[2] Courts have held that disclosure of this information is insufficient to give rise to a cognizable harm. *See*, *e.g.*, RJN Ex. U (*Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC (C.D. Cal., June 5, 2026) (no standing because plaintiff failed to include specific allegations regarding *his* particular injury)); *Diaz et al. v. Paramount Skydance Corp. et al.*, No. EDCV 25-02945-KK-DTBx 2026 WL 1090958, at *4 (C.D. Cal., Apr. 20, 2026) (finding disclosure of data commonly used to create browser fingerprint such as IP address, language selection, screen resolution, microprocessor type, internet browser, and operating system through website trackers insufficient to establish standing); *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-CV-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (no standing because there is no cognizable privacy interest in device and browser information); *Silvia Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (collection of generic browser information insufficient to confer cognizable privacy right).

Plaintiffs broadly allege third party cookies were used to "target specific users or groups of users with advertising" (ECF 108 ¶ 93) and "allows Defendant to identify behavioral patterns, preferences, and interests relating to Defendant's services and products." *Id*. ¶ 94. But Plaintiffs do not allege POLITICO actually identified <u>them</u> and collected their Private Communications. Absent facts showing that any sensitive information was captured or disclosed in that context, Plaintiffs lack harm that is "highly offensive to a reasonable person" as both torts require, and thus fails to establish harm analogous to the traditional privacy torts they invoke. Their so-called "Private Communications" are neither private nor personal. *Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-CV-3388 WBS SCR, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) (collection of button clicks, page visits, scrolls, session lengths, URLs, and IP addresses collected after one visit is not "highly offensive"); *Maghoney v. Dotdash Meredith, Inc.*, No. 24-CV-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (dismissed for lack of standing where plaintiff did not allege how he learned website searches were shared with third parties, whether anyone contacted him related to his searches, that his searches were

---

[2] Plaintiffs define "Private Communications" as Browsing History; Visit History; Website Interactions; User Input Data; Demographic Information; Interests and Preferences; Shopping Behavior; Device Information; Referring URL; Session Information; User Identifiers; Geolocation Data. ECF 108 ¶ 25.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

made public, that any of his personally identifiable information were collected, or his searches were directly linked to him). Plaintiffs do not articulate a legally protected privacy interest or concrete injury to establish Article III standing.

### 3. *Penning is a "tester," which destroys standing for privacy claims.*

Penning's standing is independently undermined by his extensive history of filing website-tracking and CIPA lawsuits. Although Penning claims he is not a "tester" (ECF 108 ¶ 118), judicially noticeable court records tell a different story—he is a professional litigant. As the court recognized in *Rodriguez v. Autotrader.com, Inc.*, a plaintiff who visits a website for the purpose of detecting and provoking alleged privacy violations lacks a reasonable expectation of privacy and cannot establish a cognizable privacy injury where the alleged harm is self-inflicted. No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1-2 (C.D. Cal. Apr. 4, 2025) (dismissing Section 631 and Section 638.51 claims with prejudice because Plaintiffs' alleged harm was self-inflicted). Several of the sixteen (16) actions Penning has filed contain allegations materially identical to those asserted here. RJN, Exs. D-S. These allegations demonstrate that, by the time of the visits alleged in the FAC, Penning was already actively investigating and litigating multiple claims based on website tracking technologies, cookies, and alleged CIPA violations. Thus, Penning cannot plausibly allege he was unaware of his privacy rights until informed by his counsel in January 2026, or that he was surprised by the very conduct he actively sought to identify and challenge in litigation. The same reasoning from *Rodriguez* applies here. Penning's repeated filing of substantially similar CIPA actions, coupled with his knowledge of website cookies and tracking practices, demonstrates any alleged injury was self-inflicted and therefore insufficient to establish Article III standing. Accordingly, his CIPA claims should be dismissed for lack of standing.

### 4. *Statutory buzzwords cannot cure the absence of real-world harm.*

Finally, Plaintiffs' allegations of bare statutory violations or generalized privacy concerns, untethered to any concrete adverse effect, are insufficient to confer standing. *TransUnion*, 594 U.S. at 434-35; *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025) (no standing absent allegations of harm associated with public disclosure of private facts); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *7-8, (S.D.N.Y. Feb. 18, 2025)

(no standing where plaintiff did not allege privacy harm was closely related to common law analogue).

