**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
TODD KENNEDY (State Bar No. 250267)
todd@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, HEIDI WILLIS, and STACY PENNING, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>POLITICO LLC,<br><br>    Defendant. | Case No. 5:25-cv-05213-NW<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>Date:    September 16, 2026<br>Time:    9:00 a.m.<br>Ctrm:    3, 5th Floor<br><br>Judge Noël Wise |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL ALLEGATIONS ...............................................................................2

III.    ARGUMENT .......................................................................................................3

    A.    Willis and Penning Adequately Allege That Their CIPA Claims Are Timely Pursuant to the Discovery Rule....................................................................3

    B.    Plaintiffs Have Article III Standing ...........................................................6

        1.    The New Plaintiffs Allege They Visited the Website When the Cookie Banner Was In Effect...........................................................6

        2.    As This Court Already Ruled, Plaintiffs Have Alleged A Concrete Injury-In-Fact ...........................................................................................8

        3.    Defendant's Argument that Penning Is A "Tester" Is Untrue and Repeats an Argument that the Court Already Rejected As to Shah. ..............................10

    C.    Plaintiffs Adequately Plead Their Claims.................................................11

        1.    Defendant Reasserts Challenges to Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims that the Court Has Already Rejected. .........11

        2.    Plaintiffs Adequately Plead Wiretapping Claims Under § 631(a)....................12

            a.    Plaintiffs Adequately Allege That Third Parties Violated § 631(a) (Clause Two)..............................................................................14

            b.    Plaintiffs' § 631(a) (Clause Three) Claims Survive. ...........................16

            c.    Defendant's Third-Party Vendors Are Not Intended Recipients..........16

        3.    Plaintiffs Adequately Plead Pen Register Claims Under § 638.51...................17

            a.    Pen Registers are "Device[s] or Process[es]" not Limited to Telephones. .....................................................................................18

            b.    Defendant's Use of a Pen Register Harmed Plaintiffs.........................19

            c.    The Alleged Collection of Contents Does Not Preclude Pen Register Liability. ...........................................................................20

            d.    Defendant Fails to Demonstrate that the "Service Provider" Exemption to § 638.51 Applies ..........................................................21

        4.    Defendant Reasserts Challenges to Plaintiffs' Fraud, Deceit, and Misrepresentation Claims that the Court Has Already Rejected. .....................22

        5.    Plaintiffs Adequately Plead Unjust Enrichment. .............................................23

II.    CONCLUSION..................................................................................................24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC; 5:25-CV-05213-NW

# TABLE OF AUTHORITIES

## CASES

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024).........................30

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024).....................................................................................5

*Bankers Life & Cas. Co. v. Mallin*,
No. 25-CV-02430-RFL, 2025 U.S. Dist. LEXIS 225093, 2025 WL 3186358
(N.D. Cal. Nov. 5, 2025)..................................................................................................................29

*Beasley v. Lucky Stores, Inc.* ("Beasley I"),
400 F. Supp. 3d 942 (N.D. Cal. 2019).............................................................................................5

*Beasley v. Lucky Stores, Inc. ("Beasley II")*,
No. 18-cv-07144-MMC, 2020 U.S. Dist. LEXIS 13211 (N.D. Cal. Jan. 24, 2020).....................5, 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ...............................................................................14, 19, 25

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021)...........................................................................7

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ..............................................................................................25

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........................................................................................................10

*Cody v. Ring LLC*,
718 F. Supp. 3d (N.D. Cal. 2024) .............................................................................................16, 20

*De Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 U.S. Dist. LEXIS 264583, 2025 WL 3707561
(N.D. Cal. Dec. 22, 2025)................................................................................................................13

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........................................................................................4, 8

*Doe v. Regents of the Univ. of Cal.*,
23 F.4th 930 (9th Cir. 2022) .............................................................................................................1

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)............................................................................................18

*Esparza v. UAG Escondido A1 Inc.*,
No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ....................17

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ......................................................................................................................4

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) ......................................4, 26

*Gabrielli v. Motorola Mobility LLC*,
2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)........................................................ passim

*Graf v. Zynga Game Network, Inc.*,
750 F.3d (9th Cir. 2014) ..................................................................................................................19

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................................21

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023).................................................................................22, 23

*Heerde v. Learfield Commc'ns, LLC*,
  2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)........................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  865 P.2d 633 (1994)....................................................................................................................13

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................................................19

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d at 606 (9th Cir. 2020) .......................................................................................13, 14, 21

*In re Google Location History Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ...............................................................................14, 25

*In re Meta Pixel Tax Filing Cases*,
  793 F. Supp. 3d 1147 (N.D. Cal. 2025) (Pitts, J.)......................................................................26

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) .....................................................................................19

*Isgur v. Meta Platforms, Inc.*,
  No. 24-CV-06559-WHO, 2026 U.S. Dist. LEXIS 14171 (N.D. Cal. Jan. 26, 2026) .......................30

*Jackson v. Linkedin Corp.*,
  744 F. Supp. 3d 986 (N.D. Cal. 2024) .......................................................................................17

*Javier v. Assurance IQ LLC*,
  649 F. Supp. 3d (N.D. Cal. 2023) ..............................................................................................20

*Javier v. Assurance IQ, LLC*,
  No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022)..........................................16

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d (N.D. Cal. 2023) ..............................................................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ......................................................................................................12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025).....................................11, 26

*Krantz v. Old Copper Co., Inc.*,
  794 F. Supp. 3d 724 (C.D. Cal. 2025) .........................................................................................6

*Mirmalek v. L.A. Times Communs. LLC*,
  2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024).........................................22, 23, 24, 28

*Mitchell v. Sonesta Int'l Hotels Corp.*,
  No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024)..................18

*Pemberton v. Rest. Brands Int'l, Inc.*,
  No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ........................28

*Plumlee v. Pfizer, Inc.*,
  No. 13-CV-00414-LHK, 2014 U.S. Dist. LEXIS 121634 (N.D. Cal. Aug. 29, 2014)........................6

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..............................................................................21

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) .................................................................................................................18

*Rodriguez v. Autotrader.com, Inc.*,

iii

762 F. Supp 3d 921 (C.D. Cal. 2025) ...............................................................27, 28

*Rodriguez v. Autotrader.com, Inc.*,
    No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. April 4, 2025)..................................13

*Rodriguez v. Autotrader.com, Inc.*,
    No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) ................................13

*Rodriguez v. Ford Motor Co.*,
    2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024).................................................16

*Roffman v. Perfect Bar*,
    2023 U.S. Dist. LEXIS 6049 (N.D. Cal. Jan. 12, 2023) ..................................................26

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) .....................................................................21

*Shah v. Capital One Fin. Corp.*,
    No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025)...........................30

