**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
TODD KENNEDY (State Bar No. 250267)
todd@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, HEIDI WILLIS, and STACY PENNING, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC,<br><br>Defendant. | Case No. 5:25-cv-05213-NW<br><br>Hon. Nathanael M. Cousins<br><br>DISCOVERY LETTER BRIEF NO. 6 REGARDING DEFENDANT'S DEFICIENT RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION |

Dear Judge Cousins:

In compliance with the Court's Civil Standing Order Regarding Discovery, Plaintiffs Vishal Shah, Heidi Willis, and Stacy Penning ("Plaintiffs") and Defendant POLITICO LLC ("Defendant," and collectively, the "Parties") submit this joint discovery dispute letter. On May 22, June 3, August 21, and September 10, the Parties met and conferred by videoconference regarding Plaintiffs' Requests for Production to Defendant. Since then, Plaintiffs have followed up repeatedly in an effort to resolve the following disputes without Court intervention. Despite those efforts, the Parties remain at an impasse.

**PLAINTIFFS' STATEMENT:**

## I. Defendant's Repeated Failure to Honor Discovery Agreements.

Plaintiffs served written discovery on September 23, 2025, including 31 Requests for Production ("RFPs"). More than a year later, Defendant has produced 67 documents. This is not because Plaintiffs have failed to meet and confer. Rather, Defendant has repeatedly used the meet-and-confer process to delay rather than complete its discovery obligations. Indeed, even after the Court ordered discovery to proceed, Defendant continued to seek stays rather than provide discovery, filing repeated motions to stay after the Court had made clear that discovery should move forward. ECF Nos. 45, 88, 107.

Defendant's pattern of failing to participate in discovery in good faith has continued. Defendant takes maximalist positions during meet-and-confer discussions, ultimately agrees to concrete steps or deadlines, and then fails to honor those agreements—requiring yet another round of correspondence and meet-and-confer efforts over the same discovery. This has led to five discovery letters to date. The result has been months of delay and repeated promises of forthcoming discovery that never materializes.

Specifically, on June 3, 2026, the parties agreed to extend Defendant's deadline through June 12, 2026, to complete certain substantive discovery obligations. Among other things, Defendant agreed to provide an update concerning its search for responsive configuration files, including tag manager and consent manager configuration files. Defendant did not honor that agreement. The June 12 deadline passed without Defendant providing the promised update.

The same pattern repeated in August. On August 21, Defendant again agreed to advise Plaintiffs regarding production of the tag manager documents by September 4, 2026. Despite Plaintiffs' repeated follow-ups and Defendant's renewed commitment, that deadline also passed without Defendant providing the promised information. Defendant finally produced one document, its Tealium IQ Version History, after Plaintiffs provided Defendant with a draft of this letter. That single document is insufficient. Defendant now claims that the underlying configuration evidence no longer exists because it was overwritten.

In response to Plaintiffs' most recent dispute letter, the Court encouraged Plaintiffs to investigate Defendant's representations through "additional discovery requests, including depositions." ECF No. 117. Consistent with the Court's guidance, Plaintiffs have noticed Defendant's Rule 30(b)(6) deposition concerning, inter alia, its "collection, search for, and production of DOCUMENTS in THIS ACTION." Given the ongoing disputes concerning the existence and availability of responsive documents, as well as potential spoliation issues, Plaintiffs request that Defendant promptly produce a Rule 30(b)(6) witness prepared to testify regarding its document retention practices, preservation efforts, searches for responsive materials, the existence and disposition of potentially responsive documents, and the reasons any such documents cannot be produced.

## II. Argument.

**RFPs Nos. 26-28 (Tag Manager Documents).** These RFPs seek documents concerning Politico's tag managers (RFP No. 26), including related container reports and workspaces (RFP No. 27) and configuration files (RFP No. 28).

