**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
TODD KENNEDY (State Bar No. 250267)
todd@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, HEIDI WILLIS, and STACY PENNING, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POLITICO LLC,<br><br>Defendant. | Case No. 5:25-cv-05213-NW<br><br>Hon. Nathanael M. Cousins<br><br>JOINT DISCOVERY LETTER BRIEF NO. 7 REGARDING DEFENDANT'S ESI SEARCHES |

Dear Judge Cousins:

In compliance with the Court's Civil Standing Order Regarding Discovery, Plaintiffs Vishal Shah, Heidi Willis, and Stacy Penning ("Plaintiffs") and Defendant POLITICO LLC ("Defendant," and collectively, the "Parties") submit this joint discovery dispute letter. On May 22, June 3, August 21, and September 10, the Parties met and conferred by videoconference regarding ESI search terms for Defendant's custodial and non-custodial sources.

**PLAINTIFFS' STATEMENT:**

Politico asks the Court to restart a process the Parties already agreed to undertake, but which Politico failed to complete. Plaintiffs proposed search terms after Politico missed its deadline, supplied the RFP mapping Politico requested, and agreed to refine their terms based on actual results. Politico agreed to run those terms, evaluate false positives, and propose targeted revisions. It has now retreated from that agreement and now seeks to restart negotiations without any production deadline (***after previously agreeing to complete its ESI production by September 4***). This is an absurd and blatant attempt to further delay discovery, which it has resisted for more than a year despite repeated Court orders that discovery proceed.

**A. The Parties Already Negotiated and Agreed on a Process.**

At the Parties' May 22 (nearly 6 months ago) meet and confer, Politico agreed to provide proposed terms and hit counts by June 5, later extended to June 12. Defendant claims that it missed these deadlines because of the complexity of the case but this is belied by the fact that it never requested an extension.

Plaintiffs followed up on June 25 and June 26 and, because Politico had failed to propose search terms, provided their own and requested searches across the custodial and non-custodial sources identified in Politico's ESI disclosures. On July 10, Politico proposed alternative terms requiring nearly all searches to include "Tealium," "TiQ," or "OneTrust." These restrictions would exclude responsive communications concerning cookie implementation and consent-banner configurations that did not expressly identify those platforms by name. Plaintiffs explained that these restrictions were improper because custodians discussing these subjects would naturally rely on shared context and familiarity with the systems at issue, rather than repeatedly referring to the platforms by their formal names.

After Plaintiffs circulated a draft discovery letter, Politico proposed completing search-term negotiations by July 24, beginning rolling production shortly thereafter, and substantially completing ESI production by September 4. Plaintiffs accepted and proposed memorializing those deadlines in a stipulation and proposed order, but Politico refused.

**B. Politico Failed to Complete the Agreed Evaluation.**

Rather than immediately seek relief, Plaintiffs agreed to further meet and confer. On August 21, the parties agreed to precisely the process Defendant now proposes: Plaintiffs would identify the RFPs corresponding to their proposed terms; Politico would run those terms, evaluate the results, and identify any excessive false positives; and the parties would consider targeted refinements supported by actual data. Plaintiffs also proposed firm deadlines for submitting any unresolved disputes to the Court and completing production. Although Politico had committed to substantially completing production by September 4, it withdrew that commitment and refused to agree to a new completion date.

Plaintiffs performed their part. Contrary to Defendant's assertion that Plaintiffs proposed generic terms without explaining their relevance or meaningfully conferring, in response to Defendant's request, Plaintiffs prepared a table mapping each proposed search term to specific RFPs (exactly what Defendant