Simply alleging a statutory CIPA violation does not satisfy the concrete harm requirement. *See Popa v. Microsoft Corp.,* 153 F.4th 784, 793-94 (9th Cir. 2025) (finding that allegation of "concrete injury" requires more than a statutory violation). While some district courts have ruled a statutory CIPA violation alone establishes an injury-in-fact, such cases are inconsistent with the Supreme Court's holding that "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341); *see also Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) ("a bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact."). Plaintiffs allege neither tangible harm nor a historically recognized intangible injury; thus, Plaintiffs have failed to allege a concrete harm. Therefore, the Complaint fails to establish Article III standing and must be dismissed.

**C.    Plaintiffs Fail to State a Claim Under Rule 12(b)(6).**

1.    *Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail.*

Courts conduct a combined inquiry when invasion of privacy and intrusion upon seclusion claims are brought on the same factual basis. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). To state either claim, Plaintiffs must plausibly allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). The FAC fails to adequately plead either element.

a.    *Plaintiffs do not plausibly allege any reasonable expectation of privacy.*

As discussed above, Willis and Penning do not plausibly allege that they experienced the conduct that forms the basis of their privacy claims because on the dates Willis and Penning allegedly visited the website, there was no consent banner present.  Thus, they could not have engaged in the conduct defining the proposed class and they cannot plausibly allege that their privacy was invaded after declining cookies on the banner, as described in the FAC.

Even setting aside that defect, Plaintiffs fail to identify any information in which they possessed a reasonable expectation of privacy. Plaintiffs rely on generalized allegations concerning browsing activity, website interactions, device identifiers, IP addresses, cookie data, and similar categories of information. ECF 108 ¶ 21. Courts routinely hold that users do not possess a reasonable expectation of

FP 64403659.11

privacy in such information. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (finding no reasonable expectation of privacy in the URL of a website the plaintiff previously had visited or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (no reasonable expectation of privacy in their geolocation data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (no invasion of privacy for collection of user's account name, IP address, geographic location, and referral site URL). "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much.*" *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original).

Despite referring to this type of non-sensitive data as "Private Communications" Plaintiffs do not allege that POLITICO collected any such information related to them or explain how visiting a public-facing website is "private communication." *See Jones v. Peloton Interactive, Inc.* 720 F. Supp. 3d 940, 950-51 (S.D. Cal. 2024) (dismissing invasion of privacy claim because plaintiff failed to allege she shared sensitive information with website); *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (dismissing claims where allegations that Facebook collected "private" location data were "bareboned" and "vague").

Additionally, Penning's allegations are particularly deficient because of his extensive history of filing website-tracking and CIPA lawsuits undermines any claim that he possessed a reasonable expectation of privacy. As discussed above, Penning cannot plausibly claim that he was surprised by, or unaware of, the very conduct he was actively seeking to identify and challenge as evidenced by the multitude of class action complaints he has filed with materially similar allegations and claims. *See Rodriguez*, 2025 WL 1085787, at *1-2.

> b. *Plaintiffs do not plausibly allege a highly offensive intrusion.*

Plaintiffs likewise fail to allege conduct that could be considered highly offensive under California law. Courts consistently hold that routine website analytics, advertising technologies, cookies, and disclosures associated with ordinary internet operations do not constitute a highly offensive intrusion. *See Hammerling*, 615 F. Supp. 3d at 1090; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (collection of unique device identifiers, personal data, and geolocation

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

information from plaintiffs' devices was routine commercial behavior and not highly offensive).

In a recent case from this District with nearly identical facts, a court found that a website operator's placement of third-party cookies after users chose to reject them was not "highly offensive" because plaintiffs never alleged any actions plaintiffs took on the website. *Ortiz v. Foris Dax, Inc.*, No. 25-CV-08950-EMC, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026). The court reasoned that "Plaintiffs may have opened the website, rejected cookies, viewed the homepage for a few seconds, closed the website, and never returned. In that circumstance, it is difficult to see how the information collected about Plaintiffs . . . constitutes an "egregious breach of the social norms." *Id.*; (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (Cal. 2009)).