*Shah v. Fandom, Inc.*,
    2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).........................................22, 23, 24

*Shah v. MyFitnessPal, Inc.*,
    No. 25-CV-04430-PCP, 2026 U.S. Dist. LEXIS 15193, 2026 WL 216334
    (N.D. Cal. Jan. 27, 2026) .................................................................................10

*Shah v. Politico LLC*,
    No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) ..................... passim

*Silver v. Stripe Inc.*,
    2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021)..............................................15

*St. Aubin v. Carbon Health Techs., Inc.*,
    2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)................................15, 17, 18, 19

*Thomas v. Papa Johns Int'l, Inc.*,
    2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024).............................................14, 25

*Torres v. Prudential Fin., Inc.*,
    2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) ........................................20, 21

*United States v. Jones*,
    565 U.S. 400 (2012)........................................................................................10

*Valenzuela v. Keurig Green Mountains, Inc.*,
    674 F. Supp. 3d (N.D. Cal. 2023) .........................................................................18

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal. App. 4th 282 (2004) .............................................................................29

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2009) ...............................................................................4

*Walsh v. Dollar Tree*,
    2025 U.S. Dist. LEXIS 204652 (N.D. Cal. 2025) .........................................................16

*Yockey v. Salesforce, Inc.*,
    688 F. Supp. 3d (N.D. Cal. 2023) .........................................................................10

*Yumul v. Smart Balance, Inc.*,
    733 F.Supp.2d 1117 (C.D. Cal. 2010) ......................................................................4

**STATUTES**

Cal. Penal Code § 631................................................................................17, 20

Cal. Penal Code § 631(a) .......................................................................................... passim
Cal. Penal Code § 638.50(b) ...............................................................................22, 23, 26
Cal. Penal Code § 638.51 ...............................................................................................2, 27
Cal. Penal Code § 638.51(a) .......................................................................................16, 22
Cal. Penal Code § 638.51(b) .............................................................................................23
Cal. Penal Code § 638.51(b)(1) ........................................................................................27

**OTHER AUTHORITIES**

*GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ (Jan. 18,
    2023) .............................................................................................................................8

**RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................................23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC; 5:25-CV-05213-NW

## I.    INTRODUCTION

Seeking another bite at the apple, Defendant seeks to relitigate numerous issues that this Court already considered and rejected. The Court has already held that Plaintiff Shah: (1) suffered a concrete injury-in-fact sufficient to confer Article III standing; (2) adequately pleaded claims for invasion of privacy and intrusion upon seclusion; and (3) adequately pleaded claims for fraud, deceit, and misrepresentation. *Shah v. Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *11–13, *20 (N.D. Cal. Feb. 6, 2026). Although Heidi Willis's and Stacy Penning's (collectively, the "New Plaintiffs") allegations are materially identical, Defendant nevertheless improperly rehashes many of the same arguments.

There are only a handful of issues that this Court has not yet addressed, and none warrants dismissal:

First, Defendant contends that the New Plaintiffs' CIPA claims are time-barred. They are not. The FAC alleges in detail that the New Plaintiffs lacked the technical ability to detect Defendant's tracking practices and had no reasonable means of discovering that Defendant deceived them and intentionally failed to honor their cookie preferences until they learned of the conduct shortly before filing suit.

Second, Defendant argues that its cookie banner was no longer displayed to California visitors after September 2023 and that, as a result, the New Plaintiffs could not have suffered the injuries they allege. This argument does not withstand scrutiny. Both New Plaintiffs allege that they visited www.politico.com (the "Website") in 2023 and encountered the cookie banner. ECF 85-2 ("FAC") ¶¶ 1, 109, 119. Drawing "all reasonable inferences in favor of the plaintiff[s]," the Court must infer that these visits occurred prior to September 2023, before the banner was removed. *Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930, 935 (9th Cir. 2022). Defendant turns the standard on its head, effectively asking the Court to draw the opposite inference. It should not do so.[1]

Third, Plaintiffs have adequately alleged violations of CIPA. Defendant aided third parties in intercepting Plaintiffs' communications, giving rise to Plaintiffs' wiretapping claims. Those third parties used the intercepted information for their own commercial purposes, defeating Defendant's contention that they were merely "service providers." Plaintiffs' claims under Penal Code § 638.51 likewise survive

---

[1] Further, to the extent any clarification is required, both New Plaintiffs have filed Declarations clarifying their allegations, and confirming that they visited the Website prior to the change. Willis Decl. ¶¶ 2–3; Penning Decl. ¶¶ 2–3.

because the statute's definition of a pen register extends to internet-based technologies that capture user information and is not limited to traditional telephone equipment.

Finally, Plaintiffs amended their unjust enrichment allegations to address the deficiencies identified in the Court's prior order.

For all of these reasons, Defendant's motion should be denied in its entirety and this case should finally move forward in earnest.

## II.    FACTUAL ALLEGATIONS

When consumers visit politico.com (the "Website"), Defendant displays a popup cookie consent banner in which it offers Website users the option to click a "Do Not Sell My Information" link and then reject "Performance Cookies" and "Online Behavioural Advertising" cookies. ECF No. 108 (First Amended Complaint "FAC") ¶¶ 30–33. Despite this clear promise, Defendant nevertheless enabled numerous third parties—including, without limitation, Google LLC, Microsoft Corporation, Amazon.com, Inc., and Yahoo, Inc. (the "Third Parties")—to use cookies to collect and aggregate those users' personal information, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and more. *Id.* ¶¶ 2–4. The Third Parties then used this ill-gotten personal information to create consumer profiles, target and personalize advertising, and analyze the effectiveness of advertising—all for their own financial gain. *Id.* ¶¶ 5, 41, 56–83. This is exactly what users who instructed Defendant not to sell their information sought to avoid.

On February 6, 2026, the Court held that Plaintiff Shah had a concrete injury sufficient to confer Article III standing and had adequately pleaded claims for (1) invasion of privacy, (2) intrusion upon seclusion, and (3) fraud, deceit, and misrepresentation. *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *11–13, *20. The Court dismissed Plaintiff Shah's claims under CIPA claims for wiretapping and use of a pen register as time-barred. *Id.* at *17. It also dismissed Plaintiff Shah's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and trespass to chattels. *Id.* at *22–26. Finally, the Court dismissed Plaintiff Shah's unjust enrichment claim because the complaint did not allege facts suggesting that the contract at issue was unenforceable or invalid. *Id.* at *22.