Although Defendant asserted numerous objections, including burden, it nevertheless expressly represented in response to RFP No. 26 that it "will produce, if reasonably available after a diligent search, non-privileged documents, sufficient to show the first layer of tag configuration or consent management tools used on the Website." After months of delay, Defendant produced its Tealium IQ Version History. Defendant now asserts that this is the only responsive Tealium document in its possession, custody, or control and that the underlying configurations were overwritten, often multiple times per day.

Defendant's new representation raises serious preservation concerns. Plaintiffs served Defendant with a preservation letter on August 18, 2023, while the Website was still operating in the manner challenged in this action. Defendant claims that the relevant configuration files were routinely deleted or overwritten before it received any demand letter. The configurations in existence when Defendant received the preservation letter, and those subsequently deployed through the present, constituted directly relevant evidence, reflecting which third-party tags were deployed on Defendant's Website, how those tags were configured, and how they interacted with Defendant's consent-management system. The fact that Defendant may have routinely overwritten earlier configurations does not excuse its failure to preserve those in existence when its preservation obligations arose or to suspend the routine deletion of relevant evidence thereafter. *World Courier v. Barone*, No. C 06-3072 TEH, 2007 U.S. Dist. LEXIS 31714, at *2 (N.D. Cal. Apr. 13, 2007) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)).

Nor has Defendant established that responsive materials maintained by Tealium or other vendors are outside Defendant's possession, custody, or control. Defendant has not established that it lacks the contractual or other legal right to obtain its own configuration data, identified what information remains available from its vendors, or explained what efforts it made to obtain that information. *Duran v. Cisco Sys.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)) ("[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand."). Defendant's assertion that it does not presently possess the files therefore does not resolve whether the materials are within its control or can still be recovered.

The requested tag-manager materials are directly relevant to Plaintiffs' allegations because they reveal which third-party tracking technologies Defendant deployed, how they were configured, and how their implementation changed over time. Defendant's contention that the September 25 Order renders these materials irrelevant or requires Plaintiff Shah to revise his discovery requests is meritless. The surviving common-law privacy, fraud, and unjust-enrichment claims arise from the same alleged conduct and continue to place Defendant's tracking technologies directly at issue. Indeed, Defendant previously sought to stay discovery on the ground that resolution of its motion to dismiss could alter the scope of discovery, but the Court rejected that request and ordered discovery to proceed. *See*, *e.g.*, ECF Nos. 104, 107. The September 25 Order does not materially alter the relevance of the requested discovery or justify Defendant's continued failure to produce it.

Defendant emphasizes that it produced a five-level-deep preservation of its Website. But a preserved copy of the Website is no substitute for the underlying tag-management configurations. Although it may reflect the code served to a visitor, it does not necessarily reveal how Defendant configured its tag-management system, including the consent rules governing the deployment of third-party tracking technologies, the conditions under which particular tags and pixels were triggered, or how those configurations changed over time.

Defendant should be required to produce all responsive materials that remain available, including materials obtainable from its vendors. Consistent with the Court's prior suggestion that Plaintiffs may explore Defendant's assertions regarding unavailable discovery through deposition testimony, Plaintiffs request that Defendant provide a Rule 30(b)(6) witness to testify regarding Defendant's preservation of the requested materials, the circumstances under which the configurations were overwritten or destroyed, its efforts to locate and obtain those materials from Tealium and other vendors, and what responsive systems, documents, and information remain available.

**RFPs Nos. 12 & 18 (Consent Manager Platform Documents):** RFPs 12 and 18 seek: (12) all DOCUMENTS, including but not limited to COOKIE policies and COOKIE CONSENT MANAGER platform configurations, relating to the ability of USERS of YOUR WEBSITE to reject or disable each COOKIE IDENTIFIED in response to RFP No. 10 and (18) "DOCUMENTS sufficient to show the COOKIE COMPLIANCE MANAGERS YOU used during the last four years to manage COOKIE COMPLIANCE, COOKIE placement, USER consent, or CCPA compliance, INCLUDING contracts, invoices AND user manuals."