is requesting now), sent it to Defendant on August 25, and participated in a further meet and confer on September 10 to address Defendant's concerns where they discussed specific search terms and how they linked to the RFPs. At that conference, Politico acknowledged that it had not run the agreed searches, provided hit counts, or identified false positives. Instead, it proposed a third set of terms yielding approximately 15,000 hits, while unilaterally refusing to run searches it deemed irrelevant. Like its prior proposals, these terms imposed artificial restrictions and modifiers that would exclude responsive communications because they fail to account for how employees naturally communicate. Politico also failed to conduct the agreed false-positive analysis, now claiming that doing so would require reviewing every document in advance. But that is not the process Politico's own counsel proposed. During the parties' prior meet-and-confer discussions, defense counsel expressly proposed evaluating search terms by reviewing samples of the resulting documents to identify false positives and determine whether targeted refinements were warranted. That process does not require reviewing every search hit. Rather, it permits Politico to assess the precision of particular searches through representative sampling, identify recurring categories of nonresponsive documents, and propose appropriate modifications. Politico cannot now invoke the burden of conducting a comprehensive document review to avoid performing the more limited analysis its own counsel proposed and agreed to undertake.

Politico's proposed disposition below would simply restart that same process, requiring Plaintiffs to repeat their RFP mapping and justify their proposed terms before Politico identifies accepted terms, targeted modifications, and revised hit counts—the very evaluation it previously agreed to undertake. For months, the parties have conferred, reached agreements, and conferred again after Politico failed to honor those agreements. Politico cannot indefinitely restart negotiations to avoid its discovery obligations. Having repeatedly failed to perform the agreed evaluation or substantiate its objections, Politico has effectively waived its right to insist on further preliminary negotiations.

**C. Neither TAR, Burden, nor the Recent Order Justifies Restarting Discovery.**

Defendant's justification for restarting the process is unfounded. Although the Court dismissed Plaintiff Shah's CIPA claims on September 25, Plaintiffs had already advised Defendant a month earlier that Shah did not intend to amend those claims. Moreover, Defendant previously sought to stay discovery on the ground that dismissal of the CIPA claims would substantially alter its scope. This Court rejected that argument. The surviving privacy, fraud, and unjust-enrichment claims continue to place Politico's tracking technologies, representations, and consent practices directly at issue. For example, Defendant now contends that RFPs seeking, inter alia, its website code are no longer relevant because the CIPA claims have been dismissed (*See* RFPs 1, 7, 9, 13, 10-12, 25-28). But technical evidence showing which tracking technologies Politico deployed, how those technologies operated, and whether they honored users' consent choices remains directly relevant to the surviving claims, regardless of whether those claims arise under CIPA or the common law. Defendant offers no explanation for why the same evidence would be relevant to a statutory privacy claim but irrelevant to a common-law privacy claim arising from the same conduct.

Politico's reliance on aggregate hit counts does not establish undue burden. In a putative class action challenging Politico's website-wide tracking and privacy practices, approximately 61,000 search hits is hardly excessive, particularly given the size of Politico's operations and the scope of the alleged misconduct. Plaintiffs have also agreed to permit Politico to employ technology-assisted review (TAR) to reduce the burden of reviewing potentially responsive documents. More fundamentally, the number of hits says nothing about whether the searches are identifying relevant evidence. Given the scope of Politico's operations and the practices at issue, there may well be tens of thousands of responsive communications. The objective of discovery is not to reduce the review population to an arbitrary number, but to identify and produce responsive documents through a reasonable and proportional

process. Politico has not demonstrated that its narrower searches adequately capture those documents or that Plaintiffs' proposed terms impose an undue burden, particularly with TAR available to facilitate review.

Defendant's examples concerning RFPs 16, 17, and 31 are unpersuasive. Plaintiffs do not dispute that certain RFPs may be satisfied through targeted collection rather than keyword searches. But Defendant's examples do not establish that keyword searches are unnecessary. For instance, RFPs 16 and 17 seek contracts with third parties concerning tracking technologies and user data. Although certain contracts may be located through direct collection, that approach assumes Politico can identify every responsive agreement entered into over several years. It is unreasonable to expect individual custodians to recall every such agreement, and keyword searches provide a means of identifying contracts that might otherwise be overlooked. Moreover, Defendant's acknowledgment that the parties specifically discussed these RFPs directly undermines its assertion that Plaintiffs refused to explain their proposed searches or meaningfully meet and confer.