Indeed, Plaintiffs expressly allege that POLITICO's conduct reflects common internet practices: "Like most internet websites, Defendant designed the Website to include resources and programming scripts from third parties that enable those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data." ECF 108 ¶ 2. Plaintiffs' own allegations therefore acknowledge that the challenged conduct is routine and widespread throughout the internet ecosystem. Such commonplace commercial activity cannot simultaneously be characterized as "highly offensive." *See Hammerling*, 615 F. Supp. 3d at 1090 (conduct consistent with common industry practice not highly offensive).

Moreover, the FAC does not allege that any of Plaintiffs' sensitive personal information or confidential communications were actually disclosed to a third party. Absent allegations of disclosure of genuinely private information, Plaintiffs cannot plausibly allege an intrusion sufficiently serious to support either a constitutional privacy claim or an intrusion-upon-seclusion claim. *Beltran v. Doctors Med. Ctr. of Modesto*, No. 2:23-CV-01670-DC-CKD, 2025 WL 1635467, at *8 (E.D. Cal. June 9, 2025). Because Plaintiffs fail to plausibly allege either a reasonable expectation of privacy or a highly offensive intrusion, their invasion of privacy and intrusion upon seclusion claims should be dismissed.

2.        *Plaintiffs fail to state a claim under CIPA Section 631(a).*

Plaintiffs' CIPA § 631 claim fails because the FAC does not plausibly allege that POLITICO engaged in unauthorized interception or eavesdropping on a telephonic communication. Section 631 prohibits: (1) intentional wiretapping, (2) willful attempts to learn the contents of a communication in

14

FP 64403659.11

transit, and (3) attempts to use or publicize information obtained in either manner. *Tavernetti v. Superior Court* (1978) 22 Cal.3d 187, 192. Section 631 also imposes liability upon "anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' . . . three bases for liability." Cal. Penal Code § 631(a). To state a claim under Section 631, Plaintiffs must plead sufficient facts showing that Defendant: (i) engaged in intentional wiretapping; (ii) willfully read or attempted to learn the contents of a communication without consent; (iii) used or communicated information obtained through such conduct; or (iv) aided or abetted any such activity. *Tavernetti*, 22 Cal.3d at 192 (quoting Cal. Penal Code § 631(a)).

### a.   Section 631(a) does not apply to internet communications.

Section 631(a)'s first clause, by its plain terms, "prohibits unauthorized connection with transmissions related to 'telegraph or telephone' technologies." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023). Consistent with this statutory language, courts have repeatedly held that Section 631(a) "does not apply to the internet." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024); *see also Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 n.8 (C.D. Cal. 2024) ("the first clause of Section 631(a) does not apply to internet communications"); *Valenzuela*, 674 F. Supp. 3d at 755 (clause one "does not prohibit the non-telephonic conduct" of using a smartphone to access a website and use its chat feature); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet"); *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *2-3 (9th Cir. July 9, 2025) (J. Bybee, concurring) (finding that based on the legislative history, Section 631(a) is limited to wiretapping telephone wires, and if the legislature wanted to apply the statue to the internet, cellular, or cordless phones, it could have done so when it made amendments in 1985, 1990, and 1992).

Here, Plaintiffs do not allege explicitly that they accessed POLITICO's website using an internet browser. Rather, Plaintiffs allege that they visited the website multiple times to read various news articles. ECF 108 ¶¶ 98, 107, 117. These allegations do not allege a transmission over "telegraph or telephone" technologies that would fall within the scope of Section 631(a), meaning Plaintiffs have failed to state a claim. Accordingly, Plaintiffs fail to state a claim under the first clause of Section 631(a).

Section 631(a) is inapplicable as a matter of law.

  b.  *Plaintiffs do not plausibly allege a Section 631(a) second clause violation.*

Plaintiffs fail to plausibly allege that any communication was intercepted "while in transit" to meet the requirements to state a claim under the second clause of Penal Code Section 631(a). This section prohibits reading the willful attempt to read the "contents" of a communication without consent in transit, which means capturing the intended message conveyed by the communication, not record information generated along with the transmission of the communication. *See Brodsky*, 445 F.Supp.3d at 127; *In re Zynga Priv. Litig.*, 750 F.3d at 1106. Here, Plaintiffs plead the existence of "real-time" interceptions, (ECF 108 ¶ 25), but they do not plead any facts that such an interception is technically feasible or that the interception actually happened in transit. Courts have consistently rejected unsupported allegations of "real time" interception as insufficient. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (holding plaintiffs failed to allege a § 631 claim when they only alleged conclusory statements that "communications are intercepted" and were done "simultaneously," explaining that the allegations described theory of "record and then transmission, not interception"); *In re Vizio Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (vague allegations that defendant's collection of data occurs "in real time" insufficient to assert § 631 claim); *Sisti v. Bosley Inc.*, No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) (dismissing § 631(a) wiretapping claim because plaintiff did not provide any support for the contention that defendant disclosed Plaintiffs' information to third parties while in transit or that a third party could have intercepted "and read" the contents of those communication).