On February 27, 2026, Plaintiffs filed the current Complaint. The FAC adds two New Plaintiffs with timely CIPA claims whose allegations are otherwise materially identical to Plaintiff Shah's claims. *Compare* FAC ¶¶ 98–106 (Plaintiff Shah's allegations) *with* FAC ¶¶ 107–126 (New Plaintiffs' allegations); *see also* FAC ¶ 16 (alleging that the additional plaintiffs did not discover Defendant's alleged conduct "until on or around January 2026").[2] The Amended Complaint does not reassert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, or trespass to chattels. It does, however, include additional allegations regarding unjust enrichment, including that "no enforceable contract governs the conduct issues because the contract is "invalid, void, unconscionable, or inapplicable to the conduct alleged herein." *Id.* ¶¶ 201–02.

## III.    ARGUMENT

### A.    Willis and Penning Adequately Allege That Their CIPA Claims Are Timely Pursuant to the Discovery Rule.

Defendant's statute-of-limitations argument fails for at least three independent reasons. First, the FAC adequately pleads delayed discovery by alleging why the New Plaintiffs could not have discovered Defendant's conduct earlier despite reasonable diligence. Second, the FAC adequately alleges fraudulent concealment because Defendant affirmatively represented that users could reject non-essential cookies while allegedly concealing that it continued to permit third parties to collect their information regardless of those selections. Either of these doctrines is sufficient to defeat Defendant's timeliness challenge. Defendant nevertheless devotes much of its motion to equitable tolling, but equitable tolling provides a separate and additional basis for tolling. Even if the Court were to reach that issue, the FAC alleges that Defendant was on notice of the claims at issue from the outset because Shah pursued substantially identical claims on behalf of a putative class. Accordingly, Defendant cannot establish from the face of the FAC that the New Plaintiffs' claims are untimely.

Defendant nevertheless argues that the New Plaintiffs did not "plead facts sufficient to invoke the delayed discovery rule." Mot. at 12. This is untrue. Claims may be dismissed as untimely "only when the running of the statute [of limitations] is apparent on the face of the complaint." *Von Saher v. Norton Simon*

---

[2] Defendant also faults Plaintiff Shah for failing to add new tolling allegations regarding his delay in filing his CIPA claims following arbitration. But Plaintiff Shah does not dispute this fact.

3

*Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009). The "delayed discovery rule tolls the statute of limitations, which requires the plaintiff to plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1130 (C.D. Cal. 2010). Moreover, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, n.6 (N.D. Cal. 2024) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *26 (N.D. Cal. Aug. 29, 2025) (quoting *Fox*, 35 Cal. 4th at 807).

Here, the New Plaintiffs do exactly that. They allege they "were unaware that even though they rejected all non-strictly necessary cookies on the Website, Defendant caused cookies, including the Third Parties' cookies, to be sent to their browsers, stored on their devices, and transmitted to the Third Parties along with their private user data until on or around January 2026 when they learned of Defendant's privacy violations from their counsel"—i.e., the time and manner of discovery. FAC ¶ 16. They further allege inability to make the discovery earlier despite reasonable diligence. Specifically, they allege that the "only way" to learn of the conduct is to "use a specialized tool such as Chrome Developer Tools." *Id.* ¶¶ 116, 126. "[S]uch tools are designed for use by 'developers' (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom" and that ordinary users do "not have the expertise to test whether the Website honored users' requests to opt out of cookies and tracking technologies." *Id.* These allegations are sufficient to allege tolling under the delayed discovery rule. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (holding that a delayed discovery argument posed a "barrier to dismissal" when the plaintiff alleged that the defendants secretly incorporated Pixels into their web properties and patient portals). Thus, contrary to what Defendant argues, the violations that occurred in 2023 did not begin to accrue until January 2026 and the New Plaintiffs promptly filed their amended Complaint one month later on February 27, 2026.

Defendant's reliance on *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110–11 (1988), is misplaced. Unlike the plaintiff in *Jolly*, who knew she had been injured and suspected wrongdoing (*id.* at 1107), Plaintiffs had no way of knowing that Defendant was allegedly disregarding their cookie preferences

because the challenged conduct occurred behind the scenes and was concealed from ordinary users. Accordingly, the New Plaintiffs did not suspect, and had no reason to suspect, that they had suffered any injury until they learned of Defendant's misconduct from counsel.

Defendant argues that because Plaintiff Penning has been involved in other cookie-related cases, his delay in bringing this action was not reasonable. That is incorrect. Awareness that one website may be violating a user's privacy does not put that user on notice that every website is doing so. The fact that Penning has brought other cases simply reflects that multiple companies have engaged in similar conduct. It does not impose on him a duty to audit every website he has ever visited within a compressed time period. Nor does it mean that multiple wrongs make Politico right.

Plaintiffs also allege that their claims were tolled based on fraudulent concealment. Defendant does not dispute this separate basis for tolling, which further demonstrates that the New Plaintiffs tolling allegations are not futile. Tolling based on fraudulent concealment is proper when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 (internal quotation marks and citation omitted). The New Plaintiffs meet this standard: they allege Defendant affirmatively misrepresented to website visitors that users could reject "Performance Cookies" and "Online Behavioural Advertising" cookies and tracking technologies and that the "misrepresentations and omissions were known exclusively to, and actively concealed by Defendant." *See*, *e.g.*, FAC ¶¶ 1–6, 17, 191. The New Plaintiffs also plead that they did not have actual or constructive knowledge of the facts giving rise to their claim. *Id*. ¶¶ 113, 123, 191. Because of this affirmative misrepresentation, and Plaintiffs' lack of technical expertise, the New Plaintiffs acted diligently in bringing this action after learning of Defendant's privacy violations in 2026. *Id*. ¶¶ 17, 116, 126. Thus, they also adequately allege tolling on the basis of fraudulent concealment.

Defendant devotes substantial attention to attacking Plaintiffs' equitable tolling allegations. The Court need not reach those arguments. As discussed above, the FAC adequately alleges delayed discovery and fraudulent concealment, either of which independently renders the New Plaintiffs' claims timely. Because the FAC plausibly alleges that Willis and Penning did not discover, and could not reasonably

have discovered, Defendant's alleged conduct until 2026, the extensive discussion of equitable tolling is largely beside the point.

In any event, Defendant's notice argument is unpersuasive. From the outset, Shah asserted his claims on behalf of a putative class of individuals whose privacy rights were allegedly violated by Defendant's conduct. Shah's demand letter and subsequent arbitration expressly notified Defendant that he was pursuing relief not only for himself, but also for similarly situated website visitors subjected to the same alleged cookie and tracking practices. Willis and Penning fall squarely within that putative class. Thus, this is not a case in which Defendant is confronted with entirely new and unrelated claims by previously unknown individuals. Rather, Defendant has been on notice since before this litigation began that the challenged conduct allegedly affected a broader group of users, including the New Plaintiffs. Willis and Penning likewise acted reasonably and in good faith because they did not discover, and could not reasonably have discovered, Defendant's alleged misconduct until they learned of it from counsel in January 2026, after which they promptly sought to assert their claims. Because Willis's and Penning's claims arise from the same alleged course of conduct, involve the same legal theories, and concern the same alleged privacy violations that have been at issue from the beginning, Defendant cannot plausibly claim surprise or prejudice from their addition as class representatives.