Defendant similarly asserted myriad boilerplate objections in response to RFPs 12 and 18. Subject to those objections, however, Defendant expressly represented that it would produce, "if reasonably available after a diligent search, non-privileged documents sufficient to show the configuration of Defendant's cookie consent management platform used on the Website, including relevant configuration materials for the OneTrust consent management tool."

Defendant now asserts that historical OneTrust configurations were regularly overwritten, that the relevant configurations had already been overwritten by the time Defendant received Plaintiffs' demand letter, and that neither Defendant nor OneTrust can provide them. As above, that assertion does not resolve the dispute. Plaintiffs' preservation letter was served while the Website continued to operate in the manner challenged in this action. Thus, even accepting Defendant's assertion regarding earlier historical configurations, the then-current OneTrust configuration was relevant evidence subject to preservation. Defendant has not explained why those configurations were permitted to be overwritten after Defendant was placed on notice of Plaintiffs' claims. Nor has Defendant established that OneTrust materials are outside its control. OneTrust was not an unrelated third party; it was Defendant's consent-management vendor, operating the system Defendant selected to record and implement consent choices on Defendant's Website. Defendant has not established that it lacks a contractual or other legal right to obtain its own configuration information from OneTrust.

These materials go to the heart of Plaintiffs' allegations. They concern the configuration of the consent-management system Defendant selected and used on its own Website to record and implement users' cookie-consent choices. Defendant further argues that a configuration does not establish what occurred during any particular website visit. But that goes to the evidentiary weight of the configurations, not their discoverability. How Defendant configured the system that purportedly implemented users' consent choices is plainly relevant to whether and why third-party tracking continued after users rejected nonessential cookies.

Plaintiffs therefore request that the Court compel Defendant to produce all responsive OneTrust materials that remain available or obtainable from OneTrust. To the extent Defendant maintains that responsive configurations were destroyed, overwritten, or cannot be obtained, Plaintiffs request that Defendant provide a Rule 30(b)(6) witness concerning Defendant's preservation efforts, when and how the configurations were overwritten, Defendant's efforts to obtain the materials from OneTrust, Defendant's relationship with and ability to obtain information from OneTrust, and what responsive systems, records, and information remain available.

**DEFENDANT'S STATEMENT:**[1]

Like Plaintiff's previous discovery letters, this is another example of Plaintiff seeking to compel documents that POLITICO does not have. POLITICO's discovery responses did not promise every version of every configuration, nor is that information relevant to this litigation. Rather, POLITICO agreed to produce responsive, nonprivileged materials if reasonably available after a diligent search and, as to OneTrust, to the extent within its possession, custody, or control. Critically, POLITICO produced a five-level-deep preservation of its website dated September 9-10, 2023 (POLITICO_000162) in response to RFPs 26 and 28. POLITICO should not be compelled to produce records that do not exist and are not within its possession and control. Furthermore, POLITICO further requests time to review the relevancy of this discovery based on the only remaining claims pursuant to the September 25, 2026 dismissal order.

**A. The September 25, 2026 Order Dismissing Plaintiff Shah's CIPA claims *with prejudice* necessitates the need to revise discovery responses and proposed search terms.**

On September 25, 2026, Judge Wise dismissed Shah's CIPA claims with prejudice and Willis and Penning's claims without prejudice based on untimeliness in violation of the statute of limitations. Plaintiffs Willis and Penning have until October 16, 2026 to file a Second Amended Complaint. Therefore, the only pending claims Shah may assert, and the only ones currently pending on behalf of Willis and Penning, are the common law claims of invasion of privacy, intrusion upon seclusion, common law fraud, and unjust enrichment. Also, the only discovery propounded by Plaintiff is from Shah, not Willis or Penning. Given these circumstances, POLITICO needs to revise discovery responses and proposed search terms, as now several requests are no longer relevant to any pending claims. These requests include: Shah's RFPs 1, 7, 9, 13, 10-12, 25-28; and Plaintiff Shah's interrogatories 5-7 and 11-12. Therefore, before Plaintiff Shah continues to contest the veracity and integrity of POLITICO's discovery requests, it must revise those requests.