Politico's reliance on Plaintiffs' concerns regarding its proposed TAR protocol, including the review population, stopping criteria, and validation procedures, is similarly unpersuasive. The parties have been actively meeting and conferring on these issues and exchanging proposed revisions to the protocol concurrently with search-term negotiations. These ongoing discussions neither excuse Politico's repeated failures to advance the search-term process nor render Plaintiffs' request for judicial intervention premature.

**D. Requested Relief**

Plaintiffs request an order establishing the following schedule:

- Within 7 days: Defendant shall run Plaintiffs' proposed search terms, identify any searches generating excessive false positives, and propose targeted modifications supported by the search results.
- Within 14 days: The parties shall meet and confer regarding proposed modifications to both parties' search terms and the applicable search and review methodology.
- Within 21 days: The parties shall complete their meet-and-confer efforts and submit any remaining disputes concerning search terms, review methodology, or ESI production to the Court for resolution.
- Within 30 days of agreement or Court resolution: Defendant shall commence rolling production of responsive, nonprivileged documents under the agreed-upon or Court-approved search terms and review methodology.
- Within 60 days of agreement or Court resolution: Defendant shall substantially complete its ESI production.

**<u>DEFENDANT'S STATEMENT:</u>**

This letter demonstrates Plaintiff Shah's decision to break with the ESI Agreement the parties mutually drafted and agreed upon and instead force their own desired search terms rather than trying to meaningfully meet and confer. While POLITICO acknowledges its initial proposal of search terms did not occur by the originally anticipated June date, it is only because it needed more time based on numerous factors in this complex case, including newly added parties, an Amended Complaint, and expedited briefing to dismiss Plaintiff's Amended Complaint, and ongoing negotiations between the parties—notably, Plaintiff Shah also has not met multiple proposed dates in this process. But the present impasse is not attributable to a refusal to search or produce; it is the consequence of Plaintiff Shah avoiding the questions that actually determine the appropriate scope of review: what the disputed searches capture, whether refinements preserve responsive material, and how the resulting population will be

reviewed and validated. The remedy is a schedule completing the agreed evaluation—not presumed acceptance of Plaintiffs' terms. Indeed, Plaintiff's revised request (raised only now in this letter and not during a conferral of the parties) now calls for testing, refinement, and methodology resolution before production. That is the process POLITICO seeks to finish, and Shah should be required to confer on this proposal before raising it with the Court.

**A. Plaintiff Shah Cannot be Permitted to Rewrite the ESI Agreement.**

Sections 5(a)–(b) require cooperative negotiation informed by qualitative and quantitative information. POLITICO proposes terms based on its knowledge of its systems; Plaintiff provides responsible input; the parties evaluate and refine. Neither side gets unilateral control. And the timing of POLITICO's initial proposal did not convert Plaintiff's earlier list into a binding protocol, and Plaintiff identifies no provision making timing a waiver of further negotiation or automatic approval of disputed searches.

POLITICO supplied proposed terms on July 10 and subsequent hit reports. Its August 21 memorialization contemplated additional analysis of combined terms, false hits, modifications, and counts. Any outstanding agreed evaluation should be completed. But an agreement to test is not an agreement to adopt. Plaintiff's own revised proposal recognizes that results must inform refinement before the final review population is established.

**B. Mapping and TAR Permission Do Not Resolve the Disputed Terms.**

Plaintiff relies on their August 25 mapping and September 10 discussion as though identifying an RFP settles the search. It does not. An RFP number identifies the asserted basis for a search; it does not establish that the proposed search term will accomplish it. A string purportedly directed to decisions to integrate third-party technology must be assessed against that request—not simply broad advertising, analytics, or compliance concepts. POLITICO seeks clarification of specific unresolved strings, not repetition of the entire mapping. Completed work should be credited; remaining disagreements should be identified and resolved.

Plaintiff's sampling argument likewise supports completing evaluation, not dispensing with it. Representative sampling can identify false positives without reviewing every hit. POLITICO does not contend otherwise. Any uncompleted agreed testing should proceed, but testing does not predetermine its outcome or commit POLITICO to full production review of every returned document.