Further, the type of information Plaintiffs allege was intercepted is not "contents" under Section 631(a). Metadata like call logs, geolocation data, device identifiers, and session durations are not "content." *S.D. v. Hytto Ltd.*, No. 18-CV-00688-JSW, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019); *Unites States v. Reed*, 575 F.3d 900, 914-17 (9th Cir. 2009). Plaintiffs allege only the collection of metadata about a user's interaction with the website, which is analogous to telephone record information, which courts have repeatedly held is outside Section 631(a)'s protection. *See, e.g., Ortiz*, 2026 WL 1430720, at *6 (dismissing § 631(a) claim because complaint was "silent on the actions they *personally* took on the [website] after clicking the 'disable cookies' button" and finding that general

list of "information that Plaintiffs allege the cookies are capable of collecting (without alleging such information was actually collected)" is insufficient). Even if provided by third parties, such data is used for analytics, advertising, or personalization, not to capture the substantive "intended message" of user communications. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897-99 (Ct. App. 1975); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 513 (S.D.N.Y. 2001) (courts have likened cookie identification numbers to internal barcodes or tracking codes on business reply cards, meaningless to consumers but valuable to companies for compiling analytics). While the FAC mentions that the "Defendant programmed the Website so that the contents of those communications are intercepted by the Third Parties," (ECF 108 ¶ 45), the factual allegations do not support that conclusory allegation. Rather, each of the factual allegations discuss the collection of things tracking data about a user's interaction with POLITICO, like session information and browsing history, not the contents of any communications. *See id.* ¶¶ 50-55, 61-64, 67-83.

Finally, Plaintiffs' claim is also barred because POLITICO was a direct participant in the alleged communications, not a third-party eavesdropper. The "party exception" under Section 631(a) reflects the practical reality of a conversation between two people: a party to a conversation is not an eavesdropper and is not liable for recording its own conversations. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979)) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third-party and not to recording by a participant to a conversation."); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) ("[A] party to a conversation can record it without the other party's knowledge without incurring § 631 liability.") (citing *Rogers v. Ulrich*, 52 Cal. App. 3d at 899). The party exception applies equally to website operators, which cannot "eavesdrop" on communications directed to them. *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023). In cases alleging wiretapping by website operators, courts have consistently dismissed Section 631(a) claims where the defendant is a party to the alleged exchange. *See, e.g., Martin v. Sephora USA, Inc.*, No. 1:22-CV-01355-JLT-SAB, 2023 WL 2717636, at *7 (E.D. Cal. Mar. 30, 2023) (finding party exception applies and dismissing CIPA claim when plaintiff brought suit against website owner but did not sue third party "interceptors"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) (dismissing CIPA claim because Nike was a party to the conversation and

17

had right to record it). Here, Plaintiffs allege only that they visited and interacted with POLITICO's Website, without clearly identifying any specific communications. To the extent any such communications occurred, they were directed to POLITICO, making POLITICO a party to them and precluding liability under the second clause.

### c.    Plaintiffs' claim under the third clause of Section 631(a) fails.

The third clause of Section 631(a) does not create an independent basis for liability. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1122 (S.D. Cal. 2024). Rather, a violation of the third clause depends on a predicate violation of the first or second clause. *Id.*; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Here, where Plaintiffs have not pleaded a plausible violation of either the first or second clause of Section 631(a), they cannot sustain a claim under the third clause.