Thus, contrary to Defendant's argument, the New Plaintiffs' statute of limitations for the privacy violations in 2023 did not begin to accrue when they visited the Website. FAC ¶¶ 98, 107. Rather, as Defendant's alleged misconduct was concealed from users, the New Plaintiffs could not reasonably have discovered that Defendant was allegedly disregarding their cookie preferences until on or around January 2026, when they first learned of Defendant's conduct. *Id.* ¶ 16–17. Accordingly, their claims did not accrue until that time. The New Plaintiffs then promptly asserted their claims in the FAC approximately one month later on February 27, 2026. ECF No. 85. Defendant therefore cannot establish from the face of the FAC that the New Plaintiffs' claims are untimely.

**B.     Plaintiffs Have Article III Standing**

       **1.  The New Plaintiffs Allege They Visited the Website When the Cookie Banner Was In Effect.**

Defendant next argues that Willis and Penning did not visit the Website when a cookie consent banner was present. Mot. at 8. That is both incorrect and inconsistent with what is actually pled. Both Plaintiffs allege that they saw the banner and that they visited the website in 2023. FAC ¶¶ 1, 109, 119. Defendant does not dispute that the banner was in place during 2023. Instead it asserts that the banner was removed on September 13, 2023. ECF No. 92-1 (Bowers Decl.) ¶¶ 4–6. "[A]ccepting as true all well-pleaded factual allegations and draw[ing] reasonable inferences in favor of the pleading," as the Court must at this stage, Plaintiffs' initial visits would have occurred during the first nine months of 2023, when the banner was in place. *Doe*, 23 F.4th at 935. To clarify their allegations, Plaintiffs have supplied declarations confirming that they visited in 2023 when the banner was present. Willis Decl. ¶¶ 2–3; Penning Decl. ¶¶ 2–3.

Specifically, Plaintiff Willis alleges that she "visited the Website on multiple occasions during the period from 2023 through 2026 for the purpose of reading news and following current events" and that "[w]hen she visited the Website . . . [it] presented her with Defendant's popup cookie consent banner." FAC ¶¶ 107, 109. She further alleges that she set her preferences consistent with her typical practice. FAC ¶ 110. These allegations are entirely consistent with Defendant's assertion that the banner was present during the first nine months of 2023.

The same is true for Plaintiff Penning. He alleges that he "visited the Website on multiple occasions between 2023 and 2026," and then provides a non-exclusive list of example dates. FAC ¶ 117 (emphasis added). Defendant incorrectly treats those dates as exhaustive and assumes that Penning only visited on October 7, 2023, May 17, 2024, May 20, 2024 through May 31, 2024, and October 7, 2025. That is not what the FAC alleges. It states that he visited from 2023 to 2026, including on or about those dates. But "including" those dates does not exclude other visits. Penning Decl. ¶ 3. For example, he alleges that he continued to visit the website through 2026 but does not provide specific dates for those visits, confirming that the list is illustrative, not limiting. To remove any ambiguity, Penning has submitted a declaration "clarifying" that the list of dates was not intended "to be complete" and that he also "visited the website on other occasions between 2023 and 2026, including one or more occasions before September 2023." Penning Decl. ¶ 3.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC; 5:25-CV-05213-NW

Defendant's purported facts also ignore how cookie banners actually function. Plaintiffs allege that they visited the Website in 2023, when the banner was undisputedly in place, and continued to visit thereafter. They do not allege that the banner was presented on every visit, because websites typically do not display cookie banners to users who have already set their preferences. This is true even if a website has not removed the banner. *See*, *e.g.*, Edwards, Jeffrey, *GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ (Jan. 18, 2023) ("A user's decision to opt-out must be duly recorded and enforced, and an opt-in may not be repeatedly solicited. Site owners may not resubmit a consent banner to users who denied it at each new access to the website."). The intended reading of the FAC is that Plaintiffs were presented with the banner on their initial visits in 2023 and then continued to visit the Website thereafter when Politico claims to have taken down the cookie banner. Most importantly, it is not unreasonable for Plaintiffs (and others) to believe that their original rejection of cookies would continue to be honored when no new cookie banner populated.

### 2. As This Court Already Ruled, Plaintiffs Have Alleged A Concrete Injury-In-Fact

Defendant again argues that the FAC should be dismissed for lack of Article III standing. But the Court has already considered and rejected that argument. In ruling on Defendant's prior motion to dismiss, the Court held "because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III." *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *11 (quoting *Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 U.S. Dist. LEXIS 15193, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026)).

There is no reason to revisit that decision. Like Shah, Willis and Penning allege that in direct violation of the promise made by Defendant not to allow the use of third party cookies, Defendant causes third parties to employ cookies to collect broad swaths of information that promotes the aggregation of user data about Plaintiffs and all Website users "to create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics and audience segments based on shared traits (such as females, Millennials, etc.), and to perform targeted advertising and marketing

analytics." *See* FAC ¶¶ 42, 63. The information collected includes both the contents of communication (e.g., "User Input Data") and software that collects record information such as IP addresses and User Identifiers. *See id.* ¶ 25 (defining data collected). And the tracking continues across websites in part due to third parties' collection and use of the User Identifiers "that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions." *Id.* ¶ 24; *see also United States v. Jones*, 565 U.S. 400, 418 (2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year."); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d at 969–970 (N.D. Cal. 2023) (CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" . . . "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

Defendant's arguments to the contrary repeat arguments that this Court already rejected. For example, it posits that "Plaintiffs fail to identify any personal information of theirs that was actually intercepted, disclosed, or otherwise misused as a result of their website visits," supposedly foreclosing any privacy injury, and once again citing this Court's decision in *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025). Mot. at 14. However, as the Court already made abundantly clear in its prior order, the allegations were in *Kishnani* were thread bare as compared to the current allegations. *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *9 (distinguishing *Kishnani* as inapposite because it "concerned a single cookie furnished by TikTok, and failed to explain what, if any, actual information that cookie collected" and "the defendant there had not offered Kishnani the opportunity to opt out of tracking cookies, so he could not reasonably expect that cookies would not be deployed when he browsed defendant's website.").

Nor is Defendant correct that Plaintiffs allege only what information could have been collected. The FAC repeatedly alleges that Defendant in fact caused third parties to collect and disclose specific

9

categories of information, including user-input data, IP addresses, user identifiers, URLs, browsing activity, and related information used to recognize users across websites and browsing sessions. FAC ¶¶ 24–25, 37–40. At the pleading stage, that is more than sufficient. *See*, *e.g.*, *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at 16–17 (N.D. Cal. July 14, 2025).