**B. OneTrust Configurations (RFPs 12 and 18)**

[1] Plaintiffs submit this letter without Defendant's final confirmation because Defendant failed to respond to Plaintiffs' repeated requests to finalize the joint submission. Plaintiffs circulated the initial draft on September 21. After repeated extensions, Defendant provided its portion of the letter on October 5. Plaintiffs promptly revised their portion and circulated the revised letter on October 8. Defendant promised to provide final revisions by October 12 but failed to do so. On October 13, at 10:14 a.m., Plaintiffs followed up, noting that they had not received Defendant's revisions and advising that they would file the October 8 draft by close of business absent further revisions. Defendant did not respond. This is part of a recurring pattern in which Defendant delays resolution of discovery disputes by withholding approval of joint submissions, sometimes failing to provide its portion at all. *See, e.g.*, ECF No. 121.

POLITICO's discovery responses are clear: it would review and produce any OneTrust configuration materials reasonably available after a diligent search and within POLITICO's possession, custody, or control. POLITICO has repeatedly advised Plaintiff that it does not possess historical OneTrust configurations. Indeed, POLITICO has repeatedly confirmed that such configurations are regularly overwritten and that the configurations for the relevant period had already been overwritten by the time POLITICO received Plaintiff's demand letter. Thus, neither historical copies still exist nor does POLITICO have access to them.

In addition, even if historical OneTrust settings could be located, Plaintiff Shah cannot conflate those settings with a record of what any particular third-party technology did during an individual website visit.

**C. Tealium and tag-management records (RFPs 26, 27, and 28)**

On October 1, 2026, POLITICO produced an additional document Tealium IQ Version History (Politico_000185); the only responsive document to RFPs 26, 27, and 28 POLITICO has in its possession, custody, and control. The document is a spreadsheet containing the version history publishing to the Tealium tags and extensions to production between June 2, 2022 and September 15, 2023. It shows who performed the publishing and notes about what was involved in the published version. POLITICO does not have Tealium configuration files from the proposed class period. Those configurations are overwritten frequently, often multiple times a day and the configurations for the relevant period had already been overwritten by the time POLITICO received Plaintiff's demand letter. RFP 27 likewise seeks container reports, workspaces, and published versions that POLITICO has represented it does not have after a diligent search and reasonable inquiry. Similarly, in response to RFP 28, POLITICO stated it had not identified responsive configuration files within its possession, custody, or control.

Lastly, POLITICO's response to RFP 26 expressly limited its proposed production to reasonably available, nonprivileged documents sufficient to show the first layer of tag configuration or consent-management tools within its possession, custody, or control. POLITICO supplemented RFPs 26 and 28 by identifying its production of the September 2023 website preservation. These qualifications are inconsistent with Plaintiffs' characterization of an unconditional promise to produce historical configuration files.

**D. Plaintiff's request for fees**

Finally, POLITICO vehemently disputes that Plaintiffs have established entitlement to fees on this record. To the contrary, Plaintiff has engaged in a pattern of filing discovery letters where no documents or dispute exists, causing POLITICO to have to spend time and effort defending meritless disputes. To the extent POLITICO's earlier meet-and-confer updates were delayed, those delays do not establish that the historical configurations Plaintiffs demand exist or are within POLITICO's control, as POLITICO has repeatedly advised Plaintiff. POLITICO requests that the Court deny the requested order compelling production of nonexistent historical configuration files and the request for expenses, without foreclosing targeted supplementation concerning any responsive materials actually located and available within POLITICO's possession, custody, or control.

Dated: October 13, 2026

**GUTRIDE SAFIER LLP**

*/s/ Rajiv V. Thairani*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*