Plaintiff asserts that employees use shared context rather than formal platform names. That is a reason to compare results with and without platform restrictions—not proof that every restriction is improper. POLITICO does not insist that every responsive communication name Tealium, TiQ, or OneTrust. Sampling incremental results can determine whether platform names or proximity modifiers exclude responsive material. Test the claimed omission; do not assume it. The same principle applies to narrowing: reduced volume alone does not validate a search.

Plaintiff calls approximately 61,000 hits "hardly excessive" because of POLITICO's size. Company size is not a substitute for search precision, reasonableness, relevance, and proportionality. Nor is approximately 15,000 an arbitrary ceiling. The question is the responsive material captured, the incremental yield of disputed searches, and the actual review burden—not whether either side prefers the larger or smaller number. Unique documents, families, sampling, and review resources supply the meaningful comparison.

Plaintiff's willingness to permit TAR does not settle the protocol. POLITICO proposed prioritized review on August 25 and revised it on September 2 to address population, quality control, stopping

criteria, validation, and non-hit sampling. Approximately 80% estimated recall is a target, not an automatic stopping rule; material omissions identified through sampling prompt consideration of corrective measures. Permission to use TAR is not agreement on how TAR will be used. The parties should resolve those provisions concurrently with term testing. Neither dispute should become an excuse to postpone all work.

**C. The Requests and Surviving Claims Define the Search—Not the Reverse.**

POLITICO does not argue that dismissal of Shah's CIPA claims eliminates all technical discovery. However, the Court's September 25, 2026 Order dismissing Plaintiff Shah's CIPA claims *with prejudice* severely changes the scope of discovery and the ESI search terms which now must be addressed between the parties. Additionally, alleged overlap does not make every request directed to dismissed statutory elements or remedies permanently relevant. The parties must now identify any affected portions of RFPs 1, 7, 9–13, and 25–28 and interrogatories 5–7 and 11–12. But Plaintiff Shah has refused to confer on this basis.

Plaintiff's asserted advance notice that Shah would not amend was not an agreed revision of requests or terms or answer whether particular categories should be tailored after dismissal. POLITICO seeks document request-specific review, not a renewed stay.

Plaintiff has already provided sufficient documents to identify monthly unique-visitor counts for RFP 31.. If Plaintiff has not, and cannot, identifed any missing figures or coverage in the visitor-count production described in POLITICO's response. Every email mentioning "visitors" is not reasonable. A request for sufficient records is not a demand for every search hit. A concrete production deficiency calls for a concrete cure, not indiscriminate keyword searching.

RFPs 16 and 17 seek contracts and agreements. POLITICO has reasonably provided responsive agreements. Plaintiff's speculation that an agreement might be overlooked does not establish that every broad string is necessary. The proper inquiry is the collection method, the potential gap, and a targeted search that would address it. Discussion of these requests establishes conferral between the parties as POLITICO has requested—not forced agreement with Plaintiff's proposed methodology.

**D. The Court Should Order the Parties Confer to Complete the Process According to the ESI Protocol, Not Acceptance of Either Side's Terms.**

Plaintiff materially changed their requested relief in this letter without any conferral. He initially sought immediate review using both sets of terms, with production due thirty and sixty days after the order. He now seeks evaluation within seven days, conferral within fourteen, and submission of disputes within twenty-one, with production periods running from agreement or Court resolution. His revised request recognizes the very point their argument resists: evaluation and methodology resolution remain necessary.

POLITICO proposes a focused, enforceable schedule consistent with the parties' protocol identifying outstanding searches and sampling, crediting completed mapping and testing, and resolving TAR concurrently. Any post-dismissal scope review should be confined to identified affected requests. Remaining disputes should be submitted term by term and provision by provision; production milestones should reflect the actual review population, privilege review, and validation. Known responsive, nonprivileged documents should proceed on a rolling basis under Sections 5(d) and 7 without waiting for every dispute to be resolved. The Court should require both parties to finish the agreed process—not allow either to dictate its outcome.

Dated: October 15, 2026

**GUTRIDE SAFIER LLP**

*/s/Rajiv V. Thairani*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*