### d.    Clause four does not apply to website operator third-party cookies use.

Plaintiffs' derivative liability theory fails because the Complaint does not plausibly allege that any third party violated Section 631(a). The aiding and abetting clause of Section 631(a) applies only where a defendant knowingly assists a third party in violating one of Section 631(a)'s first three clauses. *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *2, 6 (S.D. Cal. Feb. 12, 2024). Participants in a conversation cannot be held liable under Section 631(a); only a third-party interceptor can. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1181-82 (N.D. Cal. 2024); *Rogers v. Ulrich*, 52 Cal. App. 3d at 900. Accordingly, a plaintiff must first plead an underlying violation by a third party before derivative liability can attach. *See Graham*, 533 F. Supp. 3d at 833.

Here, POLITICO was a direct participant in Plaintiffs' website interactions and thus not a third-party eavesdropper. Plaintiffs do not allege facts demonstrating that any third party engaged in unlawful interception, nor that POLITICO knew of, agreed to, or substantially assisted in any such conduct. The third parties are pleaded as vendors providing standard analytics tools (ECF 108 ¶ 140), not clandestine wiretappers. Merely embedding vendor-supplied code does not constitute aiding or conspiring under Section 631(a). Absent a predicate violation, Plaintiffs' aiding-and-abetting theory necessarily fails. *See Graham*, 533 F. Supp. 3d at 833 ("where there is no underlying wrongdoing, there can be no aiding and abetting liability"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

Nor do Plaintiffs plausibly allege that any third party acted as an independent "eavesdropper"

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

FP 64403659.11

rather than as a service provider operating in the ordinary course. Courts distinguish between a true third-party interceptor and a service provider acting within the ordinary course of its role. *See Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKX), 2025 WL 3691987, at *3-4 (C.D. Cal. Nov. 6, 2025) (CIPA § 631 claim failed because allegations are equally consistent with challenged technology functioning as defendant's ordinary-course service provider or recording tool, rather than third-party eavesdropper using the data for its own independent purposes). Third-party vendors that operate as a facilitator for website visitor communication do not trigger derivative liability under Section 631(a). *See Graham*, 533 F. Supp. 3d at 832-33 (third-party vendor capture of website data hosted on vendor servers, to provide analytical data to website was an extension of website, not a third-party eavesdropper).

Here, Plaintiffs alleges that POLITICO uses Tracking Tools for marketing purposes (ECF 108 ¶¶ 5, 93, 140), which describes routine data processing, not unlawful interception. For these reasons, Plaintiffs fail to state a claim for derivative liability under the fourth clause of § 631(a).

        3.     *Plaintiffs fail to state a pen register claim under Section 638.51.*

              a.   *Plaintiff's Proposed Interpretation of Section 638.51 is Inconsistent with the Statute's Text, Legislative History, and Purpose.*

Plaintiffs seek to significantly expand the scope of § 638.51 beyond the statute's text, legislative history, and purpose. The legislative history of Section 638.51 demonstrates it was intended only to apply to telephone-tracking technology. *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *5 (Cal. Super. Jan. 27, 2025). Enacted in 2015, this statute established procedures for law enforcement to obtain and use a pen register or trap and trace device, clarifying that any location information obtained is limited to what can be determined from a telephone number. RJN, Ex. U [(Assembly Bill No. 929, 2015-2016 Regular Session). Though the internet had been in use for over 20 years at the time, the Legislature did not mention or include any other identifying information besides telephone numbers. *Id.*; *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) (statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute]"). In 2022, the California Legislature amended the statute through Assembly Bill 1241, but declined to expand the scope of the definition of a pen register or trap and trace device in the manner urged by Plaintiffs

FP 64403659.11

here to internet cookies. RJN, Ex. V [Assembly Bill No. 1242, 2021-2022 Regular Session].

The California Legislature specifically limited Section 638.52 (enacted with Section 638.51) by authorizing use of pen registers only where law enforcement could identify the person associated with "the telephone line to which the pen register . . . is to be attached." § 638.52(d)(1), (3). A California state court interpreting this statute recently found this significant, explaining that "[t]he use of "telephone line" in [Pen. Code § 638.51(d)(1) and (3)] explicitly narrows the scope of the definition of "pen register" or "trap and trace device" in the context of the statute" and concluded that "the full statutory scheme appears to demonstrate that the Legislature only intended these provisions to apply to telephone communications and not to internet websites." RJN Ex. W [*Blaker v. Netscout Sys., Inc.*, Case No. 25STCV31283 (L.A. Cnty. Sup. Ct., May 26, 2026)]. Further, California state and federal courts interpreting Section 638.52 have found it significant that internet-based communications are not mentioned in the legislative history and have declined to expand the definition of the statute.[3] To adopt Plaintiffs' expansive interpretation would expose all websites using tracker cookies (which are ubiquitous) to liability under CIPA, an outcome the California Legislature did not intend.