Accordingly, Defendant's standing challenge fails for substantially the same reasons this Court rejected its prior challenge.

### 3. Defendant's Argument that Penning Is A "Tester" Is Untrue and Repeats an Argument that the Court Already Rejected As to Shah.

Defendant's argument that Plaintiff Penning is a "tester" fares no better. This Court already considered and rejected the same argument as to Plaintiff Shah, holding that Defendant's contention that Shah was "an issue of fact and unsuitable as a ground for dismissal." *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *11 n.2. Defendant nevertheless asserts identical arguments against Penning.

Defendant's only support for confirming Plaintiff Penning "is a professional litigant" is a curated list of Plaintiff's attempts to vindicate his privacy rights, of which Defendant requests judicial notice. *Id.*, *see also* ECF 111. The cases may be noticed, but Defendant impermissibly demands the Court *draw inferences against Plaintiff*—that he is a "tester," adversely affecting his standing. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (even if a document is subject to judicial notice, the inferences the court can draw from that document must "not [be] subject to reasonable dispute"). And it demands this Court infer that Plaintiff knew that *Defendant* would violate his privacy based on different cases against different entities, and that he was in fact "testing" the Website here for privacy violations. Mot. at 16. That is neither true, nor in the FAC. Indeed, the complaint pleads the exact opposite. *See* FAC ¶¶ 117, 122 (enumerating reasons Plaintiff visited the Website) and 126 (Plaintiff "**does not have the technical knowledge necessary to test** whether the Website honors users' requests to reject all"). As Judge Tigar explained in *Gabrielli v. Motorola Mobility LLC*, Defendant's impermissible inferences must be rejected:

> As for Motorola's "tester" argument, Motorola seeks to apply the cases dismissing invasion of privacy claims brought by tester plaintiffs on the grounds that such persons actually seek out invasions of privacy and so have no reasonable expectation of privacy in their personal

10

information, and thus no injury sufficient to confer standing. *See, e.g., Rodriguez v. Autotrader.com, Inc.,* No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025). But these cases do not apply here, given that [plaintiff] pleads that he is not a tester and that he visited Motorola's website to "browse information about Motorola's products" and not to seek out privacy violations. ECF No. 1 ¶ 70; *see also Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 at *1 (C.D. Cal. April 4, 2025) (no dispute that the plaintiff was a tester); *id.*, ECF No. 34 ¶ 4 (plaintiff pleading that she was "a consumer privacy advocate who works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law"). Because the Court considers only the facts alleged in the complaint and accepts those facts as true, there is, as a threshold matter, no basis to consider [plaintiff's] alleged status as a tester in determining his standing.

*Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *21–22.

### C.     Plaintiffs Adequately Plead Their Claims.

#### 1.     Defendant Reasserts Challenges to Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims that the Court Has Already Rejected.

Defendant similarly attempts to relitigate the issue of whether Plaintiffs have sufficiently plead invasion of privacy and intrusion upon seclusion. However, the Court already held that "Plaintiffs have alleged facts sufficient to show that [Defendant's] alleged collection of data could be highly offensive." *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *12. In doing so, it rejected Defendant's contention that Plaintiffs lacked a reasonable expectation of privacy. *Id.* As the Court explained, a privacy claim may be adjudicated as a matter of law only where the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Id.* (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (1994)). The Court found that "not [to be] the case here." *Id.* (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (9th Cir. 2020); *De Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 U.S. Dist. LEXIS 264583, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025)).

Defendant's recycled arguments ignore the fact, as explained above, that Defendant itself created a heightened expectation of privacy when it presented a cookie banner explicitly promising users the choice to reject tracking. *See* FAC ¶ 1; *see also supra* § III.B.2. A reasonable user would expect that choice to be honored. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d at 601 (reasonable expectation of privacy inquiry examines the "customs, practices, and circumstances surrounding a defendant's particular activities"); *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *15 (denying motion to

11

dismiss privacy claims where defendant allegedly tracked user data after the user clicked a "Reject All non-essential cookies" button)*; see also Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *Brown*, 685 F.Supp. 3d at *19-20; *Calhoun*, 526 F.Supp.3d at 630; *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021). Thus, Plaintiffs had a reasonable expectation of privacy as to their activity on the Website based on Defendant's own representations. *See* FAC ¶¶ 1–2, 31–34, 138.

Defendant again tries to cast its misbehavior as "routine" commercial behavior. Mot. at 14. But there is nothing routine about blatantly lying to consumers who click "Do Not Sell My Information." Indeed, Defendant simply ignores that Plaintiffs gave it explicit notice that they did *not* consent to cookies, and thereby did not consent to the disclosure of their data—record or otherwise—through those tracking cookies. FAC ¶¶ 35, 102, 111, 121. District courts recognize this mass *accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d at 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090 at *17-18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive."). Plaintiffs allege that their data was collected to "create[] consumer profiles containing detailed information about a consumer's behavior." *See* FAC ¶¶ 5, 41. Plaintiffs expressly rejected Defendant's third-party cookies that compile that information. *Id*. Such conduct violates not only Defendant's own promises, but also social norms. *St. Aubin v. Carbon Health Techs, Inc.*, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) ("defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive). Plaintiffs and other users had a reasonable expectation of privacy, Defendant's conduct was highly offensive, and thus violated Plaintiffs' privacy interests guaranteed by the California Constitution.

That Penning has been involved in other privacy-related lawsuits does not diminish his right to expect that websites will honor the privacy choices they present to consumers. Nor does it diminish his right to hold companies accountable for their representations.

### 2. Plaintiffs Adequately Plead Claims Under § 631(a).

Plaintiffs allege a claim under the fourth clause of Section 631(a). That clause imposes liability on Defendant to the extent it *aided, agreed with, or conspired with third parties* to violate any of the first three

12

prongs of Section 631(a), namely: (1) intentionally wiretapping Plaintiffs' communications, (2) willfully and without consent attempting to learn the contents or meaning of any communication in transit (i.e., eavesdropping), and/or (3) attempting to use or communicate information obtained as a result of either of the two previous activities. Cal. Penal Code § 631(a); *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024). "Though written in terms of wiretapping, Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022); *see also Walsh v. Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *45 n.10 (N.D. Cal. 2025) (noting "numerous other cases hav[e] applied Section 631(a) to internet communications").[3]

Defendant integrated its Website with third-party code that enables the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." FAC ¶ 42. The complaint describes how these cookies transmit communications "in real time." *See, e.g., id.* ¶¶ 4, 25, 84–91. Specifically, Plaintiffs allege that "the third-party cookies . . . surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 25. Plaintiffs include screenshots showing network traffic that occurs *after* a user rejects these cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 38–39. These allegations are sufficient to assert a claim that Defendant aided and abetted third parties in violating clauses two and three of § 631(a). Defendant's arguments to the contrary—that (1) Plaintiffs do not establish that the "contents" of their communications were intercepted "in transit" under § 631(a)'s second clause; that (2) Plaintiffs do not allege a cause of action under § 631(a)'s third clause; and (3) contracting service providers/SaaS vendors are wholly exempt from CIPA § 631(a)'s fourth clause—are unconvincing.