### b. CIPA does not protect the allegedly disclosed information.

Although Plaintiffs repeatedly refer to the Third Party "trackers" as pen registers, there are no facts to meet the statutory definition. A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs allege that the "Third Parties' cookies and the corresponding software code installed by POLITICO on its website are each "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs' and

---

[3] *Sanchez*, 2025 WL 487194, at *4-5; *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *5 (Cal. Super. Mar. 13, 2024) (citing *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 191 (2021)); *see also Cinmar*, 659 F. Supp. 3d at 1104; *Vitacost.com*, 683 F. Supp. 3d at 1123-24; *Augustine v. Lenovo Inc.*, No. 22-CV-2027-L-AHG, 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023); *Garcia v. Build.com, Inc.*, No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023); *Kauffman v. Papa John's Int'l, Inc.*, No. 22-CV-1492-L-MSB, 2024 WL 171363, at *9 (S.D. Cal. Jan. 12, 2024).

FP 64403659.11

the Class's computers or devices." ECF 108 ¶ 181.

What Plaintiffs allege in their Complaint is not a pen register but instead reflects a misunderstanding of how a website operates and why cookies are not a pen register. The statutory language describes a device recording information *to which* a communication is transmitted, in other words, "destination information" of a phone call. But Plaintiffs have alleged these cookies are placed on *Plaintiffs' devices* to transmit *their* "Private Communications" with POLITICO (which Plaintiffs never actually described) to third parties. ECF 108 ¶ 168. That is not a pen register. A pen register is typically attached to a phone line associated with a phone number already known to the user of the pen register (usually, law enforcement) to monitor phone numbers that the phone line dials or receives (which were previously unknown). "The analog of the number dialed by a telephone here is the IP address and related information of a website accessed by a computer – but not the computer's own IP address." *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct. Sep. 24, 2024).

Plaintiffs do not allege the cookies collected destination information or recorded the IP addresses of websites they visited, **which is how a pen register would function by analogy**. Indeed, with a pen register, there is no need to monitor the dialer device's own identifier, as that information is already known to law enforcement before installation. *See, e.g.*, Cal. Pen. Code § 638.52(d)(3). Further, the statute targets covert monitoring of *outgoing* communications, akin to law enforcement recording numbers dialed from a phone line, not the voluntary exchange of information when Plaintiffs chose to contact POLITICO's website and POLITICO learns the identity of the person who contacts it.

Courts have held that browsing activity information (which Plaintiffs describe as "Private Communications," despite none of that information being private) falls outside the privacy rights CIPA was designed to protect. A plaintiff must be "*injured* by a violation of the statute" to sue. Cal. Pen. Code § 637.2 (emphasis added). Merely alleging a statutory violation is insufficient. *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *4 (N.D. Cal. May 13, 2025) ("*TransUnion* precludes standing where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA."). Courts consistently hold that IP addresses, browsing history, and other metadata fall outside CIPA's privacy protections because users voluntarily transmit this information when accessing websites and have no reasonable expectation of privacy in it. *See*, *e.g., United States v. Forrester*, 512 F.3d 500, 503

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
FP 64403659.11

(9th Cir. 2008); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934,946 (2024); *Sanchez*, 2025 WL 487194, at *5; *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024).

Here, none of the allegedly collected information is personally identifiable or private, nor have any of the Plaintiffs alleged what information of theirs, if any, was shared with Third Parties. ECF 108 ¶ 25. Plaintiffs allege only that cookies and tracking technologies, which are common to "most internet websites" (ECF 108 ¶ 2), captured standard technical data during their voluntary visit to POLITICO's website. Because CIPA does not protect such information, Plaintiffs' claims fail as a matter of law.