---

[3] Defendant's arguments and authority that the *first clause* under 631(a) "does not apply to internet communications" is beside the point. Mot. at 20–21. Plaintiffs do not allege that Defendant violated § 631(a)'s first clause, which prohibits unauthorized wiretapping or connections to communication lines. Rather, Plaintiffs allege that Defendant violated § 631(a)'s *fourth clause* by aiding, agreeing with, employing, or conspiring with third parties to learn the contents of Plaintiffs' communications while those communications were in transit (the second clause), and use information obtained through that interception (the third clause). *See generally* FAC. The authorities cited by Defendant address only the scope of the first clause and do not hold that § 631(a) as a whole is categorically inapplicable to internet communications. *See, e.g., Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024). To the contrary, courts have repeatedly recognized that liability under § 631(a)'s remaining clauses may arise in the context of internet communications.

**a. Plaintiffs Adequately Allege That Third Parties Violated § 631(a) (Clause Two).**

First, Defendant argues that Plaintiffs do not allege that third parties intercepted Plaintiffs' communications "'while in transit' to meet the requirements to state a claim under the second clause of Penal Code Section 631(a)." Mot. at 21. This is untrue. Plaintiffs clearly allege that timing element. FAC ¶¶ 4 (the "cookies permitted the Third Parties to track and collect data in real time"), 37 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 39 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains), 88 ("Third Parties perform real-time analytics on user communications to determine their meaning and significance."), *see also id.* ¶¶ 84–91 (providing additional details regarding Third Party real time interception of data). Plaintiffs further identifies specific examples of cookies transmitting data in *real time*. *Id.* ¶¶ 43–83. Allegations describing the real-time transmission of communications are sufficient on a motion to dismiss. *See Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information so transmitted. Because that is sufficient to state a claim under Section 631, LinkedIn's motion to dismiss Jackson's CIPA claim is denied.").

Further, the use of computer code to simultaneously duplicate and intercept communications satisfies CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.,* No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela v. Keurig Green Mountains, Inc.*, 674 F. Supp. 3d at 759 (N.D. Cal. 2023); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus,

14

Plaintiffs have sufficiently alleged that their communications were intercepted, tapped, read, and processed "in transit" to sustain their CIPA claims. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17.

In any event, Defendant's premise is flawed because "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

Defendant's citation to *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) is inapposite because the complaints in that case did not include *any* factual allegations supporting an inference that the plaintiffs' communications were intercepted in transit. Here, as stated above, Plaintiffs have supported their allegations that the interceptions occurred in real time, during transmission, with specific details and examples, which is more than sufficient at the pleading stage.

Defendant also argues that Plaintiffs fail to plead the interception of "contents" of communications. Mot. at 22–23. This is untrue. Here, Plaintiffs allege interception of "contents," including user input data such as "search queries, the user's name, age, gender, email address, location, and/or payment information." FAC ¶¶ 25; 170 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data").

But Defendant again loses the plot. It argues that "Plaintiffs allege only the collection of metadata." Mot. at 21. But Defendant ignores Plaintiffs' allegations about the interception of user input data, and the overwhelming case law holding that user input data (as conveyed through search terms or URLs that include search terms) are "contents" under CIPA. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Graf v. Zynga Game Network, Inc.*, 750 F.3d at 1108–09 (9th Cir. 2014) (explaining URL data

may contain communication "contents" if a user's search terms are included); *see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *11 (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content"). Plaintiffs also allege that such search terms were also intercepted by the Third Parties and describe specific searches that they ran while visiting the Website. FAC ¶¶ 25, 27, 112, 122.

### b.  Plaintiffs' § 631(a) (Clause Three) Claims Survive.

Defendant correctly observes there is no independent basis for liability under § 631(a)'s third clause. But Defendant incorrectly concludes that Plaintiffs fail to allege "violation of second clause," and therefore has "also failed to plead a violation of the third clause." Mot. at 23. As discussed supra, the complaint clearly alleges CIPA violations by the Third Parties it names, demonstrating *those Third Parties* violate clause two *and* three of § 631. *See* FAC ¶¶ 4, 25, 170 (interception of contents); 84 – 91 (while in transit); *id.* ¶¶ 26, 92–97 (uses any information so obtained). Defendant's arguments thereby fail. *Id.*

### c.  Defendant's Third-Party Vendors Are Not Intended Recipients

Defendant next argues that third-party cookies are exempt from CIPA, claiming the vendors are not true Third Party listeners but merely "vendors providing standard analytic tools." Mot. at 23–24. However, this ignores the Plaintiffs' central allegation that Defendant promised that third parties would not be party to the conversations when it allowed Plaintiffs to select their cookie preferences. Further, to evaluate "whether a software service provider . . . constitutes a third-party listener as opposed to a participant in the conversation, courts assess whether the software service 'extends beyond the ordinary function of a tape recorder.'" *Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist. LEXIS 73736, at *17-18 (N.D. Cal. Apr. 17, 2025); *see also Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891 at 898 (N.D. Cal. 2023). This requires looking at the software vendor's independent "capability to use its record of the interaction for [another] purpose." *Cody v. Ring LLC,* 718 F. Supp. 3d at 1002 (N.D. Cal. 2024) (quoting *Javier*, 649 F. Supp. 3d at 900). "If software essentially functions as a wiretap that redirects a plaintiff's communications with a website page to a marketing company that can use the data for its own ends,"

under § 631, the marketing company is not a party to the communication, as alleged here. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (denying motion to dismiss where plaintiff alleged that the embedded software code redirected website interactions to a third-party in real time); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 607-08. Plaintiffs need not make this demonstration: "to establish liability under section 631 a plaintiff need only show that the software vendor is capable of using the data it collects for some other purpose; there is no statutory requirement that the vendor actually did so. Therefore, a software vendor may be considered a third party even if it merely provides recording and transmission services to a party to the communication." *Torres v. Prudential Fin, Inc.,* 2025 U.S. Dist. LEXIS 73736, at *9 (N.D. Cal. Apr. 17, 2025) (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021).