        *c.  Pen registers, by definition, do not capture contents of communications.*

A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . **but not the contents of a communication**." Cal. Penal Code § 638.50(b) (emphasis added). Here, Plaintiffs admit that the technology allegedly used by POLITICO "enable[s] Third Parties to track users' behavior across the Internet and across time, user data can be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics (including psychological trends, predispositions, attitudes, intelligence, abilities, and aptitudes)." ECF 108 ¶ 41. This is more than just "routing, addressing, or signaling information"—as Plaintiffs allege POLITICO can use cookies to create "consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics; creating audience segments based on shared traits" (*Id*. ¶ 5) and "[a]dvertisers can gain deep understanding of users' behavioral traits and characteristics and target those users with advertisements tailored to their consumer profiles and audience segments." *Id*. ¶ 41. Courts have concluded that this is more than just "routing, addressing, or signaling information. *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Ct. Apr. 1, 2025) (dismissing plaintiff's CIPA pen register claim because digital fingerprinting software on website collected "contents"); *Kishnani*, 2025 WL 1745726, at *4 ("[a]ny [']fingerprint['] that reveals biographical information is [']the content['] of any communication between visitor and Website,[] and thus, the claim and the case cannot survive."). Because the Complaint (ECF 108) alleges that the Tracking Tools tracked contents, not just addressing information, Plaintiff's pen register claim must be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

FP 64403659.11

*d.    POLITICO is an electronic communications service provider under CIPA.*

The pen register statute contains an exception for "provider[s] of electronic or wire communication service [who] may use a pen register or a trap and trace device . . . to operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). POLITICO fits into this definition because its website is an electronic communication service—a "global news and information company specializing in policy reporting[]," providing access to its news content via its website. ECF 108 ¶ 21. California courts interpreting this exception have found that website operators qualify as electronic communication service providers thus fall under the exception to 638.50(b). *Rodriguez v. Ink America Int'l*, 25STCV15350, 2025 WL 4034985, at *4-5 (Cal. Super. Dec. 10, 2025); *Levings, Jr. v. Open Text Corp.*, No. 24STCV05440, 2024 WL 5672082, at *4 (Cal. Super. Sep. 3, 2024). This is an additional reason why Plaintiffs' claims fail as a matter of law.

### 4.    *Plaintiffs fail to state claims of fraud, deceit, or misrepresentation.*

Plaintiffs' fraud-based claims fail because the FAC does not satisfy either the substantive elements of fraud under California law or the heightened pleading requirements of Rule 9(b). To state a claim for fraud, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages. *Hammerling*, 615 F. Supp. 3d at 1081. Because these claims are grounded in fraud, they must also meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which requires that the "who, what, when, where, and how" of the alleged misconduct be stated with particularity. *Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). Where, as here, a plaintiff alleges "a unified course of fraudulent conduct" and relies "entirely on that course of conduct as the basis of a claim," Rule 9(b) applies to the claims as a whole. *Vess*, 317 F.3d at 1103-04. Because these claims sound in fraud, Plaintiffs must plead the alleged fraud with particularity. *Id.*; Fed. R. Civ. P. 9(b).

Plaintiffs' failure to allege any specific details related to their visit to the website is fatal to their fraud claim. Plaintiffs allege generally that POLITICO represented that users could reject cookies, while allegedly continuing to collect or disclose information after users opted out. But the FAC does not identify with particularity who made the alleged misrepresentations, when any Plaintiff encountered them, which specific statements each Plaintiff relied upon, or how the statements were false when made. Nor do Plaintiffs identify which cookies allegedly continued to operate after Plaintiffs exercised their

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

FP 64403659.11

privacy preferences, what information was purportedly collected, or how any particular disclosure contradicted POLITICO's representations. Such generalized allegations do not satisfy Rule 9(b)'s requirement that Plaintiffs plead the "who, what, when, where, and how" of the alleged fraud. See *Vess*, 317 F.3d at 1106.

Further, as discussed, Plaintiffs' own allegations, together with judicially noticeable facts, establish that the cookie consent banner was no longer displayed on POLITICO's website after September 13, 2023. *See* ECF 92-1, Bowers Decl. ¶¶ 5-6. Absent allegations that they actually saw and relied on the purportedly misleading statements, Willis and Penning cannot establish reliance as a matter of law.

The FAC also fails to plead justifiable reliance. Plaintiffs do not allege facts showing that they reviewed and relied on any specific representation before visiting the website, making browsing decisions, or allegedly rejecting cookies. Instead, the FAC relies on conclusory assertions that Plaintiffs would have acted differently had they known the true facts. Such allegations are insufficient. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (2012) (fraud claims require actual and justifiable reliance causing the alleged injury).