Here, Plaintiffs allege that the Third Parties use this "user data across websites and time for their own purposes and financial gain, . . . [and] [f]urther, the Third Parties share user data and/or user profiles to unknown parties to further their financial gain." FAC ¶ 5. Defendant's citation to *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) reinforces Plaintiffs' point. In *Graham*, "the court held that software used to capture data on behalf of a website owner functioned as a mere recording tool because plaintiff did not allege that the software vendor 'intercepted and used the data itself.'" *Torres,* 2025 U.S. Dist. LEXIS 73736, at *9 (quoting 533 F. Supp. 3d at 832–33). Here, that is not the case and no exemption applies.

### 3.  Plaintiffs Adequately Plead Pen Register Claims Under § 638.51.

CIPA § 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device **or process** that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis supplied). Decisions from this District—including Judge Tigar's recent decision in *Gabrielli* on identical arguments—clarify that Plaintiffs adequately plead each element of their claim. *See, e.g.*, *Gabrielli*, 2025 U.S. Dist. LEXIS 133836 at *30*; Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024);

*see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). Plaintiffs allege that the cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record information about the communications such as users' IP address and user-agent information, which is "routing, addressing, or signaling information." *Id.*; *see* FAC ¶ 181.

Defendant argues that Plaintiffs allegations are insufficient because: (1) CIPA's prohibition on pen registers applies only to devices and not "device[s] or process[es]"; (2) Plaintiffs suffered no cognizable privacy injury from the collection of IP addresses, user identifiers, and similar record information; (3) the alleged collection of contents alongside record information prevents the challenged technologies from qualifying as pen registers; and (4) Defendant's conduct falls within § 638.51's service-provider exemption. Courts in this District have almost invariably rejected these arguments, and each fails here as well.

### a. Pen Registers are "Device[s] or Process[es]" not Limited to Telephones.

Defendant argues internet technologies are not "pen registers under California law." Mot. at 24-28. However, courts in this District have rejected that argument. As Judge Tigar ruled in *Gabrielli*; "[Defendant] argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30 (citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023)). Other courts in this District agree that internet trackers can be pen registers. *See, e.g.*, *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024). This is because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Cal. Pen. Code § 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient

phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *9. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*. Defendant wholly ignores the "device *or process*" definition, instead only arguing that the historical *device* aspect of the definition precludes its application. Mot. at 24-25. Like the plaintiffs in *Gabrielli* and *Mirmalek*, Plaintiffs allege that the Third-Party cookies and the corresponding software code installed by Defendant on its Website are each a "device or process." Compare *Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with FAC ¶¶ 181–182 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information").

### b. Defendant's Use of a Pen Register Harmed Plaintiffs

Defendant next conflates the question of what information § 638.51 protects with the separate question of whether Plaintiffs suffered a cognizable privacy injury. Defendant asserts that "IP addresses, browsing history, and other metadata fall outside CIPA's privacy protections." Mot. at 26. B That is incorrect. There is no question that record information like IP addresses and User Identifiers, among other information like URLs, links clicked, etc., is protected by the pen register provision of CIPA because that is what the statute provides. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30. The question Defendant therefore cannot avoid liability by arguing that the challenged technologies collected the very type of information addressed by the statute.

Further, as discussed, *supra*, Defendant completely ignores what separates this case from the cases it cites—Defendant's ***own broken promises and false representations*** that Defendant would not track its users' information after those users clicked "Do Not Sell My Information," and toggled off "Online Behavioural Advertising" and "Performance" Cookies. *See supra* § III.B.2; FAC ¶ 1–4. That is outcome-determinative: "[U]sers have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4-6 (S.D. Cal. May 8, 2024); *Calhoun v. Google LLC*, 526 F.Supp.3d

605, 630 (N.D. Cal. 2021) (plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data); *Brown*, 685 F.Supp. 3d 909 at *19-20 (plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (It "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data").

Defendant itself created the expectation that users who rejected tracking cookies would not be tracked. Plaintiffs' alleged injury therefore arises not merely from the collection of routing and addressing information, but from Defendants' express promise not to do so.

### c. The Alleged Collection of Contents Does Not Preclude Pen Register Liability.

Defendant next argues that because some third party software and related cookies collect "contents" alongside "record information," *none* of them can be classified as pen registers. Mot. at 27. This argument is flawed for several reasons. First, the FAC does not allege that *every* third-party cookie at issue eavesdrops on the contents of private communications in all cases, so Defendant's argument is based on speculation and over-generalization, not actual allegations. Second, Defendant's arguments also fail to recognize that a "pen register" is defined as a "device ***or process*** that records or decodes [certain types of information]." Cal. Penal Code § 638.50(b). Accordingly, the aspect or "process" of a tracking technology that records or decodes routing, addressing, or signaling information can qualify as a "pen register" independently of whether some other process associated with the technology intercepts and processes contents of Plaintiffs' communications. Third, even if many of the cookies at issue intercept both contents and signaling information, that does not mean they cannot be pen registers. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153–54 (N.D. Cal. 2025) (Pitts, J.) ("Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications."); *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *31. The caveat that pen registers do not record the contents of communications is most reasonably interpreted to mean that devices that *only* record the contents of communications are not pen registers.

Defendant's only authority to the contrary is this Court's prior decision in *Kishnani*, where plaintiff pleaded that *one* device (the "TikTok Software") captured both "information *about* a communication" and "*the contents* of a communication" to be a pen register. 2025 WL 1745726. There, this Court observed that "Plaintiff's single claim turns on whether [the TikTok Software] constitute[s] a trap and trace device," and evaluated allegations that either alleged the collection of contents, or the collection of information regarding the "metadata" of the communication. *Id.* But ruling for Plaintiffs here would be consistent with this Court's logic: here, unlike in *Kishnani*, Plaintiffs have pleaded Defendant enabled *multiple* tracking devices, some of which *only* collected record information. Indeed, finding for Defendant would require impermissible adverse inferences that *each* of the alleged tracking cookies collected *both* content *and* record information. *Roffman v. Perfect Bar*, 2023 U.S. Dist. LEXIS 6049, at *7 (N.D. Cal. Jan. 12, 2023) (drawing inferences in favor of defendant on pleadings "violates black-letter law"). This is not trye, Regardless, Defendant's position is self-contradictory: Defendant insists that the collected data was *only* "metadata-type information" to urge this Court to dismiss Plaintiffs' § 631(a) claims, but also argues that the same trackers collected "*more* than just 'routing, addressing, or signaling [i.e., record] information" to attack Plaintiffs' Cal. Pen. Code § 638.51 claim. *Compare* Mot. at 21, *with* Mot. at 27.