To the extent Plaintiffs assert a claim based on fraudulent omission, they likewise fail to plead facts establishing a duty to disclose. The FAC contains no allegations showing a fiduciary relationship, exclusive knowledge of material facts, active concealment, or any other circumstance giving rise to a duty to disclose under California law. *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011). Nor does the FAC identify any specific information that POLITICO was legally obligated to disclose but failed to disclose.

Finally, Plaintiffs fail to plausibly allege damages caused by any alleged misrepresentation or omission. The FAC alleges only the purported loss of control over personal information and generalized privacy injuries. It does not identify any economic loss, diminution in value, out-of-pocket expenditure, or other appreciable injury resulting from Plaintiffs' alleged reliance on POLITICO's statements. *See Beckwith*, 205 Cal. App. 4th at 1062 (requiring both reliance and resulting damages).

Because Plaintiffs fail to plead the alleged fraud with particularity, fail to allege actual and justifiable reliance, fail to establish a duty to disclose, and fail to plead resulting damages, their claims

for fraud, deceit, intentional misrepresentation, negligent misrepresentation, and fraudulent concealment should be dismissed.

### 5. *The FAC does not state a claim for unjust enrichment.*

Plaintiffs do not plead any non-speculative facts demonstrating that POLITICO realized a measurable financial benefit, the nature or amount of any such benefit, or how any alleged benefit is directly traceable to Plaintiffs, as opposed to generalized business operations. Under California law, unjust enrichment is synonymous with restitution and requires a plaintiff to allege that the defendant received and unjustly retained a benefit at the Plaintiffs' expense. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

Here, the FAC does not satisfy these requirements. Plaintiffs do not allege that they paid money to POLITICO, purchased a subscription, entered into a transaction with POLITICO, or otherwise transferred any property or thing of value to POLITICO. Instead, Plaintiffs allege only that POLITICO collected information through website technologies and derived some kind of amorphous, unspecified value from that information. Such allegations are insufficient because they do not plausibly establish that Plaintiffs conferred a measurable benefit on POLITICO for which restitution may be awarded.

Nor does the FAC identify any specific economic benefit POLITICO allegedly obtained from Willis, Penning, or Shah. Plaintiffs allege in conclusory fashion that POLITICO profited from website tracking technologies, but they do not allege facts showing the nature or amount of any benefit received, how that benefit was derived from any particular plaintiff, or why equity requires disgorgement. Conclusory allegations of enrichment are insufficient to state a restitution claim. *See Sisti*, 2026 WL 1223927, at *8 (dismissing unjust enrichment claim because plaintiff failed to allege that sensitive data was disclosed; thus, plaintiff failed to allege unjust retention of a benefit at plaintiff's expense). At most, the FAC alleges the collection of information during website visits. Such allegations do not plausibly establish that Plaintiffs conferred a restitutionary benefit on POLITICO or suffered a corresponding deprivation. Accordingly, Plaintiffs fail to state a claim for unjust enrichment.

## V. CONCLUSION

For the foregoing reasons, POLITICO requests the Court grant this Motion in its entirety.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT POLITICO LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

FP 64403659.11

Dated: June 10, 2026                    FISHER & PHILLIPS LLP

                                   By: */s/ Usama Kahf*
                                       DANIELLE KAYS (*PRO HAC VICE)*
                                       USAMA KAHF
                                       CATHERINE M. CONTINO (*PRO HAC VICE*)
                                       XUAN ZHOU
                                       Attorneys for Defendant
                                       POLITICO LLC

26

FP 64403659.11

## CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On June 10, 2026 I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT POLITICO LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** on all the appearing and/or interested parties in this action addressed as follows:

Seth Adam Safier
Marie Ann McCrary
Todd Kennedy
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250 San
Francisco, California 94111

*Attorneys for Plaintiff*
*VISHAL SHAH*

Tel:        415.639.9090
Fax:        415.449.6469
Email:      seth@gutridesafier.com
            marie@gutridesafier.com
            todd@gutridesafier.com

☒    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☐    **[by ELECTRONIC SERVICE]** - Based on a court order or an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed June 10, 2026 at Irvine, California.

Stephanie A. Crisp
_____
Print Name

By: _____
Signature

1
CERTIFICATE OF SERVICE

FP 64403659.11