### d.  Defendant Fails to Demonstrate that the "Service Provider" Exemption to § 638.51 Applies

Defendant also incorrectly contends that it is exempt from liability due to § 638.51(b)(1)'s "electronic communication service[s]" carve-out. Mot. at 28. But even if Defendant's Website is an "electronic communication service," Defendant still does not satisfy the exception: It does not argue that its cookie usage was "*to* operate, maintain, and test" Website services, rather than pursuant to agreements to sell website users' information (as Plaintiffs pleaded). *See, e.g.*, FAC ¶¶ 5, 21, 41. Judge Tigar rejected this same argument in *Gabrielli v. Motorola*. Defendant has not established "that it collects the tracked information through the cookies to 'operate, maintain, and test a wire or electronic communication service,'" that its third-party advertising cookies were "necessary to operate or maintain the website,'" or that "the collection of any data by a third party is necessary" at all. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *21–22 (quoting § 638.51(b)(1) and *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp 3d 921, 930 (C.D. Cal. 2025). It strains credulity that "Online Behavioural Advertising" cookies were to "operate,

maintain, and test" its news service, especially since those cookies could (supposedly) be toggled off, unlike its "Strictly Necessary Cookies," which could not be. FAC ¶ 30–33. Further, "[Defendant's] argument that [plaintiff] has not 'alleged any facts in the Complaint that would preclude the applicability of this exception,' ignores the fact that the burden falls on [Defendant] to establish the applicability of this exception." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *32 (citing *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, 2024 WL 5102709, at *5; *Rodriguez*, 762 F. Supp. 3d at 930). Defendant has not done so.

### 4. Defendant Reasserts Challenges to Plaintiffs' Fraud, Deceit, and Misrepresentation Claims that the Court Has Already Rejected.

Defendant's challenge to Plaintiffs' fraud-based claims repeats the same arguments that this Court already considered and rejected in ruling on Defendant's first motion to dismiss, holding "Plaintiff's [fraud] allegations are sufficient to withstand a motion to dismiss." *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *18 (citing *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964, at *4 (N.D. Cal. Nov. 24, 2025). The addition of two New Plaintiffs with virtually identical claims does not alter this analysis.

Contrary to what Defendant argues, Plaintiffs describe Defendant's misrepresentation with the specificity Rule 9(b) requires. "The complaint states that the 'who' is [Defendant]; the 'what' are misrepresentations by [Defendant] through the popup banner offering users the option to [reject all "Online Behavioral Advertising Cookies" and 'Performance Cookies' after clicking 'Do Not Sell My Information,']; the 'when' is the … occasion[s] that [Plaintiffs] visited [Defendant's] website … ; the 'where' is on [Defendant's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836 at *21–22. Defendant also contend that Plaintiffs must plead the exact date of Plaintiffs' website visits. *See* Mot. at 28–29. But Plaintiffs' current allegations are sufficient because "give defendants notice of the specific fraudulent conduct against which they must defend." *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *19 (*quoting Bankers Life & Cas. Co. v. Mallin,* No. 25-CV-02430-RFL, 2025 U.S. Dist. LEXIS 225093, 2025 WL 3186358, at *7 (N.D. Cal. Nov. 5, 2025)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC; 5:25-CV-05213-NW

Defendant also reasserts arguments concerning justifiable reliance, duty to disclose, and injury that this Court has already rejected. The Court expressly held that Shah adequately pleaded justifiable reliance by alleging that he continued browsing Politico's website "in reliance on" "Defendant's representations that consumers could 'opt-out of . . . Performance Cookies [and] Online Behavioural Advertising' cookies." *Id.* at *20 (quoting CAC ¶¶ 79, 82); *see* FAC ¶¶ 102, 105, 111, 115, 121, 125 (same allegations as to all Plaintiffs). The Court further held that Defendant's affirmative representations regarding those controls gave rise to a duty to disclose, explaining that "where one does speak[,] he must speak the whole truth." *Id.* (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004)). Finally, the Court rejected Defendant's argument that Shah failed to allege a cognizable injury, holding that Plaintiff "alleges damages because Plaintiff's affected personal information 'ha[s] value as demonstrated by the use and sale of consumers' browsing activity,' and Defendants 'gained financially from' their misrepresentation even as the misrepresentation revoked Plaintiff's control over that information and diminished its value." *Id.*; *see also, e.g.*, FAC ¶¶ 92–96, 174, 193-94. Because the FAC alleges the same misconduct, the same reliance, and the same injury, Defendant's renewed arguments fare no better now than they did in the first round of briefing.

### 5. Plaintiffs Adequately Plead Unjust Enrichment.

Defendant finally argues that Plaintiffs' unjust enrichment claim fails as a matter of law. Mot. at 30. It does not. In its prior order, the Court recognized that, "[i]n limited circumstances, however, 'the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment.'" *Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *21 (citing *Isgur v. Meta Platforms, Inc.*, No. 24-CV-06559-WHO, 2026 U.S. Dist. LEXIS 14171, at *10 (N.D. Cal. Jan. 26, 2026)). The Court dismissed Shah's claim because he simultaneously alleged the existence of an enforceable contract while failing to plead facts suggesting that any purported contract might be unenforceable, invalid, or otherwise inapplicable. *Id.* The Court therefore granted leave to amend "to include facts suggesting the unenforceability or invalidity of the contract at issue." *Id.* at *22.

Here, Plaintiffs have not repleaded a breach of contract claim. Instead, Plaintiffs plead unjust enrichment "to the extent any purported contract between Defendant and the Class Members is found unenforceable, invalid, void, unconscionable, or inapplicable to the conduct alleged herein." FAC ¶ 201.

The FAC further alleges, in the alternative, that "no enforceable contract governed Defendant's interception, disclosure, and monetization of Plaintiffs' and Class Members' Private Communications" because of a failure of "knowing and mutual assent." *Id.* ¶ 202.

Defendant nevertheless argues that any benefit it received is speculative. It is not. To state a claim for unjust enrichment, a plaintiff need only allege that the defendant received and unjustly retained a benefit at the plaintiff's expense. *Katz-Lacabe*, 668 F. Supp. 3d at 945. Plaintiffs do exactly that. They allege that Defendant collected, retained, and disclosed their Private Communications despite representing that it would honor his privacy choices, thereby obtaining the value of those communications and the resulting advertising, analytics, and profiling benefits. FAC ¶¶ 92–97, 204–210. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

Because the FAC now alleges precisely the facts the Court found lacking in the prior complaint, Defendant's motion should be denied.

## II.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied in full.

Dated: June 17, 2026

**GUTRIDE SAFIER LLP**

*/s/ Rajiv V. Thairani*
Seth A. Safier, Esq.
Marie McCrary, Esq.
Todd Kennedy, Esq.
Rajiv V. Thairani, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

*Attorneys for Plaintiffs*